|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |

| | |
|---|---|
| BILLY JOE WARDLOW § | |
| § | |
| *versus* § | CIVIL ACTION NO. 4:04-CV-408 |
| § | |
| UNITED STATES OF AMERICA § | |

**MEMORANDUM AND ORDER**

Pending before the court is Petitioner Billy Joe Wardlow's ("Wardlow") Motion to Vacate, Alter, or Amend Judgment (#39), wherein Wardlow challenges the court's August 21, 2017, Memorandum and Order denying his petition for a writ of habeas corpus pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Wardlow argues that the court made the following manifest errors of law or fact: (1) the court erroneously determined that there was a procedural default of all claims raised in the state habeas proceedings; (2) with respect to Wardlow's argument that the prosecution pressured Tonya Fulfer ("Fulfer") not to testify on his behalf and did not inform defense counsel that Fulfer had information beneficial to Wardlow, the court wholly failed to consider points raised in Wardlow's reply brief as to why the state court's factual findings concerning both claims were clearly erroneous; and (3) the court misapprehended the legal framework applicable to Wardlow's claim that trial counsel failed to investigate mental health-based mitigation evidence. The Director filed a response in opposition. For the reasons set forth below, the motion is denied.

I.   Background

On February 11, 1995, Wardlow was convicted and sentenced to death for the murder of 82-year-old Carl Cole during the course of a robbery or attempted murder. The Texas Court of Criminal Appeals ("CCA") affirmed the conviction and sentence on direct appeal. *Wardlow v.*

*State*, No. 72,102 (Tex. Crim. App. Apr. 2, 1997) (not designated for publication). Wardlow did not file a petition for a writ of certiorari in the Supreme Court of the United States.

On July 21, 1997, the state trial court conducted a hearing to determine whether Wardlow desired the appointment of counsel to assist him in filing an application for a writ of habeas corpus. Prior to the hearing, however, Wardlow contacted the CCA "asking [the court] to refrain from appointing him counsel for habeas and to immediately set an execution date for him." *Ex parte Wardlow*, No. 58,548-01, slip. op. at 2 (Tex. Crim. App. Sept, 15, 2004).[1] Wardlow appeared at the hearing in person and through his attorney, James Clark, and indicated that he did not want appointed counsel and did not desire to pursue further appeals. Director's Supplemental Brief (#32), Exhibit 1. Wardlow—whom the trial judge explicitly found to be competent—voluntarily and intelligently waived his right to appointed counsel and his right to proceed *pro se* in open court. *Id.* at 18. The presiding judge, Judge Gary Stephens, memorialized his findings in writing on September 2, 1997, and thereafter forwarded them to the CCA.

More than two months after appearing in open court and waiving his right to counsel and to pursue further appeals, Wardlow "entered into a legal representation agreement with attorney Mandy Welch on September 25, 1997, in which she agreed to notify the appropriate courts that [Wardlow] did, in fact, wish to pursue his post-conviction remedies." *Ex parte Wardlow*, slip. op. at 2. The trial court confirmed that Wardlow wanted to pursue his post-conviction remedies, and the CCA appointed Welch to represent him. *Id.* The CCA imposed a deadline of July 20, 1998, to file a post-conviction application for a writ of habeas corpus. *Id.* Nonetheless, on July

---

[1] The opinion is attached to the original petition (#1) as Exhibit 4.

2, 1998, Wardlow once again advised the CCA that he desired "to waive and forego all further appeals." *Id*. The CCA granted Wardlow's request on July 14, 1998. *Id*.

Despite Wardlow's request and the CCA's decision, counsel filed an application for a writ of habeas corpus on July 20, 1998. The application included a statement from Wardlow, dated July 20, 1998, indicating that he had changed his mind again and was authorizing counsel to file an application for a writ of habeas corpus.[2] Notwithstanding Wardlow's newly asserted statement that he wished to pursue collateral relief, in an order dated September 15, 2004, the CCA addressed his habeas corpus application as follows:

> On July 2, 1998, this Court again received correspondence from [Wardlow] that he wanted to discontinue his appeal. In light of that request, we issued an order granting [Wardlow's] request "to waive and forego all further appeals." *Ex parte Wardlow*, No. 72,102 (Tex. Crim. App. July 14, 1998) (not designated for publication). Despite this order, counsel filed [Wardlow's] habeas application on July 20, 1998, 180 days after the date of her appointment. For reasons stated in the order of July 14, 1998, we dismiss [Wardlow's] post-conviction application for writ of habeas corpus.

*Id*. A motion for rehearing was denied on October 20, 2004.

Thereafter, Wardlow filed a petition for a writ of habeas corpus with this court on November 23, 2004. Following extensive briefing by the parties, on August 21, 2017, the court denied Wardlow's petition. Wardlow now seeks relief from that decision pursuant to Rule 59(e).

