72/02

1

VOLUME 3 INDEX

2        MAY 18, 1994                                    PAGE/VOLUME

3        APPEARANCES . . . . . . . . . . . . . .              2/3

4        ARRAIGNMENT . . . . . . . . . . . . .               3/3

5        MOTIONS DISPOSED OF:

6        MOTION IN LIMINE NUMBER ONE . . . . . . . .         19/3

7        MOTION FOR MENTAL EXAMINATION . . . . . .        20,23/3

8        DEFENDANT'S MOTION FOR DISCLOSURE OF
         EXCULPATORY EVIDENCE   . . . . . . . . . .          20/3
9
         MOTION IN LIMINE NUMBER TWO . . . . . . . .         21/3
10
         DEFENDANT'S MOTION FOR A LIST OF
11       STATE'S WITNESSES . . . . . . . . . . .             21/3

12       DEFENDANT'S MOTION FOR COURT REPORTER
         TO TRANSCRIBE PROCEEDINGS . . . . . . . .           22/3
13

         MOTION FOR A HEARING TO DETERMINE
14       QUALIFICATION AND REPUTATION OF
         THE CHARACTER WITNESSES TO TESTIFY
15       PURSUANT TO RULE 405   . . . . . . . . . .          22/3

16       MOTION FOR THE APPOINTMENT OF AN
         INVESTIGATOR AND EXPERT WITNESS . . . . .           22/3
17

         MOTION FOR DISCOVERY PRODUCTION AND
18       INSPECTION OF EVIDENCE, NUMBER ONE   . . . .        22/3

19       MOTION FOR A HANDWRITING EXEMPLAR . . . . .         24/3

20       MOTION FOR JUVENILE RECORDS . . . . . . .           25/3

21       REPORTER'S CERTIFICATE  . . . . . . .               29/3

FILED IN
COURT OF CRIMINAL APPEALS

22

OCT 1 1 1995

23

24                       * * * * *     Troy C. Bennett, Jr., Clerk

                                       ORIGINAL
25

CAUSE NO. 6,986

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | MORRIS COUNTY, TEXAS |
| | § | |
| | § | |
| BILLY JOE WARDLOW | § | 276TH JUDICIAL DISTRICT |

PRETRIAL MOTIONS

STATEMENT OF FACTS

HEARING ON PRETRIAL MOTIONS

May 18, 1994

**VOLUME 3 of 43 volumes**

Before Honorable Thomas B. Thorpe

Judge by Judicial Assignment

CAUSE NO. 6986

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| | ) | |
| | ) | |
| VS. | ) | MORRIS COUNTY, TEXAS |
| | ) | |
| | ) | |
| BILLY JOE WARDLOW | ) | 276TH JUDICIAL DISTRICT |

# ORIGINAL

VOLUME A OF PRETRIAL MOTIONS
STATEMENT OF FACTS
HEARING ON PRETRIAL MOTIONS
MAY 18, 1994



FILED
AT __1__ O'CLOCK __P__ M

JUL 14 1995

BOBBY LA PRADE - CLERK, DISTRICT COURT
TITUS COUNTY, TX
_____ DEPUTY

BE IT REMEMBERED THAT on the 18th day of May, 1994, the above-styled and numbered cause came on for a hearing before the Honorable Thomas B. Thorpe, in the 276th Judicial District Court, County of Morris, City of Daingerfield, State of Texas, and the following proceedings were had:

CHRISTINA WALLACE
Certified Shorthand Reporter
(903) 639-2176

# I N D E X

| | PAGE |
|---|---|
| Appearances | 2 |
| Arraignment | 3 |
| **Motions Disposed of:** | |
| Motion in limine number one | 19 |
| Motion for mental examination | 20, 23 |
| Defendant's motion for disclosure of exculpatory evidence | 20 |
| Motion in limine number two | 21 |
| Defendant's motion for a list of State's witnesses | 21 |
| Defendant's motion for court reporter to transcribe proceedings | 22 |
| Motion for a hearing to determine qualification and reputation of the character witnesses to testify pursuant to Rule 405 | 22 |
| Motion for the appointment of an investigator and expert witness | 22 |
| Motion for discovery production and inspection of evidence, number one | 22 |
| Motion for a handwriting exemplar | 24 |
| Motion for juvenile records | 25 |
| Reporter's Certificate | 29 |