II. Standard of Review

The Supreme Court discussed the purpose of Rule 59(e) as follows:

Rule 59(e) was added to the Federal Rules of Civil Procedure in 1946. Its draftsmen had a clear and narrow aim. According to the accompanying Advisory Committee Report, the Rule was adopted to "mak[e] clear that the district court possesses the power" to rectify its own mistakes in the period immediately

---

[2] Wardlow's statement is attached to the original petition (#1) as Exhibit 3.

> following the entry of judgment. . . . Consistently with this original understanding, the federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits.

*White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 450-51 (1982) (citations omitted). "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted).

The United States Court of Appeals for the Fifth Circuit has observed that a Rule 59(e) motion "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotations omitted). It "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citation omitted), *cert. denied*, 543 U.S. 976 (2005). The Fifth Circuit has repeatedly specified that the purpose of a Rule 59(e) motion is not to rehash arguments that have already been raised before a court. *See, e.g.*, *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 240 n.4 (5th Cir. 2016); *Winding v. Grimes*, 405 F. App'x 935, 937 (5th Cir. 2010). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citations omitted). The decision to alter or amend a judgment is committed to the sound discretion of the district judge and will not be overturned absent an abuse of discretion. *S. Contractors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 & n.18 (5th Cir. 1993).

III. Analysis

    A. Waiver of Appeals

A preliminary factor that must be kept in mind in considering the Rule 59(e) motion involves the impact of the waiver. A person sentenced to death may waive his right to further review if he is mentally competent. *Rees v. Peyton*, 384 U.S. 312, 312 (1966). Relying on *Rees*, the Fifth Circuit established the following three-part test:

> (1) whether that person suffers from a mental disease, disorder, or defect; (2) whether a mental disease, disorder, or defect prevents that person from understanding his legal position and the options available to him; and (3) whether a mental disease, disorder, or defect prevents that person from making a rational choice among his options.

*Mata v. Johnson*, 210 F.3d 324, 328 (5th Cir. 2000) (citing *Rumbaugh v. Procunier*, 753 F.2d 395, 398 (5th Cir. 1985)). "If the answer to the first question is no, the court need go no further, the person is competent." *Rumbaugh*, 753 F.2d at 398.

A second question for a court's consideration before accepting a waiver concerns the voluntariness of the waiver. A waiver of the petitioner's "right to proceed" is valid only when the choice is "knowing, intelligent, and voluntary." *Whitmore v. Arkansas*, 495 U.S. 149, 165 (1990); *see also Gilmore v. Utah*, 429 U.S. 1012 (1976). A valid waiver must "be not only voluntary but also 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Mata*, 210 F.3d at 329 (citation omitted).

Facts comparable to the present case were considered by the Northern District of Texas in *Murray v. Quarterman*, No. 3:01-CV-2089-P, 2006 WL 2691151 (N.D. Tex. Sept. 20, 2006). After the petitioner indicated that he wanted to waive his direct appeal, the CCA ordered the trial court to conduct a hearing on the issue. *Id.* at *1-2. Following the hearing, the state trial court

determined that the petitioner "voluntarily, knowingly and intelligently" gave up his right to appeal. *Id.* The CCA "issued an opinion stating that, as a result of Murray's request to waive all appeals, it had submitted the case, reviewed the record for any fundamental error, and was affirming the judgment of the trial court." *Id.* The petitioner subsequently changed his mind and filed a motion for rehearing, which was denied. *Id.* His petition for a writ of certiorari filed with the Supreme Court of the United States was also denied. *Id.* During the state habeas corpus proceedings, the state court adopted its earlier finding that petitioner had voluntarily, knowingly, and intelligently given up his right to appeal. *Id.* at *3.

The *Murray* court observed that the petitioner was "precluded from obtaining habeas corpus relief unless he [could] show that the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (citing 28 U.S.C. § 2254(d)(2)). After reviewing the applicable law and the testimony during the state evidentiary hearing, the federal court found that the state court's determination regarding the petitioner's competency was not objectively unreasonable; thus, Murray was denied relief under § 2254(d)(2). *Id.* at *3, 8-9.

Wardlow asserts that, in *Murray*, the CCA denied the petitioner's state habeas application on the merits. *See* Petitioner's Supplemental Brief (#25), page 4. Wardlow misconstrues the record. In actuality, the *Murray* court observed that the CCA found that the petitioner had waived his right to pursue an appeal and expressly rejected the notion that the CCA had violated his due process rights by accepting his waiver and later refusing to grant the motion for rehearing in which he sought to reassert his appellate rights. *Murray*, 2006 WL 2691151, at *1-3.