*       *       *

A P P E A R A N C E S

FOR THE STATE:

    MR. RICHARD B. TOWNSEND
    District Attorney
    500 Broadnax Street
    Daingerfield, Texas   75638

FOR THE DEFENDANT:

    MR. VERNARD G. SOLOMON
    Attorney at Law
    306 W. Houston Street
    Marshall, Texas   75670

*     *     *

CHRISTINA WALLACE
Certified Shorthand Reporter
(903) 639-2176

2

1                    P R O C E E D I N G S

2

3              THE COURT:  First of all, I introduced

4    myself to the attorneys and met you, briefly, and I also

5    want to introduce myself to the defendant.  My name is

6    Judge Thorpe.  I was the judge in a district court in

7    Dallas for 20 years and just recently retired and took

8    senior judge status which entitles me to sit in other

9    courts throughout the state as I might be needed, and I

10   was assigned by the presiding judge of this first

11   administrative judicial district to hear your case.  And

12   so I will be your judge throughout this thing, provided

13   something doesn't happen on it.

14        The first order of business would be to have the

15   defendant formally arraigned.  And so if the defendant

16   would please stand, I'll ask that the district attorney

17   present the indictment.

18        Your lawyer probably explained to you, but

19   arraignment is for the purpose of reading the indictment

20   so that you'll know exactly what you're charged with and

21   to establish your name, your true name, as being the name

22   contained in the indictment, and then I'll advise you as

23   to the possible consequences of the case and then we'll

24   proceed into the case.

25              (The indictment was read.)


                    CHRISTINA WALLACE
                 Certified Shorthand Reporter        3
                      (903) 639-2176

1          THE COURT:  All right.  Mr. Wardlow, do you

2   understand exactlly what the indictment charges you with?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Do you understand that under

5   the laws of the State of Texas that if a person

6   intentionally or knowingly causes the death of an

7   individual then that is the offense of murder, but the law

8   goes further and says that if a person commits the offense

9   of murder and intentionally kills the person while

10  attempting to commit or committing the offense of robbery,

11  that that makes it a capital murder.  Do you understand

12  that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  All right.  And do you

15  understand that a person that's found to be guilty of

16  murder could receive a sentence of confinement in the

17  penitentiary for life or any term of years not more than

18  99 or less than five?  In addition, a fine of up to 10,000

19  dollars could be imposed, but if a person is found guilty

20  of a capital murder, then the punishment is either life

21  imprisonment or death, depending upon how the jury answers

22  certain questions, and those questions are propounded to

23  the jury.  If the jury answers the questions in a certain

24  way, then it's automatic that the Court imposes the death

25  penalty.  If the answers to the questions are in a

1    different way, then of course the Court would sentence you

2    to life imprisonment.  So do you understand that?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  All right.  Have you conferred

5    with your client and is he ready to enter his plea to the

6    indictment?

7                    MR. SOLOMON:  Your Honor, at this time when

8    called upon to enter a plea, my client would stand mute.

9                    THE COURT:  All right.  You have a right,

10   of course, to stand mute and the effect of that is that

11   the Court simply enters a plea of not guilty on your

12   behalf and we'll proceed as if it were a plea of not

13   guilty.  So do you have any questions about the charge

14   or --

15                   THE DEFENDANT:  No, sir.

16                   THE COURT:  All right.  Have you had an

17   opportunity to go over the questions with him and explain

18   to him the questions that the jury would have to answer?

19                   MR. SOLOMON:  The special issues?

20                   THE COURT:  The special issue questions?

21                   MR. SOLOMON:  No, I have not, Judge.  I

22   have not gotten to that extent with him.

23                   THE COURT:  All right.

24                   MR. SOLOMON:  I have explained to him how

25   the process works in regard to the finding of a -- a

1  finding by a jury that would necessitate the death

2  penalty, but I have not gone over the individual

3  questions.

4           THE COURT:  All right.  One of the -- the

5  issue number one is whether or not there is a probability

6  that the defendant would commit certain acts of violence

7  that would constitute a continuing threat to society.  So

8  that's -- if you are found to be guilty, then at the

9  second phase of the trial that would be the dominant issue

10 as to whether or not -- because of the facts of the case

11 or because of other circumstances connected with the case

12 that the jury would make that determination as to whether

13 or not there is a probability that you would commit acts

14 of violence in the future.  And the Court would also

15 instruct the jury to answer the question whether -- and

16 taking into consideration all of the evidence, including

17 the circumstances of the offense, the defendant's

18 character and background and personal moral culpability

19 such that there is sufficient mitigating circumstances or

20 circumstances to warrant the sentence of life imprisonment

21 rather than a death sentence being imposed.