The Fifth Circuit affirmed the district court's decision. *See Murray v. Quarterman*, 243 F. App'x 51, 56 (5th Cir. 2007), *cert. denied*, 552 U.S. 1260 (2008). The appellate court remarked that a federal court may not issue a writ of habeas corpus for a defendant convicted in state court unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. at 52-53 (citing 28 U.S.C. § 2254(d)(1)-(2)). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Id*. at 53 (citations omitted). The court noted that the state trial court "had a considerable amount of evidence" showing that the petitioner was competent to waive his appeal. *Id*. In affirming the denial of habeas corpus relief, the court specifically rejected the petitioner's argument "that he should have been able to withdraw his waiver of his right to appeal because his motion for rehearing was made only a few months after he had requested permission to waive his right to appeal." *Id*. at 54.

In the present case, the state trial court conducted an evidentiary hearing on Wardlow's request to waive his collateral appeal. Wardlow testified that he understood that the hearing was to determine if he wanted a lawyer to proceed with a habeas corpus application and if he wanted to continue his appeal. Transcript, page 6.[3] Wardlow testified that he had sent a letter to his attorney "asking him to abandon all appeals" and that was still his wish. *Id*. at 7. He reiterated that he did not want his attorney to proceed further with an appeal. *Id*. at 8. He testified that he

---

[3] A copy of the transcript is attached to the Director's Supplemental Brief (#32) as Exhibit 1.

was aware that by waiving his remedies he would not be allowed to file a petition for a writ of certiorari and probably would be barred by federal statutes from filing a writ of habeas corpus. *Id.* at 10-11. Wardlow confirmed that he understood that a death date would be set once the stay was lifted. *Id.* at 12. When questioned by the trial court, Wardlow testified that he had been examined by a psychiatrist since his transfer to the Texas prison system, that he was not under a psychiatrist's care, and that he had not been found incompetent. *Id.* at 14. He again testified that he did not want an attorney appointed to represent him in habeas corpus proceedings. *Id.* at 15. Wardlow explained that he thought he would be better off dead in six months as opposed to spending 35 years in prison. *Id.* at 16. Wardlow's attorney advised the court that he believed that Wardlow was competent and of sound mind. *Id.* at 17. The trial court then found that Wardlow "is of sound mind, he's competent, he understands his rights, [and] he is voluntarily waiving his rights to any further appeal." *Id.* at 18. Less than a year later, Wardlow again advised the CCA that he desired "to waive and forego all further appeals." Wardlow's Exhibit 1. The CCA accordingly granted his request.

The evidence in this case reveals that the state courts adhered to clearly established federal law, as determined by the Supreme Court, in granting Wardlow's request to waive all further appeals. The state courts followed federal law in concluding that Wardlow was competent and that he voluntarily, knowingly, and intelligently waived his right to appeal. The finding was reasonable in light of the evidence presented to the state courts. Wardlow has not rebutted the presumption of correctness by clear and convincing evidence. Much like the situation in *Murray*, Wardlow equivocated at times with regard to whether he wished to pursue post-conviction relief, but the ultimate decision by the CCA was reasonable in light of federal law and the evidence

8

presented. Similar to the motion for rehearing in *Murray*, the CCA gave no legal import to Wardlow's belated statement and found him to have waived his right to appeal, dismissing his habeas application. Accordingly, Wardlow is not entitled to federal habeas corpus relief.

The valid waiver is dispositive in this case. As a result, Wardlow waived the various grounds for relief contained in the petition. The present motion should likewise be denied in light of the waiver. Nonetheless, in the alternative, the court will address the three arguments presented in the Rule 59(e) motion.

      B.    <u>Wardlow Procedurally Defaulted His Grounds for Relief</u>

Wardlow initially argues in his Rule 59(e) motion that the court erroneously found a procedural default of all of his claims due to the waiver. Thus, he improperly invokes Rule 59(e) to rehash matters that have been thoroughly considered and rejected by the court. Wardlow's grounds for relief were procedurally defaulted and not considered by the CCA because of his waiver. "The general rule is that the federal habeas court will not consider a claim that the last state court rejected on the basis of an adequate and independent state procedural ground." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir.), *cert. denied*, 541 U.S. 1087 (2004); *see Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). The procedural default issue was fully considered by the court in denying Wardlow's petition. Although Wardlow disagrees with the court's decision, asserting that the court "got [it] wrong," his arguments demonstrate that he is merely raising issues previously considered and rejected by the court. There has been no showing of manifest errors of law or fact warranting relief under Rule 59(e). Therefore, he is not entitled to relief based on his procedural default argument in his Rule 59(e) motion.