22      So even if they answered yes to the question of

23 probability, if they found that there was sufficient

24 mitigating circumstances, then they could make the

25 decision that you be sentenced to life imprisonment rather

1  than a death sentence.  I know that your lawyer will go

2  into these in more detail with you, but it's something to

3  start thinking about in the event that you are found to be

4  guilty.  All right.  You may be seated.

5      All right.  What I really would like to do at this

6  time is sort of go off the record and discuss some of

7  these matters with you and the attorneys informally in

8  order to see just when you think we might be able to get

9  started with this case.  So we'll go off the record and

10 we'll put everything on the record that we need.

11                     (Off the record.)

12            THE COURT:  The record will reflect that

13 it's been brought to the Court's attention that the

14 defendant has certain problems with Mr. Solomon

15 representing him and that he has contacted Judge Moye by

16 letter or otherwise, and I don't know if he's contacted

17 Judge Porter or not, but is there anything that you want

18 to say to me concerning this matter?

19            THE DEFENDANT:  No, sir.

20            THE COURT:  And can you articulate to me

21 any feelings or problems that you might have with Mr.

22 Solomon representing you?

23            THE DEFENDANT:  As far as his

24 qualifications, he's qualified, but it's just as far as

25 the way that I feel about him, it's just that I don't like

1   the man.

2               THE COURT:  Well, we're --

3               THE DEFENDANT:   And I feel that I may be

4   misrepresented.

5               THE COURT:  We're not exactly in a

6   popularity contest as to who you like or don't like.  It's

7   a matter of -- it's up to the Court to see that you get

8   fair and competent representation.  Of course, it's always

9   better for everyone if everybody likes each other and can

10  cooperate throughout the proceedings, but that's not

11  entirely necessary to have a case tried.

12              THE DEFENDANT:  If I don't like the person,

13  I won't --

14              THE COURT:  The thing of the matter is that

15  Mr. Solomon's duty is to protect every legal right that

16  you have in the best way that he knows how to do that.  He

17  has the right to object to everything that's done and to

18  make certain that if you are convicted that you be

19  convicted under the laws.  In other words, that everybody

20  plays by the rules and that -- then he's also charged with

21  the responsibility of putting your best foot forward to

22  the jury and bringing forth witnesses and testimony that

23  would influence the jury to rule in your favor.  How much

24  contact have you had with Mr. Solomon?

25              THE DEFENDANT:  I believe he's been up here

1    four times, something like that.

2                   THE COURT:  And you've been in jail for how

3    long?

4                   THE DEFENDANT:  A year.

5                   THE COURT:  A year?  Okay.  And I have to

6    say that in many instances lawyers are busy just like

7    everybody else, and they don't really get down to getting

8    involved in the case until it gets up to the time for the

9    case to come to trial and then they put everything else

10   aside and pay total attention to the case.  And in a

11   capital case that's usually what happens is they have to

12   put everything else in their practice aside for a period

13   of time and give their full representation and -- to their

14   client, but up until that time there's just not much that

15   they can do except hold your hand, and you're a big enough

16   man that you don't need that.

17       Is there any other thing about Mr. Solomon other than

18   you just personally maybe dislike him?

19                  THE DEFENDANT:  It's just something

20   personal.  If I don't like the person, I'm not going to

21   work with them.

22                  THE COURT:  And can you articulate that?

23   Can you explain that to me?

24                  THE DEFENDANT:  No, sir, I can't explain

25   it.  It's just something about me that -- there was just

1   something about the man that I didn't like the day he came

2   in, and I've talked with other counselors that were

3   friends of mine and they told me that I needed somebody

4   that would be my attorney and also be a friend to me

5   because this is going to be a tough case.

6            THE COURT:  Well, you know, you have the

7   right to retain -- you or your friends have the right to

8   retain anybody that you want to, but I, quite frankly,

9   respect the decision of Judge Moye in appointing Mr.

10  Solomon and unless I have some articulable reason, I'm not

11  going to release him from the case.  And I feel certain

12  that being the advocate that he his, that once he gets

13  into the case that you'll feel comfortable.  And it

14  certainly would be up to your benefit to cooperate with

15  him.  Is there anything else you want to say on that?

16           THE DEFENDANT:  No, sir.

17           THE COURT:  Okay.  Mr. Solomon, do you want

18  to add anything to the record on this or --

19           MR. SOLOMON:  Judge, during our

20  conversation and more particularly in regard to some

21  letters that I have received from Billy, I went into the

22  areas with Billy as to what he would do if I continued to

23  represent him and he's indicated to me that he is not in

24  any way going to assist me in the preparation of any

25  defense, that he is not going to aid and assist in any

1  manner, does not want me representing him.

2      We have a difference of opinions in regard to the

3  preparation for the defense.  We have different opinions

4  as to what the plea ought to be.  I hate to get involved

5  in this type of litigation where if we get halfway through

6  it and it comes up that because of the attitude or the

7  position that the client takes that it may cause some type

8  of a reversible error to occur, especially since he raised

9  it at the very beginning and not in the process, you know,

10 I don't know if I'm the right man to proceed with Mr.

11 Wardlow's defense given the position that he's taken.

12             THE COURT:  Well, I'm going to just presume

13 at this point in time that you are an advocate and you'll

14 do everything that you can for and on behalf of your

15 client that's within the law.  And I'm going to assume

16 that Mr. Wardlow understands the seriousness of the

17 situation that he's in and that the two of you will be

18 able to get together so that we can go forward in this.

19     And I'm sure it hasn't been fun for you sitting up

20 there in jail for a year waiting for your trial.  And I

21 would assume that you would probably want your case to get

22 started and proceed on as soon as possible and, you know,

23 have this thing behind you, one way or the other.  And any

24 changing of counsel at this point in time would, of

25 course, necessitate delaying.  And I don't know how long a

1  period of time it would take to get another attorney

2  appointed and to get him prepared to proceed, but I don't

3  think that that would be to anybody's particular benefit.

4        So there being no motion that I see in the file

5  pertaining to this and having had the chance to have the

6  defendant express himself, I believe that I would feel

7  comfortable in proceeding on, but if at any time you feel

8  uncomfortable to the point where you feel like you need to

9  file a motion in this respect or the defendant presents

10  anything additional to the Court, why of course I'll

11  consider it.  It's the responsibility of the judge to

12  appoint an attorney who is qualified to try the case and

13  unless there's some legal reason, the Court doesn't have

14  the right to release an attorney once he's appointed.

15        He's got a legal and moral responsibility to do

16  everything he can for you, and I just feel that probably,

17  when we get right down to it, that you will understand

18  that and you will cooperate with Mr. Solomon.  People have

19  differences of opinion.  He's looking at things perhaps

20  from a legal standpoint as to what's best for you.  You

21  may be looking at it from a different standpoint, but it's

22  like going to the doctor.  You know, you may think one

23  thing is wrong with you and he may think it's something

24  else.  And usually the doctor doesn't say, well, which

25  kind of pill would you prefer to take, you know, would you

CHRISTINA WALLACE
Certified Shorthand Reporter            12
(903) 639-2176

1   like to take this pill or this pill.  You know, you'd say,

2   well, I think I would like to have a doctor that would

3   tell me what pill to take.

4        And sometimes in legal questions that come up it's

5   kind of like diagnosing a medical problem.  The lawyer is

6   required to give you what your options are and to tell you

7   what your options are and then he also tells you what he

8   thinks the possible consequences are and recommends a

9   course of action for you, but it still comes down to you

10  deciding on certain matters.  So it's up to you to decide

11  what your plea is and it's up to you to decide whether or

12  not to testify or not to testify.

13       There are certain things that are strictly things for

14  you to determine yourself after you've received advice

15  from your attorney.  And I would certainly encourage you

16  to listen very carefully to the legal advice that you get

17  from this point forward and to make -- you know, try to

18  make as intelligent a decision as you can on it.

19       All right.  I'll proceed on to the next matter.  And

20  let me ask the attorneys what y'all anticipate might be a

21  good trial time.

22            MR. TOWNSEND:  Your Honor, I'm here.  You

23  know, the sooner the --

24            THE COURT:  So I assume anything I set is

25  okay with you.

1          MR. TOWNSEND:   The sooner the better as far

2  as the state is concerned.

3          MR. SOLOMON:   Judge, let me -- of course,

4  I'm a sole practitioner in Marshall, Texas, which is, oh,

5  about 60 miles from here.  And when to set this or when we

6  can get started, if you can give me some kind of an idea

7  of what your trial schedule is going to be, I mean, are we

8  going to work this thing for five days a week from

9  daylight to dark or are we going to be able to take some

10 time in the middle for me to take care of other clients

11 that are screaming and hollering or --

12         THE COURT:   Well, of course, I'll try to be

13 cognizant of everybody's time, but I sort of have a

14 reputation of getting to the bone and going with it.  I

15 would certainly think that we might be able to work four

16 and a half days a week from say 9:00 o'clock until 5:00.

17 It may be that we would be so successful in, you know,

18 getting through this jury selection in a timely fashion

19 that it could be more generous in the time frame, but I

20 kind of like to start off with a strict schedule and then

21 ease up if everything -- if everybody seems to be moving

22 along without any undue delay.

23         MR. SOLOMON:   From my past experience, I

24 think that we could probably anticipate four to six weeks

25 on a jury and maybe -- maybe, Richard, what, a week in

1    trial on the merits?

2                    MR. TOWNSEND:  A week to a week and a half.

3                    MR. SOLOMON:  Okay.

4                    THE COURT:  Well, that's what I was hoping

5    that maybe we could pick a jury in four weeks, and usually

6    these cases last a week or ten days.

7                    MR. SOLOMON:  Uh-huh.

8                    THE COURT:  Do we have any motions that

9    will require testimony?

10                   MR. SOLOMON:  Judge, the motions on file,

11   discovery, I believe, there is nothing that Mr. Townsend

12   has held back in any regard.  He has furnished me kind of

13   an open file policy.  I believe that's correct.  And, of

14   course, I don't know what he's got in the file, but it

15   appears that he's given me everything as it has come in.

16                   MR. TOWNSEND:  There are some photographs

17   that I don't think you've seen.

18                   MR. SOLOMON:  Okay.

19                   MR. TOWNSEND:  You know, a few minor items

20   like that, but other than that.

21                   MR. SOLOMON:  The only thing that -- there

22   has been a matter come up in the form of a letter that I

23   have not reviewed and we may have a suppression hearing on

24   that, but that might be something that we can take up at

25   any time prior to the beginning of the trial.  There is a

1   need for -- I was hoping we could work out something by

2   agreement on venue, but a possibility we'll file a motion

3   for a change of venue and a motion for the appointment of

4   investigators or an investigator and a psychiatric

5   evaluation by a doctor of our choice.   I think probably

6   that along with an open discovery order that he'll

7   supplement anything or identify anything that he's held

8   back and not given me and then we can identify what he has

9   by an itemized list to be filed with the Court to identify

10  those.

11              MR. TOWNSEND:   We could get those lists

12  ready for you.   No problem.

13              MR. SOLOMON:   And then I'm going to need

14  some time to put together the necessary evidence in regard

15  to a change of venue and have a hearing on that.

16              THE COURT:   All right.   What about the

17  state?   Do you see the need for any --

18              MR. TOWNSEND:   The only thing that we have

19  set as far as motions at this time are in relation to the

20  letter Mr. Solomon discussed.   We have a motion for a

21  handwriting exemplar to be taken and we have a motion in

22  limine filed as to discussion of parole and a motion

23  for -- to be given certified copies of some of the

24  defendant's juvenile records, but nothing that would

25  require an evidentiary hearing.

```
 1              THE COURT:  Okay.
 2              MR. SOLOMON:  Judge, my -- I would like to
 3   be given enough time prior to the beginning of the voir
 4   dire so that I can either speed up some of the litigation
 5   that I've got currently pending with clients -- and it's
 6   mostly going to be in the area of domestic relations
 7   requiring hearings -- that I can maybe accelerate some of
 8   those and put off some so that I won't be caught with, oh,
 9   grievances being filed for nonprosecution of the cases
10   that I'm representing.
11              THE COURT:  I understand.  That's perhaps a
12   problem with any lawyer that takes on a case of this
13   magnitude.  How many weeks does it take to get a jury
14   panel notified, say if I wanted a jury for the week of
15   June 20th?
16              THE DISTRICT CLERK:  We usually send out
17   our notices about two weeks ahead.  Of course, we could
18   pull the list any day, but if we have two weeks notice, I
19   think that would do.
20              THE COURT:  What does June the 20th look
21   like for everybody?
22              MR. TOWNSEND:  For --
23              THE COURT:  Commencing of voir dire and
24   then I can hold the week of June the 6th open for any
25   motions and evidentiary hearings.  I think we can go off
```

1   the record while we discuss this.

2                    (Off the record.)

3            THE COURT:  All right.  The Court will come

4   to order, and during the recess we had further

5   conversations with the lawyers and the Court is going to

6   set pretrial or set a hearing on change of venue for July

7   the 23rd at 10:00 a.m. in consideration of your 60 mile

8   drive.

9            MR. SOLOMON:  Thank you, Judge.

10           THE COURT:  And the Court will also hear

11  any other matters that require testimony on the 23rd and

12  carry that over to July the 24th, if necessary.  If the

13  Court denies the change of venue, then I will call for a

14  jury panel on July the 11th.  I said July the -- that's

15  June, June the 23rd is what I meant to say, and will call

16  for a jury panel on July the 11th, and if the change of

17  venue should be granted, I will call for a jury panel in

18  an adjoining county for July the 18th, providing that they

19  are able to accommodate us.

20           The Court will go through and look at the motions on

21  file and rule on those motions that are to be ruled on at

22  this time.  The first thing that comes to my attention is

23  the defendant's letter to Judge Moye, and of course

24  it's -- you know, you have the right to write a letter to

25  anybody that you want to, but I would caution you that you

1  would be well served by not discussing any of the facts of

2  the case in any letter that you write because it may

3  constitute admissible testimony against you and it may be

4  matters that can be used against you.  Just matters of

5  procedure, it's always better that you go through your

6  attorney.

7      I have a motion in limine.  I'll call this motion in

8  limine number one in the event there's others filed.

9  Paragraph one is granted.  Paragraph two is granted.

10 Paragraph three is granted.  Paragraph four is granted at

11 this time.  Paragraph five is granted.  Six is granted.

12 Seven is granted and these -- as a motion in limine.  Of

13 course, if a hearing is conducted and it is shown that he

14 has been previously convicted, then that would be

15 admissible.

16      Paragraph eight is -- of course, it's part of the

17 jury voir dire that the jury might know that both sides

18 have the right to call reputation witnesses.  The state

19 has the right to call witnesses that might testify that

20 the defendant has a bad reputation.  The defendant has the

21 right to call witnesses that might say he has a good

22 reputation.

23          MR. SOLOMON:  I have no objection to that,

24 Your Honor.  What the limine goes to is the prosecutor

25 informing the jury that we will call witnesses to testify

1   that he has a bad reputation.

2              THE COURT:  Well, how about changing "may"

3   to "will"?  Do you have any objection to that?

4              MR. SOLOMON:  Yes.  And I have no objection

5   to it.

6              THE COURT:  All right.  I changed "may" to

7   "will" and will grant it on that basis.  Motion for mental

8   examination -- now, is this a motion that's separate and

9   apart from your motion asking for medical assistance in --

10             MR. SOLOMON:  I think this is the motion,

11  Judge.  I think it would go to -- this examination would

12  lead to any other, if necessary.  I have a motion for the

13  appointment of mental -- just a second --

14             THE COURT:  As I read this motion, it would

15  be up to the Court to appoint an expert to examine the

16  defendant and make that examination available to the Court

17  on the issue of competency.  I thought I saw another

18  motion that was different.  Let me pass by this motion for

19  a moment --

20             MR. SOLOMON:  Okay.

21             THE COURT:  -- and we'll come back to it.

22  Defendant's pretrial motion for disclosure of exculpatory

23  evidence.  Has the state reviewed this motion?

24             MR. TOWNSEND:  Yes, Your Honor.

25             MR. SOLOMON:  Do you have any objection to

1   any part of it?

2                    MR. TOWNSEND:  Let me answer real quickly.

3   No, I didn't have any objections, Your Honor.

4                    THE COURT:  All right.  That's granted by

5   agreement.

6        The Court would rule that the state will reveal any

7   information that is relevant or material and favorable to

8   the defendant on the issue of guilt or punishment and that

9   this is a continuing motion and continues throughout the

10  proceeding, which means the state has a continuing

11  obligation to comply with this newly found evidence, if

12  any.

13       Okay.  Motion in limine -- we'll call this number

14  two -- well, I wouldn't think I'd have to rule on this,

15  but I'll grant that.  I'm sure that counsel isn't going to

16  engage in name calling.

17       Defendant's motion for a list of state's witnesses.

18                    MR. TOWNSEND:  I have no disagreement with

19  it.

20                    THE COURT:  You have no disagreement?

21  Okay.  That can be so granted by agreement.  And the list

22  of witnesses will, of course, have to be filed prior to

23  jury voir dire so that the defendant might have the

24  benefit of that during jury voir dire.

25       Defendant's motion for court reporter to transcribe

1  proceedings is granted.

2      Motion for a hearing to determine qualification and

3  reputation of the character witnesses to testify pursuant

4  to Rule 405, that is granted.

5      Motion for the appointment of an investigator and

6  expert witness.  Okay.  The Court will grant the motion

7  for you to hire an investigator.  The Court will not

8  appoint an investigator by name, but will give you the

9  authority to select your own investigator and will limit

10  expenses to 1,500 dollars at this time without prejudice

11  to you asking for additional sums, if you show that it's

12  necessary.

13      Okay.  Motion for discovery production and inspection

14  of evidence number one, I don't know if counsel for the

15  state has had time to go over all of this or not.

16              MR. TOWNSEND:  Your Honor, I have not

17  thoroughly read this, but I certainly don't anticipate

18  failing to disclose anything.

19              MR. SOLOMON:  Judge, if --

20              THE COURT:  Well, why don't I just rule

21  that this is granted by agreement, but the state has the

22  right to bring any portion of it to my attention that you

23  disagree with in a reasonable time and then the Court

24  would make a specific ruling on that.  Does that satisfy

25  you?

 1              MR. SOLOMON:  Yes, Judge.  The only thing I

 2  ask is if there's one of those requests that there is none

 3  available that we have a response to it that there is

 4  none.

 5              THE COURT:  All right.

 6              MR. TOWNSEND:  Okay.  That's fine.

 7              MR. SOLOMON:  Maybe a written response to

 8  each one of them and then we can --

 9              MR. TOWNSEND:  Let me write a note on that.

10              THE COURT:  Okay.  What I've written on

11  here for clarification is that this is granted by

12  agreement.  If the state seeks to object to any particular

13  item, they must bring it to the attention of the Court

14  within two weeks of this date.  If state's response to

15  requested -- to request is that no such evidence exists or

16  that no such evidence is in their possession, then that

17  notation should be made.

18      All right.  I think that concludes all matters except

19  the defendant's motion for mental examination.  If we

20  could go off the record for just a minute.

21                   (Off the record.)

22              THE COURT:  All right.  The defendant has

23  amended his -- defendant's motion for mental examination

24  to show that it is a motion for mental experts and that he

25  be allowed to retain a mental expert to act as part of his

                    CHRISTINA WALLACE
                 Certified Shorthand Reporter          23
                     (903) 639-2176

1  team.   Any objection to the amendment from the state?

2              MR. TOWNSEND:   None, Your Honor.

3              THE COURT:   Okay.   All right.   The Court

4  grants the defendant's request that he be allowed to

5  retain an expert witness to act as a member of the defense

6  team and to make a report to the defendant.   The Court

7  will limit expenses to 2,500 dollars at this time, and I

8  believe from talking with both sides that you feel like

9  you can work within that range, at least initially?

10             MR. SOLOMON:   Uh-huh.

11             THE COURT:   Does the state have any Brady

12 material that it wishes to make a record at this time that

13 you have in this case?

14             MR. TOWNSEND:   None, Your Honor.

15             THE COURT:   The record will so reflect.

16 Any other motions that either side would want to bring to

17 the attention of the Court?   I believe you have a

18 handwriting exemplar or --

19             MR. TOWNSEND:   Yes, Your Honor, I've got a

20 motion.

21             THE COURT:   Has the defendant been served

22 with a copy of the motion for a handwriting exemplar?

23             MR. SOLOMON:   I have a copy of it, yes.

24             THE COURT:   Is there any objection to the

25 motion or any argument on the motion?

1          MR. SOLOMON:  I have no objection, Judge.

2          THE COURT:  All right.  The motion is

3  granted and the defendant will be ordered to comply.  And

4  what this is, Mr. Wardlow, is a request that you just

5  write in your usual handwriting this paragraph that won't

6  make an awful lot of sense to you, but just write that in

7  your own handwriting and follow this order.  Your lawyer

8  will explain that to you further.

9      All right.  Any other matters that either side would

10  like to bring up?

11          MR. TOWNSEND:  Your Honor, at this time

12  I've got this motion for juvenile records.  The district

13  clerk's office has, I believe, a juvenile record on Billy

14  Wardlow that would show a juvenile conviction in Morris

15  County, cause number 247.  And I would just like a

16  certified copy of that pursuant to 3707, Code of Criminal

17  Procedure, and 5114 of the Family Code.

18          THE COURT:  Have you been served with a

19  copy of that?

20          MR. SOLOMON:  I have a copy of that, Your

21  Honor, yes.

22          THE COURT:  All right.  Do you have any

23  objection to it so long as I require him to furnish you

24  with a copy of it?

25          MR. SOLOMON:  I have no objection.

1           THE COURT:   That is agreeable?   Granted.

2  All right.   Anything else then?   All right.   And just for

3  planning purposes, the matters that we will go into

4  besides the change of venue on June the 23rd will be

5  possibility of the admission -- admissibility of certain

6  statements made by the defendant after he was under arrest

7  and in custody.   Is that basically --

8           MR. SOLOMON:   That's correct, Your Honor.

9           THE COURT:   -- the only other motion that

10 you're aware of at this time?   Okay.   Do you mind if I ask

11 the defendant a couple of general questions?

12           MR. SOLOMON:   I have no objection, Your

13 Honor.

14           THE COURT:   It's all right with you?   How

15 old are you?

16           THE DEFENDANT:   Nineteen.

17           THE COURT:   Nineteen years old?

18           THE DEFENDANT:   Uh-huh.

19           THE COURT:   Okay.   And how far did you go

20 in school, Mr. Wardlow?

21           THE DEFENDANT:   To the 12th.

22           THE COURT:   The 12th grade?   Did you

23 graduate or --

24           THE DEFENDANT:   No, sir, I stopped halfway

25 through the 12th grade.

1      THE COURT:  Halfway through the 12th?  Do
2  you live in Morris County?
3      THE DEFENDANT:  I did.  I lived in Cason.
4      THE COURT:  And how long have you lived in
5  the county?
6      THE DEFENDANT:  Eighteen, seventeen years.
7  Probably 17 years.
8      THE COURT:  Most all of your life?
9      THE DEFENDANT:  Most of my life, yes, sir.
10      THE COURT:  And is your father and mother
11  in this county?
12      THE DEFENDANT:  Yes, sir.
13      THE COURT:  And they are married and not
14  separated or divorced?
15      THE DEFENDANT:  Yes, sir.
16      THE COURT:  And do you have brothers and
17  sisters?
18      THE DEFENDANT:  One brother.
19      THE COURT:  And have you received visits
20  from your family?
21      THE DEFENDANT:  Yes, sir.
22      THE COURT:  Okay.  Is there any -- anything
23  further you'd like to say at this time?
24      THE DEFENDANT:  No, sir.
25      THE COURT:  All right.  We'll close the

                    CHRISTINA WALLACE
                 Certified Shorthand Reporter          27
                      (903) 639-2176

1   hearing and the Court will prepare the docket sheet, and

2   all the Court's rulings are on record.  All right.  Thank

3   you.

4                    (End of hearing.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

STATE OF TEXAS        )

COUNTY OF MORRIS      )

    I, Christina M. Wallace, a Certified Shorthand Reporter and Notary Public in and for the State of Texas, do hereby certify that the foregoing 28 pages constitute a full, true and correct transcription of the proceedings had in the hearing on pretrial motions in the above-captioned cause; thereafter, reduced to typewritten form by me and under my supervision.

    I further certify that this transcription of the record of the proceedings truly and correctly reflects the exhibits, if any, admitted into evidence.

    WITNESS MY HAND on this the 27th day of March, 1995.

*Christina M. Wallace*

Christina M. Wallace, CSR
CSR No. 2972
Certification Expires:  12-31-96

Business Address:
Route 3, Box 322
Hughes Springs, Texas  75656

Telephone:
(903) 639-2176

$ 123.25   preparation cost

CHRISTINA WALLACE
Certified Shorthand Reporter        29
(903) 639-2176