### C. Fulfer's Failure to Testify

Wardlow next reasserts his arguments regarding Fulfer's decision not to testify. He maintains that the state habeas trial court's factual findings relating to Fulfer were clearly erroneous and not subject to deference under 28 U.S.C. § 2254(e)(1). He further complains that the court adopted *verbatim* the arguments made by the Director. The court, however, carefully considered both parties' briefs and submissions as well as the state court record on this issue and found the Director's arguments to have merit and Wardlow's to be without basis. Wardlow simply disagrees with the court's assessment of the facts and the law with respect to these claims. Moreover, the state court's findings of fact were reasonable in light of the evidence before the state trial court. Wardlow has not rebutted the presumption of correctness with clear and convincing evidence. Wardlow has not shown a manifest error of law or fact warranting relief under Rule 59(e). Instead, he simply reiterates the same points and arguments that were raised in his petition and rejected by the court.

The court again notes that relief on this issue must be rejected in light of Wardlow's waiver. Thus, any complaints that Wardlow had regarding Fulfer's declining to testify at trial were waived.

### D. Counsel's Alleged Failure to Investigate Mental Health-Based Evidence

Wardlow's final argument is that the court misapprehended the legal framework applicable to his contention that trial counsel failed to investigate mental health-based evidence, an ineffective assistance of counsel claim based on *Wiggins v. Smith*, 539 U.S. 510 (2003). Wardlow maintains that the court erroneously concluded that he did not demonstrate prejudice, stressing that courts have never required a petitioner to show that new information would have caused a defense trial

expert to change his mind. *See Rompilla v. Beard*, 545 U.S. 374, 392 (2005). According to Wardlow, the test for prejudice relating to un-investigated mental health mitigation information is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the [sentencing] proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

The case law is abundantly clear that "in the context of a capital sentencing proceeding, defense counsel has the obligation to conduct a 'reasonably substantial, independent investigation' into potential mitigating circumstances." *Neal v. Puckett*, 286 F.3d 230, 236-37 (5th Cir. 2002) (quoting *Baldwin v. Maggio*, 704 F.2d 1325, 1332-33 (5th Cir. 1983)), *cert. denied*, 537 U.S. 1104 (2003); s*ee Woods v. Thaler*, 399 F. App'x 884, 891 (5th Cir. 2010), *cert. denied*, 563 U.S. 991 (2011). The reasonableness of counsel's investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. "[C]ounsel should consider presenting . . . [the defendant's] medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* at 524 (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases § 11.8.6, at 133 (1989)). The Supreme Court opined in *Wiggins* that the investigation into mitigating evidence "should comprise efforts to discover *all reasonably available* mitigating evidence." *Id.* (emphasis in original).

In reviewing the issue of prejudice with respect to a *Wiggins* claim, courts must reweigh the quality and quantity of the available mitigating evidence, including that presented in post-conviction proceedings, against the aggravating evidence. *Williams v. Taylor*, 529 U.S. 362, 397-

98 (2000); *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 556 U.S. 1240 (2009). "In evaluating that question, it is necessary to consider *all* the relevant evidence that the jury would have had before it if [the petitioner] had pursued the different path—not just the mitigation evidence [the petitioner] could have presented, but also the . . . evidence that almost certainly would have come with it." *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (emphasis in original). After reweighing all the mitigating evidence against the aggravating, a court must determine whether the petitioner "has shown that, had counsel presented all the available mitigating evidence, there is a reasonable probability that a juror would have found that the mitigating evidence outweighed the aggravating evidence." *Gray v. Epps*, 616 F.3d 436, 442 (5th Cir. 2010), *cert. denied*, 563 U.S. 905 (2011). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693).

Wardlow complains about the court's analysis regarding prejudice. He cites the general *Strickland* standard of prejudice, but the case law requires a court to reweigh all of the mitigating evidence, both old and new, against the aggravating evidence to determine if the new mitigating evidence would have changed the outcome of the trial. In denying relief, the court evaluated his new mitigating evidence and found that it would not have changed the outcome of the trial. Stated differently, Wardlow has not shown prejudice. Once again, he merely rehashes an issue that was previously considered and rejected by the court; therefore, Rule 59(e) relief is unavailable.

IV. <u>Conlusion</u>

Wardlow is not entitled to federal habeas corpus relief because of his valid waiver. He was fully competent to waive all appeals, and he waived them knowingly, intelligently, and voluntarily.

Wardlow has not shown that the decision of the CCA accepting his waiver was an unreasonable application of the law or facts, and this court must accord due deference to the state court decision. In any event, Wardlow's complaints regarding the merits of his case are unfounded and present no basis for habeas relief. Consistent with the foregoing analysis, Wardlow has not shown a manifest error of law or fact that entitles him to relief under Rule 59(e). Accordingly, Wardlow's Motion to Vacate, Alter, or Amend Judgment (#39) is **DENIED**. All motions not previously ruled on are **DENIED**.

SIGNED at Beaumont, Texas, this 26th day of October, 2017.

*Marcia A. Crone*
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE