

CAUSE NO. 12,764

THE STATE OF TEXAS

VS.

BILLY JOE WARDLOW

§

§   IN THE DISTRICT COURT OF
§
§   TITUS COUNTY, TEXAS
§
§   76TH JUDICIAL DISTRICT

STATEMENT OF FACTS

JURY PANEL QUALIFICATIONS AND EXEMPTIONS

October 6, 1994

VOLUME 6 of 43 volumes

FILED IN
COURT OF CRIMINAL APPEALS

OCT 1 1 1995

Troy C. Bennett, Jr., Clerk

ORIGINAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

FILED IN
COURT OF CRIMINAL APPEALS

OCT 1 1 1995

Troy C. Bennett, Jr., Clerk

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

1

VOLUME 6

2

JURY PANEL QUALIFICATIONS AND EXEMPTIONS

3

OCTOBER 6, 1994                           PAGE/VOLUME

4    APPEARANCES . . . . . . . . . . . . . . .        1/6

5    MORNING SESSION . . . . . . . . . . . . .        3/6

6    POTENTIAL JURORS SWORN  . . . . . . . . .        4/6

7    1ST JURY PANEL GROUP QUALIFIED  . . . . .        4/6

8    POTENTIAL JURORS SWORN  . . . . . . . . .       32/6

9    2ND JURY PANEL GROUP QUALIFIED  . . . . .       32/6

10   SECOND GROUP SEATED . . . . . . . . . .        111/6

11   COURT ADJOURNED . . . . . . . . . . . .        151/6

12   COURT REPORTER'S CERTIFICATE  . . . . . .      152/6

13

14

15                        * * * * *

16

17

18

19

20

21

22

23

24

25

CAUSE NO. 12,764

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | TITUS COUNTY, TEXAS |
| | § | |
| BILLY JOE WARDLOW | § | 76TH JUDICIAL DISTRICT |

STATEMENT OF FACTS

JURY PANEL QUALIFICATIONS AND EXEMPTIONS

October 6, 1994

**VOLUME 6 of 43 volumes**


Before Honorable Gary R. Stephens

Judge by Judicial Assignment

(Venue changed from Morris County, Texas)


APPEARANCES


ATTORNEYS FOR THE STATE OF TEXAS:

          MR. RICHARD TOWNSEND
          District Attorney
          Morris County Texas
          Morris County Courthouse
          Daingerfield, Texas 75638

          and

          MR. RANDY LEE
          Assistant District Attorney
          Cass County Texas
          P.O. Box 940
          Linden, Texas 75563

ATTORNEYS FOR THE DEFENDANT:

        MR. BIRD OLD, III
        Old, Rolston & Old
        P.O. Box 448
        Mt. Pleasant, Texas 75456-0448

            and

        MR. LANCE HINSON
        Law Offices of Danny Woodson
        P.O. Box 399
        Mt. Pleasant, Texas 75456-0399

1    On the 6th day of October, 1994, the

2  above-entitled and numbered cause came on for trial

3  before said Honorable Court, Judge Gary R. Stephens of

4  Midlothian, Texas, serving by judicial assignment in the

5  District Court of Titus County, Texas, on change of venue

6  from Morris County, Texas and the following proceedings

7  were had:

8

9    (The following occurred in the presence

10  of the potential jury panel:)

11

12    THE COURT:   Counsel may be

13  seated.

14    We have summoned a number of people down

15  here for jury service, we need all of you in the room

16  when I start and obviously we can't get everybody in this

17  room since we have as many of you in the hallway as we

18  do in this room.

19    I am Gary Stephens, I am a Judge out of

20  Ellis County up close to Dallas.  I have been assigned

21  the case that arose over in Morris County and it is a

22  capital murder case.

23    What we are going to do this morning is

24  discuss with prospective jurors the principles of law

25  involved in a capital murder case.  I will explain how

1    the jury selection starts and then we will start jury

2    selection next week.

3              Before we do so, as I said, I must have

4    everybody in the courtroom and I can't do it without

5    getting rid of some of you.

6              Now, when I say "getting rid of you" I

7    don't mean to sound like I don't want some of you but I

8    know there's going to be several of you that have

9    exemptions or disqualifications so what I want to do with

10   the group in the room right now is briefly go over your

11   qualifications in order to be jurors.  I will then

12   discuss your exemptions and any of you that believe you

13   are exempt or disqualified I will talk to individually

14   then I will do the same with the next group.

15             Hopefully we will then narrow this group

16   down to where we can get all of you in the courtroom then

17   I will start into my normal voir dire which is the

18   explanation of the law and the procedures.

19             Now, none of you are under oath right

20   now so what I want you to do, I know we don't have a list

21   of everybody in the room yet but I want everybody in the

22   room to raise your right hand to take your oath as a

23   prospective juror.

24

25             (Potential jurors sworn.)

1          THE COURT:  You may lower your

2    hands.  Now, each of you are sworn in and every statement

3    that you make to us will be under oath.  All right.  Let

4    me  get  my  notes  out  and  we  will  go  over  your

5    qualifications.

6          I'm  going  to  introduce  all  of  the

7    parties after we narrow the group down so if you will

8    just bear with me, we can't figure a quicker way to do

9    it than we are doing it.

10          All right.  In order to be a juror you

11    must be at least 18 years of age, you just be a citizen

12    of this state and of Titus County.  You also must be

13    qualified under the Constitution and laws to vote in

14    Titus County.  You don't have to be registered to vote

15    but you have to be eligible to vote.

16          You also have to be of sound mind and

17    good moral character, you must be able to read and write.

18    You also must not have served as a juror for a six day

19    period during the preceding three months in a county

20    court or during the preceding six months in district

21    court.

22          A county court is a court where you

23    would have served with five other people, you would have

24    had a jury of six people, a district court is a court

25    where you would have served with 11 other people with a

1    total of 12 people on the jury.

2                   So if you have been a juror in a case

3    in the past six months and there were 11 other jurors you

4    may not be qualified, if you have served in the last

5    three months with five other people you may not be

6    qualified so you need to talk to us if you have been on

7    jury service.  I don't mean being brought down here and

8    being dismissed, I mean actually sitting on a jury and

9    hearing a case.

10                  If you have ever been convicted of a

11   felony or if you are currently under indictment or other

12   legal accusation of a felony or theft whether a felony

13   or misdemeanor then you also will not be eligible to

14   serve on the jury.

15                  So if any of you have ever had a felony

16   conviction whether you spent time in jail or whether you

17   were on probation we need to talk to you.

18                  If anyone has ever had a theft

19   conviction we need to talk to you.

20                  And theft would also include in the past

21   few years a hot check, if you have had a hot check and

22   that check results in a case being filed, you had to go

23   to court on that case you may not be qualified.

24                  So if you think that applies to you

25   let's talk about it and find out whether or not you are

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

1    qualified.

2              Also   if   you   are   currently   under

3    indictment awaiting a trial on some felony charge or if

4    you are waiting trial on some kind of misdemeanor theft

5    charge you would not be qualified and we need to discuss

6    it.

7              Now, those are the qualifications you

8    must   possess   in   order   to   be   a   juror,   those   are   the

9    "disqualifications" I guess I should say that might keep

10   you from being a juror but you also have exemptions.

11             An exemption is something you may take

12   on a case to case basis.   It does not disqualify you,

13   it's just a right that you have to be excused from jury

14   service.

15             If you are over 65 years of age you may

16   claim your exemption for the case and be dismissed.   That

17   doesn't mean that you will be removed from the jury pool,

18   you will be brought back in when needed on other cases.

19             If you have legal custody of a child or

20   children younger than 10 years of age and your service

21   on   the   jury   would   require   you   to   leave   that   child

22   unattended then you may taken an exemption but if it's

23   a two parent home and one parent normally picks the child

24   up and if the other parent's service on the jury would

25   not impede the ability to pick up your child then you

1    really don't have an exemption.   The exemption is to

2    protect your children.

3                       So if your service would actually

4    require you to neglect your child or children we don't

5    want you on the jury and we want you to take this

6    exemption.

7                       If you are a student in a public or

8    private school, college, junior college, if you are

9    actually attending school you may take your exemption.

10                      If you are an officer or employee of the

11   legislative branch of state government then you have a

12   right to an exemption and if you are a primary caretaker

13   of an individual, regardless of that person's age but

14   again, like on the child, if you have somebody else in

15   your home that takes care of this individual then you

16   might not have an exemption but if you are the sole

17   caretaker or primary caretaker and your service on the

18   jury would cause you to leave an invalid unattended you

19   then have an exemption that we would encourage you to

20   take.

21                      Now, each of you have heard the

22   exemptions, each of you have heard the disqualifications.

23   You have not heard anything about "work", I cannot let

24   you off of this jury for work reasons.

25                      I anticipate that it will take us a

1  month, maybe six weeks to pick a jury.  During that time

2  period none of you will have to be down here at the

3  courthouse from day to day.

4          You will be here most of this morning

5  then you will be brought back for individual questioning

6  on one day that you will probably be required to be down

7  here another half day.

8          If you are selected for the jury you

9  will then be sent home and told that you will be

10 contacted and told to come back when the trial starts.

11 If you are not selected then, of course you will be

12 released.  If you are selected you are not going to be

13 required to stay down here, though, while we are picking

14 the rest of the jury.  You can go about your own business

15 until the trial starts then you will be required to be

16 here.

17          And I anticipate that the trial will

18 last approximately two weeks so we will need whoever is

19 on the jury to be able to give us about a two week space

20 of their time, probably in November of this year.

21          Okay.  Now, I want to excuse everyone

22 to the hallway -- well, I don't know how I want to do

23 this, we are going to have you -- how many people have

24 an exemption or disqualification, raise your hand?

25          Okay.  That's not as many of you as I

1    thought we might have.

2           I'll tell you what, I'll tell you what

3    we will do, if the ones out there that are not in the

4    room can remain quiet like you have we will just go ahead

5    and bring forward everybody that believes they have an

6    exemption or disqualification starting with the first

7    row.

8           Sheriff, you just -- I will leave it up

9    to you to bring them up one at a time.

10          What is his name?

11          A VOICE:   His name is Jaime

12   Yepez, he's exempt because sometimes we don't have anyone

13   to keep our kids and also he cannot read or write that

14   much of English.

15          THE COURT:   Does the State

16   have any objection to him claiming the objection?

17          MR. TOWNSEND:   None.

18          MR. OLD:   No.

19          THE COURT:   Do you have a

20   juror number, ma'am?

21          MR. OLD:   "270."

22          THE COURT:   Juror 270.

23          Excuse me just a minute.   Okay, ma'am,

24   if you will just hand that to him you are free to go.

25          Okay.   We have a hearing problem, what

1   is your name?

2                              THE      POTENTIAL      JUROR:

3   Ottinger, "O T T I N G E R."

4                              THE COURT:  Do you have your

5   jury summons?

6                              MR. OLD:  "257."

7                              THE COURT:  "257."  And your

8   problem?

9                              THE POTENTIAL JUROR:  I have

10  a hearing problem.

11                             THE COURT:  All right.

12                             THE POTENTIAL JUROR:   I am

13  also on medication.

14                             THE    COURT:    What   is   your

15  medication for?

16                             THE POTENTIAL JUROR:  Fluid,

17  I collect fluid.

18                             THE COURT:  Does it require

19  you to go to the bathroom often?  Are you under a

20  doctor's care at this time?

21                             THE   POTENTIAL   JUROR:    Yes,

22  sir.

23                             THE COURT:  Would you be able

24  to sit for an hour to an hour and a half without going

25  to the restroom?

1          THE POTENTIAL JUROR: No, sir.

2    Not when I take my medication.

3          I didn't take it this morning, I'm going

4    to have to take it when I get back.

5          THE COURT:  Were you on the

6    first row, sir?

7          THE POTENTIAL JUROR:  Yes,

8    sir.

9          THE COURT:  Could you hear me?

10          THE POTENTIAL JUROR:  Yes,

11   sir.  I could hear you, I -- some.

12          THE COURT:  You could see me,

13   you couldn't hear?

14          THE POTENTIAL JUROR: Not real

15   good.

16          THE COURT:  Mr. Old, Mr.

17   Townsend?

18          MR. TOWNSEND:  I have no

19   objection, Your Honor.

20          MR. OLD: I have no objection.

21          THE COURT:  Sir, we are going

22   to excuse you, you are free to go.

23          Thank you for coming down.  I will keep

24   your jury summons.

25

1                    (A discussion at the bench out of the

2      hearing of the jury panel.)

3

4                          MR. OLD:   Judge, I think at

5      all stages if the decision has to be made the State has

6      to make the first decision.

7                          THE COURT:  But once they say

8      they have no objection and you have an objection it's

9      going to be bother you to tell me that you have an

10     objection in front of the citizen?

11                         MR. OLD:   If I try to keep

12     them on the jury it is.

13                         THE COURT: Why don't you just

14     tell me, if you say you don't have an objection, you

15     don't think he's exempt, you just say, "Judge, I'm not

16     sure that he's exempt", that lets me know you don't

17     agree.

18

19                    (The following occurred in the presence

20     and hearing of the potential jury panel:)

21

22                         THE COURT:   Okay.   Sheriff,

23     next.

24                    Sir, let me have your jury certificate,

25     please.

1          This is "number 16, Bobby Brown."

2          Yes, sir, Mr. Brown.

3                    THE POTENTIAL JUROR:   All

4    right.   My wife works for Jimmy White and I have

5    discussed this case with him.

6                    THE COURT:   Sir, this is

7    normally something that has to be discussed when we bring

8    you down for the individual questioning.

9                    THE POTENTIAL JUROR:   Yes.

10                   THE COURT:   Just because you

11   know or think you know about the case doesn't disqualify

12   you and that's why we have individual questioning.

13                   All I can excuse you for today would be

14   your exemption or disqualifications so we will have to

15   talk to you about this problem individually.

16                   THE POTENTIAL JUROR:   Yes.

17                   THE COURT:   Next.

18         May I have your summons, please?

19         This is "number 125, Charles Taylor."

20         Yes, sir, Mr. Taylor.

21                   THE POTENTIAL JUROR:   I am

22   leaving for the Service in six weeks.

23                   THE COURT: Any objection from

24   the State or Defendant?

25                   MR. TOWNSEND:  None.

1           MR. OLD:   No.

2           THE COURT:   All right, sir.

3    You are excused.   Good luck.

4           How are you doing, ma'am?

5           THE POTENTIAL JUROR:   Fine.

6           THE COURT:   "Number 230,

7    Felicia Cannon."

8           Yes, ma'am.

9           THE POTENTIAL JUROR:   I'm

10   under indictment for theft.

11          THE COURT:   Are you currently

12   under indictment for the charge now or have you been to

13   court?

14          THE POTENTIAL JUROR:   No.

15          THE COURT:   And is it here in

16   this county?

17          THE POTENTIAL JUROR:   Yes.

18          THE COURT:   Does the State

19   have any objection?

20          MR. TOWNSEND:   No.

21          THE COURT:   Mr. Old?

22          MR. OLD:   I didn't understand.

23          THE COURT:   She is under

24   indictment for theft, she has a pending theft case.

25          MR. OLD:   No objection.

1          THE COURT:   Let me have this
2     if you would.
3               You are excused.
4               This is juror "A.E. Dunn, number 144."
5               Yes, sir.  And your reason for not being
6     able to serve?
7          THE POTENTIAL JUROR:  I am 83.
8          THE COURT:   You are free to
9     go.  You have a good day.
10              How are you doing, sir?
11         THE POTENTIAL JUROR:   Fine.
12         THE   COURT:    "Billy   White,
13    juror 295."
14              Yes, Mr. White.
15         THE POTENTIAL JUROR:   Number
16    one;  I  have  got  prostate  gland  trouble,  I'm  taking
17    medication, every hour, hour and a half I am up five or
18    six times and, number two; I'm involved in a lawsuit with
19    an  insurance  company,  supposed  to  start  depositions  in
20    those.
21         THE COURT:   We'll be able to
22    work  around  your  schedule  or  they  can  work  around  our
23    schedule if you are selected.
24              My   concern   would   be   your   medical
25    problem, we will normally go an hour, maybe an hour and

1   a half before we would break and if any juror needs to

2   break before if that juror raises their hand we would

3   certainly break for you.

4                    THE POTENTIAL JUROR:  I'm not

5   saying I want to get off, I just want to be sure,

6   normally I am up and down during the day I have to go

7   about every hour.

8                    THE COURT:  It won't bother

9   you to have to raise your hand and tell me you need to

10  go?

11                   THE POTENTIAL JUROR:  No.

12                   THE COURT:  You really don't

13  have an exemption I can let you take but I do appreciate

14  you telling me about it.

15                   THE POTENTIAL JUROR:  I just

16  wanted to share that with you and the lawsuit depositions

17  are in November.

18                   THE COURT:  We are not even

19  sure when we are going to start, if we get a jury in a

20  week we will be going in a week, if it's two months it

21  will be December.

22                   THE POTENTIAL JUROR:  Thank

23  you.

24                   THE COURT:  This is "number

25  374, David Stansell."

1          Yes, sir.

2                    THE POTENTIAL JUROR:   I was

3     arrested for possession of controlled substance.

4                    THE COURT:   What is the

5     substance?

6                    THE POTENTIAL JUROR:  Cocaine.

7                    THE COURT:   When were you

8     arrested?

9                    THE POTENTIAL JUROR:   Six

10    months ago.

11                   THE COURT:   Have you been to

12    court yet?

13                   THE POTENTIAL JUROR:   No.

14          Mr. Old is my lawyer.

15                   MR. OLD:   I represent him,

16    Your Honor.

17                   THE COURT:  Well, if he's got

18    a pending felony Mr. Townsend will be prosecuting him.

19          Then I have to assume neither side has

20    any objection to excusing him?

21                   MR. TOWNSEND:   No objection.

22                   THE COURT:  Yes, sir.  I need

23    your summons, please.

24          "64, Johnny Bennett."

25          Mr. Bennett.

1          THE POTENTIAL JUROR:   When I

2     was in Waco I was picked up on a shoplifting charge and

3     I also am schizophrenic.

4          THE COURT:   What happened on

5     the shoplifting charge?

6          THE POTENTIAL JUROR:   They

7     took me to jail and I stayed for 30 days.

8          THE COURT:   Okay.  Sounds to

9     me like you have a conviction.

10          Defense or State have an objection?

11          MR. TOWNSEND:  No.

12          MR. OLD:  No.

13          THE COURT:   You are free to

14     go.

15          Next?

16          Thank you, sir.

17          "368, Timothy Cheek."

18          Yes, Mr. Cheek.

19          THE POTENTIAL JUROR:   I work

20     late nights, I babysit during the day, my wife works

21     days.

22          THE COURT:   By "babysit" you

23     mean taking care of your own child?

24          THE POTENTIAL JUROR:   Yes.

25          THE COURT:   So you wish to

1   claim your exemption for a child under 10?

2                          THE POTENTIAL JUROR:  Yes.

3                          THE COURT:  You are free to

4   go.

5                          MR. TOWNSEND:  No objection.

6                          MR. OLD:  None.

7                          THE COURT: "379, Ben Halley."

8                   "Halley"?

9                          THE POTENTIAL JUROR:  Yes,

10  sir.  I am deaf in my left ear and if I'm not looking

11  directly at somebody I don't always understand them.

12  When they are talking directly --

13                         THE COURT:  But if you are not

14  looking direct at them you will not understand them?

15                         THE POTENTIAL JUROR:  Not

16  always.

17                         THE COURT:  Mr. Townsend?

18                         MR. TOWNSEND:  No objection,

19  Your Honor.

20                         MR. OLD:  No.

21                         THE COURT:  You are free to

22  go.

23                  Thank you, sir.

24                  Thank you, ma'am.  "297."

25                  Yes, ma'am.

1          THE POTENTIAL JUROR:    I am
2    currently enrolled at East Texas State University.
3          THE COURT:   And you wish to
4    take your exemption?
5          THE POTENTIAL JUROR:    Yes,
6    sir.  I do.
7          THE COURT:   You are free to
8    go.
9          Thank you, ma'am.
10          How are you doing, ma'am?
11          "253."
12          Yes, ma'am.
13          THE POTENTIAL JUROR:    I am
14    Lesley Sandlin, I have a serious illness in my family,
15    my younger sister had pneumonia and has been in intensive
16    care for two weeks and she has Down Syndrome and they
17    just released her from the hospital and my mom is 77
18    years old and is really kind of needing some help trying
19    to take care of her.
20          She has nurses, you know, come in
21    to --
22          THE COURT:  Is this something
23    that is going to be ongoing or will she only need care
24    for awhile?
25          THE POTENTIAL JUROR:  No.  At

1  this point they are just not sure.

2              She was in intensive care for two weeks

3  and I have just -- just gotten her home.

4              My mom lives in Texarkana and she is a

5  widow.

6              THE COURT:   So your sister

7  will be with your mother?

8              THE POTENTIAL JUROR:   Yes.

9              THE COURT:   And you are going

10  to have to go back and forth to Texarkana?

11              THE POTENTIAL JUROR:   If she

12  is -- she is in her home, there's a possibility if she's

13  not doing well that I will have to drive back and forth.

14              THE COURT:   Do you work?

15              THE POTENTIAL JUROR:   Yes.

16              THE COURT:   Do you have a

17  daytime job?

18              THE POTENTIAL JUROR:   Yes.

19              THE COURT:   Ma'am, the

20  problems you have told me about actually are not a

21  disqualification.  If you were the primary caretaker such

22  as if your sister was in your home you would be.

23              THE POTENTIAL JUROR:   I do

24  understand.

25              THE COURT:   This is probably

1      something the lawyers need to go think about and it may

2      cause them not to select you for the jury but it's not

3      anything I need to let you go for today.

4                          I wish I could.

5                          THE POTENTIAL JUROR:  I just

6      wanted them to be aware.

7                          THE COURT:  When you fill out

8      the questionnaire there will be some place in there, tell

9      us again in the questionnaire about your problem and

10     maybe we can make some arrangements for you.

11                         Thank you, ma'am.

12                         I am talking to someone I'm not going

13     to let them -- until you let them go you just --

14     otherwise I'm not going to receipt them.

15                         Yes.  This is "81."

16                         Yes, ma'am, Mrs. Turner.

17                         THE  POTENTIAL  JUROR:    My

18     father has just had major surgery and is in a nursing

19     home in Mount Vernon, my mother can't drive and I'm the

20     primary caretaker of my mother.

21                         THE COURT:  You wish to take

22     your exemption?

23                         THE POTENTIAL JUROR:  Yes.

24                         THE COURT:  Mr. Old?

25                         MR. OLD:  No objection, Your

1   Honor.

2                       THE COURT:   You are free to

3   go, ma'am.   Thank you very much.

4                       I will keep this if it's all right.

5   (Indicating)

6                       "321."

7                       Mrs. Thomkins.

8                       THE   POTENTIAL   JUROR:   My

9   husband had a stroke two years ago and I have to stay

10  with him.   I don't have anyone to take care of him.

11                      THE COURT:   So you are asking

12  for your exemption for taking care of an invalid?

13                      THE   POTENTIAL   JUROR:   Yes,

14  sir.

15                      THE COURT:   Mr. Townsend, any

16  objection?

17                      MR. TOWNSEND:   None.

18                      THE COURT:   Mr. Old?

19                      MR. OLD:   None.

20                      THE COURT:   You are free to

21  go.

22                      Thank you very much for coming up this

23  morning.

24                      Thank you, ma'am.   "Number 39."

25                      Now you may start.

1          THE POTENTIAL JUROR:  I'm not
2  a resident of this county.
3          THE COURT:  A resident of what
4  county?
5          THE POTENTIAL JUROR:  "Camp."
6          THE COURT:   You   are   not
7  qualified, you are free to go.
8          Thank you.
9          How are you doing, ma'am?
10          THE POTENTIAL JUROR:  Fine.
11          THE COURT:  Let me take that.
12  (Indicating)
13          "389."
14          Yes, Mrs. Brown.
15          THE POTENTIAL JUROR:  I am -
16  - have kidney problems and I'm a diabetic and I have
17  trouble with my bowels, controlling my bowels.
18          THE COURT:  We would normally
19  require you to sit in the jury box an hour, an hour and
20  a half.  You are telling me you can't do it because of
21  your medical problem?
22          THE POTENTIAL JUROR:  Yes.
23          THE COURT:  Mr. Townsend?
24          MR. TOWNSEND:  No objection.
25          MR. OLD:  None.

1          THE COURT:   Thank you.   You

2   are free to go.

3          Thank you, ma'am.

4          "218."

5          Yes, ma'am.

6          THE POTENTIAL JUROR:   I am

7   insulin dependent diabetic, my blood sugar is not

8   stabilized, I have to take blood tests for my blood sugar

9   and take a shot.

10          THE COURT:   Do you take shots

11   daily?

12          THE POTENTIAL JUROR:   Yes,

13   sir.

14          THE COURT:   So if we have you

15   on the jury you would have to go back and take how many

16   shots a day?

17          THE POTENTIAL JUROR:   Two.

18          It depends on how it's doing that day

19   but at least two.

20          THE COURT:   Did you say you

21   have to have a test everyday?

22          THE POTENTIAL JUROR:   Well,

23   you test it.

24          THE COURT:   Yourself?

25          THE POTENTIAL JUROR:   Yes,

1    sir.  For blood sugar.

2                    THE  COURT:   Ma'am,  I'm  not

3    sure  that  you  are  not  able  to  sit,  if  you  were  can  you

4    feel  --  without  taking  the  test  can  you  feel  that

5    something  is  about  to  occur  that  you  need  this  shot?

6                    THE  POTENTIAL  JUROR:   Yes.

7              I  feel  like  it  right  now  as  I  am  --

8    after  standing  so  long.

9                    THE  COURT:  Does  stress  effect

10   you?

11                   THE  POTENTIAL  JUROR:   Yes,

12   sir.

13                   THE  COURT:   Once  you  begin  to

14   feel  whatever  you  feel  from  this  illness  does  it  cause

15   you  to  not  be  able  to  concentrate  and  listen?

16                   THE  POTENTIAL  JUROR:   Yes.

17   It  makes  me  real  sleepy.

18                   MR.  TOWNSEND:   No  objection.

19                   THE  COURT:  Mr.  Old?

20                   MR.  OLD:   No  objection.

21                   THE  COURT:   You  are  free  to

22   go,  ma'am.

23              Thank  you.

24              Good  morning,  how  are  you  doing?

25              "166."

1              Yes, ma'am.

2                          THE POTENTIAL JUROR:  I'm in

3    the process of moving to another county.

4                          THE COURT:  What county?

5                          THE POTENTIAL JUROR:  Camp

6    County.

7                          THE COURT:  And when will you

8    be completing this process?

9                          THE POTENTIAL JUROR:  This

10   weekend.

11                         THE COURT:  Okay.  Then you

12   are free to go.

13             Thank you very much, ma'am.

14                         THE BAILIFF:  That's it, Your

15   Honor.

16                         THE COURT:  Okay, folks.

17             I appreciate it, you all have been

18   patient with me.  I did not lose as many as I thought

19   through the exemption.

20             What I would like to do is to bring in

21   the other group to do the same thing then we are going

22   to figure out how I'm going to talk to all of you in this

23   small room.

24             Again, I thank you for your patience.

25             Hold on just a minute, let me talk about

1    some procedures.

2

3                    (The Court conferred with the District

4    Clerk.)

5

6                    THE COURT:   All right, I'm

7    going to ask you all to excuse yourself to the hallway

8    so I can bring in the other group and when I do bring you

9    back in I will bring you back in in a certain order, your

10   name will be called and you will have to take a seat in

11   a certain order the next time but we will bring in our

12   other group and see how many people that we have that are

13   exempt.

14

15                   (Whereupon the second group of potential

16   jurors was called into the courtroom and the following

17   transpired:)

18

19                    THE   COURT:    Well,  good

20   morning. I see some unhappy faces.

21                    THE BAILIFF:   That was all,

22   Your Honor.   That's it, Your Honor.

23                    THE COURT:  I am Gary Stephens

24   and I am a Visiting Judge out of Ellis County which is

25   up near Dallas and you all have been summoned as

1   prospective jurors for a capital murder case.

2             You know there was a group of people in

3   this room before you, they are also summoned as

4   prospective jurors and obviously I can't get everybody

5   in this room, that's why we had to bring you in as two

6   groups.

7             What we are going to do this morning is

8   to discuss qualifications to be a juror and I'm going to

9   discuss with you the exemptions you may take.

10            After I discuss the qualifications and

11  exemptions I will talk to the ones of you who believe

12  that you are not qualified or wish to take an exemption

13  then we will try to combine the two groups, depending on

14  how many people are left and I will go into what we call

15  "voir dire" which is the start of our jury selection

16  process this morning.

17            I will discuss with the group, you and

18  the other group either together or we may have to break

19  into two sections but I will go over the general

20  principles of law that apply in all criminal cases.  I

21  also then will discuss with you capital murder and the

22  issues involved in a capital murder trial then you will

23  be asked to fill out a questionnaire.

24            After the questionnaire is filled out

25  you will be excused then we will bring back jurors one

1    at a time and we will probably bring in six to 10 people

2    a day because the State and Defense both have a right to

3    talk to you individually and they may talk to you

4    anywhere from five minutes to an hour and a half each.

5    We never know until the selection starts how long we will

6    talk to a juror.

7              So this morning when you leave you will

8    not know whether you are on the jury or not unless you

9    have been excused.  If you are excused then, of course

10   you don't come back.  If you are not excused we bring you

11   back for that other individual selection then you will

12   be told whether or not you are on the jury.

13             If you are selected for the jury you

14   won't have to wait while we select the entire jury, you

15   will be sent home.

16             Then this case will be tried probably

17   in November, you will be given a date and told to come

18   back.

19             When the trial does begin I anticipate

20   that it will last probably two weeks.

21             All right.  Now you know why you are

22   here and what we are doing.  I want to go, before I go

23   over anything with you I am going to ask each of you to

24   please stand and raise your right hands and take your

25   oath as a prospective juror.

1                    (Potential jurors sworn.)

2

3                         THE COURT:  You may lower your

4       hands, be seated.

5                         Now, folks, all of you have been sworn

6       so everything you tell me from this point on will be

7       under oath.

8                         Also when you fill out the questionnaire

9       all of the questions are being answered under oath.

10                        All right.  I'm going to go over the

11      qualifications and exemptions then we will discuss those

12      with the people that believe that they are disqualified

13      or want to take an exemption.

14                        In order to be a juror you must be at

15      least 18 years of age, you also must be a citizen of this

16      state and of Titus County, you must be qualified to vote,

17      although you do not have to be registered to vote, you

18      also have to be of sound mind and good moral character.

19                        I am from Ellis County, I don't know you

20      people.  If anybody has bad moral character come up and

21      tell me and we can excuse you for it.

22                        It normally doesn't work.

23                        You must be able to read and write, you

24      also must not have served as a juror for a six day period

25      during the preceding three months in county court, the

1   preceding six months in a district court.

2           Now, "a district court" is a court where

3   you would have served as one of 12 jurors, a "county

4   court" is a court where you would have served as one of

5   six jurors so if you have had jury service in the last

6   six months come talk to me because you may not be

7   qualified to sit on this jury.

8           If you have ever been convicted of a

9   felony or if you are currently under indictment or other

10  legal accusation of a felony then you are not qualified.

11  If you have a theft conviction then you are not qualified

12  or if you are under accusation of a theft you are not

13  qualified.

14          "A theft" would include hot checks so

15  if any of you have been unfortunate enough to maybe have

16  some hot checks that results in you going to court you

17  may have a theft type of conviction.

18          So if you have had any theft problem

19  that required you to appear before a judge and go to

20  court then talk to us because you may very well not be

21  qualified.

22          I think I also told you if you are

23  currently accused of a crime through legal process.  I

24  don't mean if somebody says you did something, I'm

25  talking about if it got to the point where you have been

1    indicted by a Grand Jury or you have been investigated

2    by the police you may want to talk to us and see whether

3    you have a disqualification.

4            Now, a disqualification is something we

5    can't waive.   In other words, if you live in another

6    county you are just absolutely disqualified, if you have

7    had a felony conviction you are disqualified, it's just

8    automatic, be sure to tell us about it.

9            An "exemption" is something you may take

10   if you wish to take, you don't have to.

11           If you are over 65 years of age you may

12   take your exemption for this case, you are put back into

13   the jury pool so if you take an exemption you don't lose

14   out on your right to sit on a jury.   It's on a case by

15   case basis.

16           So if you don't want on the jury and you

17   are 65 tell us and you will be released.

18           If you have legal custody of a child or

19   children under the age of 10 and your service would

20   necessitate leaving those children unattended then you

21   have an exemption that you may take.

22           If you are a student at a public or

23   private school then you also have an exemption that you

24   may claim.

25           So if anybody is going to school just

1   let us know and if you want to take your exemption you

2   can, but again, you may waive it if you wish.

3          If you are an officer or employee of the

4   legislative branch of state government you also have an

5   exemption you may claim, if you are the primary caretaker

6   of a person who is an invalid you have an exemption so

7   if you are taking care of a family member who is an

8   invalid, regardless of this person's age, and your

9   service on this jury would mean that person would not get

10  the proper care they need then you should take the

11  exemption and let us know about it and no one is going

12  to take issue with you.

13         All right.   Now you have heard the

14  qualifications and exemptions, what I want to do is talk

15  to each one of you that believe that you are not

16  qualified or that you want to take exemption.

17         We will do it row by row.

18         When you come forward bring your jury

19  summons, hand it to me and we will get you located on our

20  list.  We want to make sure you are excused, that we know

21  you were here so we don't send the Sheriff after you.

22         So just come up one at a time and we

23  will try to get through as quick as we can.

24         Sheriff?

25         Of course you are going to have to let

1    the Sheriff know if you think you have an exemption.  We

2    are not going to talk to each one of you, only the ones

3    that believe you are disqualified.

4             Come around if you would, sir, and hand

5    me your jury summons.

6             "60."

7             Yes, Mr. Roberts.

8                 THE POTENTIAL JUROR:  I attend

9    Northeast Texas Junior College.

10                THE COURT:  You want to take

11    your student exemption?

12                THE POTENTIAL JUROR:   Yes,

13    sir.

14                THE COURT:  You are free to

15    go.

16             Thank you, sir.

17             Yes, ma'am.

18             How are you doing?

19             "440."

20             Yes, Ms. Newman.

21                THE POTENTIAL JUROR:  I work

22    for the 76th and 276th Judicial District Court, I have

23    prior knowledge.

24                THE COURT:   That's not a

25    disqualification unless both lawyers know you well enough

1    that they can excuse you, otherwise we have to bring you

2    down and talk to you and see whether or not your job and

3    your knowledge will disqualify you now.

4                        MR. OLD:  Juvenile probation?

5                        MR.  TOWNSEND:     In   Titus

6    County?

7                        THE POTENTIAL JUROR:  Well,

8    the "76th and 276th" which is "Titus County and Morris."

9                        THE   COURT:     "And   Morris

10   County"?

11                       MR.  TOWNSEND:   What  is  your

12   job?

13                       THE POTENTIAL JUROR:  I was

14   a secretary and I prepared the statistical reports and

15   the monthly reports.

16                       MR.  OLD:   We'll excuse her,

17   Your Honor.

18                       THE COURT:  You are free to

19   go then.  Thank you.

20                       THE POTENTIAL JUROR:  Thank

21   you.

22                       THE COURT: How are you doing,

23   ma'am?

24                  "77."

25                  Yes,   ma'am.    Give   us   your

1    disqualification or exemption.

2                    THE POTENTIAL JUROR:  I would

3    like to be exempt.

4                    THE COURT:  For what?  It can

5    only be for one of those reasons that I mentioned; you

6    are going to school or child under 10.

7                    THE POTENTIAL JUROR:  I don't

8    have any reason.

9                    THE COURT:  Ma'am?

10                    THE POTENTIAL JUROR:  I don't

11    have any reason.

12                    THE COURT:  You just don't

13    want to be here.

14          What we are going to have to do is fill

15    out a questionnaire in a few minutes and we will look for

16    that questionnaire then you will be scheduled for an

17    interview and a lot of people are going to tell us they

18    can't sit on a death penalty case but this is not the

19    time to be able to do that.  We have to put you on the

20    witness stand where both sides can question you about

21    your feelings about the law and ability to follow the

22    law, that is why this morning I can only talk to you

23    about those disqualifications and exemptions.

24          Sorry, sorry, you will have to stick

25    around, I will give you this back, you will have to stick

1    around for the duration.  (Handed to the witness.)

2                    Come forward, ma'am.

3                    Thank you.  (Handed to the Court.)

4                    "471."

5                    Yes, ma'am.

6                    THE POTENTIAL JUROR:  Well,

7    I teach school and you said "an employee of the state."

8                    THE  COURT:  Well, "state

9    government", teachers are not disqualified.

10                   THE POTENTIAL JUROR:  Okay.

11                   THE COURT:  Sorry.

12                   THE POTENTIAL JUROR:  A good

13   try anyway.

14                   THE COURT:  I know you have

15   got a lot of children to take care of but that doesn't

16   excuse you.

17                   "137."

18                   Yes, ma'am.

19                   THE POTENTIAL JUROR:  I am

20   diabetic and I have to take a snack mid-morning and mid-

21   afternoon.  I thought you should know that.

22                   THE COURT: Ma'am, we normally

23   will be in the courtroom an hour, maybe an hour and a

24   half, take a break and come back into the courtroom so

25   would that fit in with your schedule if you needed to

1    take a break?

2                        THE POTENTIAL JUROR:   Yes.

3    If it's during the right hour.

4                        THE COURT:  Well, if anybody

5    ever needs to take a break, when I don't call for a break

6    all you have to do is raise your hand and we can recess.

7                        THE POTENTIAL JUROR:  Okay.

8                        THE COURT:  When you fill out

9    the questionnaire there will be a question in the back,

10   "Do you have any medical reason that you can't serve?"

11                       THE POTENTIAL JUROR:  Just

12   insulin.

13                       THE COURT:  Yes, ma'am.  But

14   that's in the questionnaire and we will know what to

15   focus on when we talk to you individually.

16                   Thank you, ma'am.

17                   Just go sit back down.

18                   Good morning, sir.

19                   "279."

20                   Yes, sir.

21                       THE POTENTIAL JUROR:   I am

22   over 65.

23                       THE COURT:  You are free to

24   go.

25                   Thank you, sir.  I'm going to turn this

1    in.   (Indicating)

2              How are you doing?

3              THE POTENTIAL JUROR:   Doing

4    just fine, Judge.

5              THE COURT:   "214."

6         Yes, Mr. Sisk.

7              THE POTENTIAL JUROR:   I take

8    Class II narcotics daily.   I don't know whether that

9    would exempt me or not, I thought I might tell you.

10             THE COURT:   What are you

11   taking?

12             THE   POTENTIAL   JUROR:

13   Methadone for a nerve disorder and sometimes I get so bad

14   that I'm not really much good.

15             THE COURT:   If you are under

16   stress does that nerve disorder get worse?

17             THE POTENTIAL JUROR:   Yes.

18             THE COURT:   Whenever your

19   nerve disorder gets worse does it get to the point that

20   sometimes you are not able to concentrate on what you are

21   doing or what is going on around you?

22             THE POTENTIAL JUROR:   Yes,

23   sir.  It gets so bad, what I have got is a nerve disorder

24   called "RSD" which is a sympathetic nerve disorder is

25   what it amounts to, sympathetic nerves get burning and

1    hurting so bad I can't concentrate on anything.

2                         MR. TOWNSEND:  No objection.

3                         MR. OLD:  No objection.

4                         THE COURT:  Sir, the lawyers

5    have agreed to excuse you because of your medical reason.

6                    Good luck.

7                    Excuse me, I need to keep this.  Okay.

8    Thank you.  (Indicating)

9                    How are you doing, ma'am?

10                   "394."

11                   Yes, ma'am.

12                        THE POTENTIAL JUROR:  I don't

13   have no custody but I have two grandkids that I keep with

14   me all the time.

15                        THE  COURT:   They  live  with

16   you?

17                        THE  POTENTIAL  JUROR:   Yes.

18   The live with me all the time.  I don't have custody of

19   them.

20                        THE COURT:  How old are they?

21                        THE POTENTIAL JUROR: Five and

22   six.

23                        THE COURT:  I believe you are

24   covered by that exemption.

25                        Mr. Old, do you have any objection or

1  Mr. Townsend?

2  MR. OLD:   I presume that she

3  is saying the children live with her and not the parents?

4  THE POTENTIAL JUROR:   They

5  live with me.   I don't have any custody of them.

6  THE COURT:   They spend the

7  night with you, they wake up with you, you just don't

8  have legal custody?

9  MR. OLD:   In fact you are

10  raising them?

11  THE POTENTIAL JUROR:   Yes.

12  MR. OLD:   No objection.

13  MR. TOWNSEND:   No objection.

14  THE COURT:   We are going to

15  let you take the exemption.   You are free to go.

16  THE POTENTIAL JUROR:   Thank

17  you.

18  THE COURT:   How are you doing

19  this morning?

20  THE POTENTIAL JUROR:   All

21  right.

22  THE COURT:   "90."

23  Yes, sir.

24  THE POTENTIAL JUROR:   I have

25  a severe closed head injury, I had a car accident in

1    1985.

2                          THE COURT: And what lingering

3    condition do you still have from that injury?

4                          THE POTENTIAL JUROR:   I am

5    still on disability, I go to the hospital to see a

6    doctor.

7                          THE COURT:  How often do you

8    go?

9                          THE POTENTIAL JUROR:  Once a

10   year.

11                         THE COURT:  You are not able

12   to work?

13                         THE POTENTIAL JUROR: No, sir.

14                         THE COURT:  What, as a result

15   of your head injury what are you not able to do?  I mean

16   how does it effect you?

17                     I know you are disabled but does it

18   effect your thinking ability?

19                         THE POTENTIAL JUROR:   Yes,

20   sir.

21                         THE COURT:  Your motor skills

22   or what, your thinking abilities?

23                         THE POTENTIAL JUROR:  Well,

24   it's kind of like that guy that was up here awhile ago

25   because of his nerves, stuff like that, if I get in a

1   bind or something like that I can't --

2                        THE COURT:  "Can't think?"

3                        THE POTENTIAL JUROR: No, sir.

4                        THE COURT:  Mr. Townsend?

5                        MR. TOWNSEND:  No objection.

6                        MR. OLD:  No objection.

7                        THE COURT:  You are free to

8   go.

9                  Thank you, sir.

10                 "260."

11                 Yes, ma'am.  "Mrs. Glenn."

12                       THE POTENTIAL JUROR:  I am

13  going to college and I want to try to get out of this

14  because I can't miss the classes.

15                       THE COURT:  You are currently

16  enrolled in college?

17                       THE POTENTIAL JUROR:  Yes.

18                       THE COURT:  You have a student

19  exemption and you are free to go.

20                 Thank you.

21                 Thank you, ma'am.

22                 "370."

23                 Yes, ma'am.

24                       THE POTENTIAL JUROR:  I do

25  group travel for Travel Magic, we will be traveling the

1   18th of November, we are too close in to the traveling

2   date to cancel the whole trip which would mean the loss

3   of several thousand dollars in deposits.

4                    THE COURT:  All right.  Ma'am,

5   I don't -- how long will the trip be?

6                    THE POTENTIAL JUROR:    Four

7   days.

8                    THE COURT:   I don't see any

9   problem with you taking a trip and still being eligible

10  to serve on this jury.  It will not be going to trial

11  before the 18th of November.

12                   THE POTENTIAL JUROR:  Oh, you

13  won't?

14                   THE COURT:   So if you are

15  selected as a juror you are free to take your trip and

16  I don't see us starting this case until toward the end

17  of November.

18                   If we were to get started first we

19  are not going to knock anybody out of a vacation that

20  will --

21                   THE POTENTIAL JUROR:  This is

22  a group trip my husband and I, just the two of us are

23  taking a trip on the 27th of November for four days.

24                   THE COURT:  Four days?

25                   THE POTENTIAL JUROR:  Yes.

1              THE      COURT:        In      the
2    questionnaire that you will fill out in a little while
3    it will ask you I think the next to the last page will
4    ask you whether you plan to be out of the county, just
5    list those dates and we will work around your schedule,
6    if you are selected we will work around and if you are
7    not we won't worry about it.

8              THE POTENTIAL JUROR:     All
9    right.

10             THE COURT:  Thank you, ma'am.
11        Good morning, ma'am, how are you doing?
12        "Number 1."
13        Yes, ma'am, Ms. Clark.

14             THE    POTENTIAL    JUROR:      My
15   husband was disabled on September 2nd, he's doing okay
16   but --

17             THE   COURT:    When  did  this
18   happen?

19             THE      POTENTIAL      JUROR:
20   September 2nd, '94.

21             THE COURT:  So are you taking
22   care of him right now?

23             THE POTENTIAL JUROR:   Well,
24   not anymore, you know, he's well and everything but we
25   are kind of doing the business and sometimes he helps,

1    you know, he wants me to be there.

2                        THE COURT:  Ma'am, those are

3    really not legal disqualifications that will authorize

4    me to excuse you.

5                        We will still need to talk to you

6    individually but if you will just put down --

7                        MR. TOWNSEND:  I believe

8    there's an agreement.

9                        MR. OLD:  Okay.

10                       THE COURT:  If they have

11   agreed then I'm going to agree and you are free to go.

12                       Thank you, ma'am.

13                       Thank you.

14                       How are you doing, ma'am?

15                       THE POTENTIAL JUROR:  Fine.

16                       THE COURT:  "102."

17                       Okay, ma'am.

18                       THE POTENTIAL JUROR:  I have

19   three children and one I have to take, carry to Band

20   after school, I don't have anyone else to do it.

21                       THE COURT:  How old is that

22   child?

23                       THE POTENTIAL JUROR:  He's

24   twelve.

25                       THE COURT:  Okay.

1          THE POTENTIAL JUROR:   Then I

2   have a three year old that I have to pick up after pre-

3   school and my husband can't be there, he's working in

4   Sulphur Springs part-time at the hospital.

5          THE COURT: So if he's at work

6   in Sulphur Springs you have no one to pick up your three

7   year old, is that what you are telling me?

8          THE POTENTIAL JUROR:   Yes.

9          THE COURT:  Unless you do it?

10          THE POTENTIAL JUROR:  Right.

11          THE COURT:   And you wish to

12   take your exemption?

13          THE POTENTIAL JUROR:   Yes.

14          THE COURT:   State have any

15   objection?

16          MR. TOWNSEND:  No.

17          THE COURT:   Defense have an

18   objection?

19          MR. OLD:  No.

20          THE COURT:   You are free to

21   go.

22          Thank you, ma'am.

23          "184."

24          Yes, ma'am.

25          THE POTENTIAL JUROR:   Well,

1    number one; I'm not living in this county right now.

2                          THE COURT:   Well, then you

3    don't -- what do you mean "right now", have you moved out

4    of the county temporarily or permanently?

5                          THE POTENTIAL JUROR:   Well,

6    I don't know for sure.   My husband and I are separated.

7                          THE COURT:   So you are not

8    living here anymore?

9                          THE POTENTIAL JUROR:   No.

10                         THE COURT:   Then you want to

11   -- I assume neither side has an objection since she is

12   not in county?

13                         MR. TOWNSEND:   No.

14                         MR. OLD:   No.

15                         THE COURT:   You are free to

16   go.

17                    Thank you, ma'am.

18                    "37."

19                    Yes, sir.

20                         THE POTENTIAL JUROR:   I have

21   got an illness called PSC, it's a liver disease and any

22   kind of stress related situations are not really good for

23   me.

24                         THE COURT:   What do you mean

25   "not really good?"

1              THE   POTENTIAL   JUROR:    It

2   upsets me and causes me to have some problem.

3              THE COURT:  All right.  This

4   is something that both lawyers have a right to talk to

5   you about further.

6              Mr. Townsend, do you want to talk to him

7   further on individual voir dire or excuse him at this

8   point?

9              MR. TOWNSEND:  I will excuse

10  him.

11             MR. OLD:  I will excuse him.

12             THE COURT:  You are free to

13  go.

14             Thank you.

15             Good morning, sir, how are you doing?

16             THE  POTENTIAL  JUROR:    All

17  right.

18             THE COURT:  Do you have the

19  other part?  I guess this is still the same number, "62."

20             What is your name?

21             THE POTENTIAL JUROR:  "Wayne

22  Baker."

23             THE COURT:  Yes, Mr. Baker.

24             THE  POTENTIAL  JUROR:    Yes.

25  I have recently opened my own business and if I have to

1   close the doors on it I do not have any income coming in.

2                    THE COURT:  This is something

3   the lawyers have a right to discuss with you at length

4   if they want to.  I'm going to have to bring you back.

5                    If you will put in your questionnaire

6   the fact that if you are not there you don't get any

7   income.

8                    THE POTENTIAL JUROR:  Yes.

9                    THE COURT:   I'm sure it's

10  something they will consider but I can't excuse you today

11  for that reason.

12                   THE POTENTIAL JUROR:  Okay.

13                   THE COURT:  But I don't think

14  either lawyer will want anybody on the jury that is going

15  to be losing money and more concerned about their

16  business.  But again, I can't let you go today on that.

17                   Okay.  Here you go.  (Indicating)

18                   "49."

19                   Yes, sir.

20                   THE POTENTIAL JUROR:   I'm

21  going through some legal action now and Bird is my

22  attorney.

23                   THE COURT:  Mr. Townsend?

24                   MR.  TOWNSEND:   I  have  no

25  objection to dismissing him, Your Honor.

1                          MR.  OLD:    I  do  not,  Your

2       Honor.

3                          THE  COURT:    You  are  free  to

4       go.    Thank you.

5                          THE  POTENTIAL  JUROR:    Thank

6       you.

7                          THE  COURT:    How  are  you  doing

8       this morning?

9                          THE  POTENTIAL  JUROR:    I  am

10      doing pretty well.

11                         THE  COURT:    "336."

12                  Yes,  sir.

13                         THE  POTENTIAL  JUROR:    Simply

14      that  I  have  used  Bird  on  a  couple  of  occasions  as  an

15      attorney.

16                         THE  COURT:    Is  he  currently

17      representing  you?

18                         THE  POTENTIAL  JUROR:    No.    He

19      does  not.

20                         THE  COURT:  All  right.    That's

21      something  that  Mr.  Townsend  needs  to  know  about,  it

22      doesn't  disqualify  you,  if  they  want  to  excuse  you  they

23      can  but  actually  what  we  normally  do  is  to  let  the

24      lawyers  talk  to  you  to  see  whether  or  not  it  would  effect

25      your  ability  to  be  fair.

1           THE POTENTIAL JUROR:   Okay.

2           MR. OLD:   I don't think Mr.

3  Townsend opposes him.

4           I will state on the record that he and

5  I have a very close personal relationship.  I don't know

6  how it would effect you.

7           THE COURT:   If both of you

8  will agree to excuse him I will excuse him.

9           MR. TOWNSEND:  No objection.

10          THE COURT:   Okay.  You are

11  free to go.

12          I   will   keep   this   right   here.

13  (Indicating)

14          "492."

15          Yes, sir.

16          THE POTENTIAL JUROR:   I am a

17  surveyor and I have got two highway contracts under

18  contract and I'm supposed to be down at Carthage this

19  morning on a bridge.

20          THE COURT:   All right, sir.

21          THE POTENTIAL JUROR:   I have

22  got a road job starting Monday.

23          THE COURT:   Business reasons

24  are no excuse from this type of a jury.

25          We don't know when we are going to start

1   trial, we will work, we will tell you what our schedule

2   is and you can work around our schedule or we can work

3   around yours when we call you for the individual

4   questioning.

5           We will certainly get you in here on the

6   most convenient day but I cannot just excuse you for work

7   related reasons.  I will have to have that questionnaire

8   filled out and put in there what your problem is on that

9   at this trial and maybe we can get together and do

10  something about it.  But right now I can't.

11          THE POTENTIAL JUROR:  I have

12  got a bunch of people waiting on me today right now.

13          THE COURT:  Well, I've got a

14  bunch of people waiting on me, too.

15          Next.

16          "186."

17          Yes, ma'am.

18          THE POTENTIAL JUROR:  I am

19  going to be out of the country from November 6th to the

20  23rd.

21          THE COURT:  I don't think that

22  is going to be when we try this case.  I don't know, it

23  normally takes four to six weeks to get the jury, we

24  don't want to knock anybody out of a trip.

25          THE POTENTIAL JUROR:  It's a

1    cruise.

2                    THE COURT:  "A cruise?"

3                    THE POTENTIAL JUROR:  Yes.

4                    THE COURT:  We will certainly

5    work around your schedule.  Fill out the questionnaire

6    and in the questionnaire it will ask you if you are going

7    to be out of the county and you can tell us those dates

8    and we'll not knock you out of the trip.

9                    MR. OLD:  I would agree to

10   excuse her.

11                   THE COURT:  Ma'am, would you

12   come back for just a moment?

13                   I'm  sorry.  I  don't  have  your

14   questionnaire and I didn't remember your name.

15                   Let me have that again.

16                   "186."

17                   Ma'am, we had a little brief discussion

18   while you were taking your seat and you are free to go.

19                   THE POTENTIAL JUROR:  Thank

20   you.

21                   THE COURT:  Okay.  "Number

22   3."

23                   Yes, sir.

24                   THE POTENTIAL JUROR:  I take

25   care -- I take care of a handicapped person and she

1    wouldn't get the proper care.

2                          THE COURT:   Do you do it

3    daily?

4                          THE POTENTIAL JUROR:   Monday

5    through Friday.

6                          THE COURT:  All day long?

7                          THE POTENTIAL JUROR:   From

8    12:00 to 10:00.

9                          THE COURT:  "12:00 noon until

10   10:00 p.m.?"

11                         THE POTENTIAL JUROR:   Yes,

12   sir.  In Mount Vernon.

13                         THE COURT:  Mr. Townsend, any

14   objection?

15                         MR. TOWNSEND:  No.

16                         THE COURT:  Mr. Old?

17                         MR. OLD:  Is it something he

18   does for a living?

19                         THE COURT:  Is this your job

20   or a family member or friend?

21                         THE POTENTIAL JUROR:  It's a

22   family member.

23                         THE COURT:  Are you paid to

24   do this?

25                         THE POTENTIAL JUROR:  No.

1          THE COURT:  You just volunteer

2     your time?

3          THE POTENTIAL JUROR:    Yes,

4     sir.

5          MR. OLD:  No objection.

6          THE COURT:  You are free to

7     go.

8          Thank you.

9          How are you doing, ma'am?

10          "242."

11          Yes, ma'am.

12          THE POTENTIAL JUROR:  I am -

13     - have a back injury and I take muscle relaxants and it

14     messes up my mind.

15          THE COURT:  Do you take them

16     every day?

17          THE POTENTIAL JUROR:    Every

18     day.

19          THE COURT:   "Everyday?"

20          Mr. Townsend?

21          MR. TOWNSEND:  No objection.

22          MR. OLD:  No objection.

23          THE COURT:   You are free to

24     go.

25          Thank you.

1      (Short off the record discussion at the
2  bench out of the hearing of the potential jury panel and
3  Court Reporter.)

4

5                    THE COURT:   Yes, ma'am.
6                    THE   POTENTIAL   JUROR:      My
7  husband   is   involved   at   Lone   Star   Steel   with   those
8  lawsuits, the personal injuries, asbestos and things like
9  that.

10                   THE COURT:   I don't know about
11 those lawsuits.   Would there be anything about that that
12 would disqualify her so far as law is concerned?

13                   MR. TOWNSEND:    Not that I'm
14 aware of.

15                   MR. OLD:   Not that I'm aware
16 of.

17                   THE   COURT:      Just   in   the
18 questionnaire, ma'am, so we will note that, that's not
19 a   disqualification,   there's   nothing   in   that   suit
20 apparently that has anything to do with this issue.

21                   How are you doing?
22                   "406."

23                   THE POTENTIAL JUROR:   I live
24 in Tyler, I am a full time student at TJC.

25                   THE   COURT:      I'm   going   to

1   excuse you because you are a student.

2               You are free to go.

3               Okay. Thank you.

4               "264."

5               Yes, ma'am.

6                        THE POTENTIAL JUROR:   I have

7   children under age.

8                        THE COURT:   And do you work?

9                        THE POTENTIAL JUROR:   Yes.

10                       THE COURT:   What time do you

11  get off?

12                       THE POTENTIAL JUROR:   Like

13  3:00.

14                       THE COURT:   What do you do

15  with your children while you are at work?

16                       THE POTENTIAL JUROR:   They go

17  to school.

18                       THE COURT:   How old are they?

19                       THE POTENTIAL JUROR:   Ten and

20  11.

21                       THE COURT:   And when you get

22  off at 3:00 do you go pick them up, how do they get home

23  from school?

24                       THE POTENTIAL JUROR:   Walk.

25                       THE COURT:   Is there anybody

1    at home when they get home?

2                              THE POTENTIAL JUROR:   My

3    husband.  But he be asleep because he work nights.

4                              THE COURT:  When does he have

5    to go to work?

6                              THE POTENTIAL JUROR:   8:00

7    o'clock.

8                              THE COURT:  At night?

9                              THE POTENTIAL JUROR:   Yes,

10   sir.

11                             THE COURT:   When does he

12   normally get up?

13                             THE POTENTIAL JUROR:  About

14   7:45.

15                             THE COURT:  So you normally

16   are there from 3:15 on?

17                             THE POTENTIAL JUROR:  Yes.

18                             THE COURT:  And if you were

19   to be on this jury and not able to be at home you are

20   telling me your husband would either lose sleep or the

21   children would be in the house without anyone to take

22   care of them, is that correct?

23                             THE POTENTIAL JUROR:  Yes.

24                             THE COURT:  You are really

25   close to having an exemption, I'm not sure you are quite

1    there.

2                    Mr. Townsend?

3                         MR. TOWNSEND:  No objection.

4                         THE COURT:  Mr. Old?

5                         MR. OLD:  No objection.

6                         THE COURT:  The lawyers have

7    agreed to excuse you.

8                    Thank you, ma'am.

9                    How are you doing, ma'am?

10                        THE POTENTIAL JUROR:  Fine.

11                        THE COURT:  "215."

12                   Yes, ma'am.

13                        THE POTENTIAL JUROR:  I just

14   recently started taking care of my mother who is

15   disabled.

16                        THE COURT:  Are you taking

17   care of her in your home?

18                        THE POTENTIAL JUROR:  In my

19   home.  I just moved her down here.

20                        THE COURT:  What is her

21   disability?

22                        THE POTENTIAL JUROR:  She is

23   really old and I think she is beginning to get

24   Alzheimer's and she has diabetes.

25                        THE COURT:  Do you work?

1          THE POTENTIAL JUROR:  I have

2   been but I'm not right now.

3          THE COURT:  Because of your

4   mother?

5          THE POTENTIAL JUROR:  Yes.

6          THE COURT:  Mr. Townsend, do

7   you have any objection?

8          MR. TOWNSEND:  No.

9          THE COURT:  Mr. Old?

10          MR. OLD:  None.

11          THE COURT:  You are free to

12   go.

13          Good luck with your mother, ma'am.

14          "215", did I get the right number on

15   that?

16          "496."

17          Yes, ma'am.

18          THE POTENTIAL JUROR:  Him and

19   another guy was -- him and another guy stole --

20          THE COURT:  Who is "him?"

21          THE POTENTIAL JUROR:  "Mr.

22   Wardlow."

23          Him and another boy stole my husband's

24   truck in '91.

25          THE COURT:  I guess it's fair

1   to that you have a bias?

2                    THE POTENTIAL JUROR:   I am

3   afraid so.   I don't think you need me.

4                    MR. TOWNSEND:  No objection.

5                    MR. OLD:  No objection.

6                    THE COURT:  "171."

7              Yes.

8                    THE POTENTIAL JUROR:   I am

9   enrolled in school.

10                   THE COURT:   Where are you

11  going to school?

12                   THE     POTENTIAL     JUROR:

13  Northeast Texas Community College.

14                   THE COURT:  You are free to

15  go.

16              Thank you, sir.

17              How are you doing?

18              "172."

19              Yes, sir.

20                   THE POTENTIAL JUROR: Mr. Old

21  was my mother's lawyer in divorce court, it has been

22  several years ago and also I go to school the second

23  Wednesday of the month.

24                   THE COURT:   What kind of

25  school?

1          THE POTENTIAL JUROR:   It's

2    OSHA training in Dallas.

3          THE COURT:   That won't --

4    that's not an exemption I can let you have and knowing

5    either of the lawyers is not a disqualification unless

6    your knowledge or friendship with that lawyer would be

7    such that you couldn't be fair to the other side.

8          THE POTENTIAL JUROR:   Okay.

9          THE COURT:   Now, even though

10   Mr. Old has represented your family would you be able to

11   judge the facts in this case based on what you hear and

12   not based on personalities with the lawyers?

13          In other words, knowing Mr. Old would

14   you give that side kind of a head start?

15          THE POTENTIAL JUROR:   A

16   little, not, you know, not bad but --

17          THE COURT:   Mr. Townsend, do

18   you want to talk to him individually with the rest of the

19   group?

20          MR. TOWNSEND:   Let's talk to

21   him individually.

22          THE COURT:  Why don't you fill

23   out that questionnaire and where it asks whether you know

24   the lawyers tell us your knowledge of the attorney and

25   we can decide whether to bring you back for a full

1    discussion.

2              Thank you, sir.

3              Good morning, sir.  How are you doing?

4                   THE POTENTIAL JUROR:  Fine.

5                   THE COURT:  "472."

6              Yes, Mr. Freeman.

7                   THE POTENTIAL JUROR:  Only

8    thing that I would know would disqualify me for this,

9    about three or four years ago I had "theft under $20" at

10   Wal-Mart.

11                  THE COURT:  Did you go to

12   court?

13                  THE POTENTIAL JUROR:  I did

14   time and made a bond.

15                  THE COURT:  You did time in

16   jail?

17                  THE POTENTIAL JUROR:  One

18   night.

19                  THE COURT:  And you were

20   bonded out the next day?

21             Did you ever go back to court?

22                  THE POTENTIAL JUROR:  No.

23                  THE COURT:  What happened on

24   the case?

25                  THE POTENTIAL JUROR:  We just

1    paid the fine and let it be.

2                         THE COURT:    Sounds like a

3    conviction if he paid a fine.

4                         MR. OLD:  How old were you at

5    that time?

6                         THE POTENTIAL JUROR:    I was

7    17.

8                         MR. OLD:  "Seventeen?"

9                         THE    POTENTIAL    JUROR:

10   "Seventeen."

11                        THE COURT:    Does the State

12   have an objection?

13                        MR. TOWNSEND:  None.

14                        THE COURT:  Defense?

15                        MR. OLD:  None, Your Honor.

16                        THE BAILIFF:  That's it, Your

17   Honor.

18                        THE COURT:  All right, folks.

19   I appreciate your patience, I don't know whether I can

20   get everybody in here or not.  The Sheriff is going to

21   have to decide whether we are going to be able to fit

22   everybody.

23                        THE    BAILIFF:    It  will  be

24   tight.

25                        THE COURT:    Some of you are

1   going to have to stand, we are going to try to squeeze

2   everybody in here, what I'm going to have to do first is

3   excuse you from the courtroom because I have to bring you

4   back in in numerical order, that's why we did excuse

5   whoever was not qualified.

6          So we are going to excuse you back just

7   to the hallway, not out of the courthouse, then we are

8   going to take a short break then we are going to re-seat

9   you in numerical order.

10         If you have a high number -- excuse me,

11  I'm backward, low number gets the seat, the high number

12  gets to stand.

13         We will call you back in.

14

15         (Off the record discussion at the bench

16  out of the hearing of the jury panel and Court Reporter.)

17

18                  THE COURT:   He says he has a

19  felony conviction, he did time.

20         This is "240."

21                  THE POTENTIAL JUROR:   "Gerald

22  Craddock."

23                  THE COURT:   Any objection?

24         MR. OLD:   No objection.

25                  THE COURT:   You are free to

1    go.

2

3                        (Recess.)

4

5                        THE COURT:   Let's get on the

6    record.

7                        Let the record reflect that there are

8    no prospective jurors present in the room.

9                        MR.   OLD:    The   Court   has

10   indicated that it did not indicate to place the calling

11   of the jurors by name and number on the record.  If that

12   is not going to be done we would request that the Clerk

13   certify for the record who did not show.

14                       THE COURT:  All right.  Would

15   it be easier to have the Clerk certify who did not show

16   or would it be easier to have the roll all on the record?

17                       Let's go off the record.

18

19                       (Off   the   record   discussion   at   the

20   bench.)

21

22                       THE   COURT:     Back   on   the

23   record.

24                       I will not have the roll call on the

25   record, it is my understanding the District Clerk will

1    call the roll and the names will then be called out by

2    the Deputy Sheriff assigned to this case to the courtroom

3    and then I will order the District Clerk to prepare the

4    list for both the State, Defense and the Court stating

5    who was here and who did not appear and a list of ones

6    excused.

7              So I will need a list with three parts.

8              Is that a problem for the Clerk's

9    Office?

10             THE DISTRICT CLERK:   No.

11             THE COURT:   Let's proceed and

12   off the record.

13

14             (Off the record discussion.)

15

16             THE COURT:   Sheriff, how many

17   people are in the hallway?

18             Counsel, approach the bench for a

19   moment.

20

21             (Off the record discussion at the

22   bench.)

23

24             THE COURT:   Bobby, I'm going

25   to go ahead and let you finish calling the roll so we

1    will know who is here but I don't want anyone else in the

2    courtroom right now.

3                        Go ahead and finish your roll.

4

5                        (Off the record discussion.)

6

7                        THE COURT:   I call out the

8    name "LaWyanda Jeffery."

9                        THE BAILIFF:   "LaWyanda?"

10                       THE COURT:   That's as close

11   as I can get.

12                       THE BAILIFF:   No answer,

13   Judge.

14                       THE COURT:   Bobby, he must

15   have heard "67" taken off so "67, Jeffery" is not

16   present.

17                       She was here?

18                       Sheriff, see if there's anyone outside

19   whose name has not been called or number.

20                       THE BAILIFF:   There's nobody

21   left outside, Your Honor.

22                       THE COURT:   All right.   Then

23   we will have to find out what happened to Mrs. Jeffery.

24                       There are several of you obviously --

25   let's go on the record -- there are several of you

1    obviously standing, we cannot get all of the group

2    inside, I'm going to ask all the people in the aisle, not

3    in the back but in the aisle to go out in the hallway.

4              I'm going to talk to this group that is

5    seated and standing in the back.

6              While I'm talking to this group I'm

7    going to have the outside group begin filling out their

8    questionnaires and when I finish my comments with the

9    second group we will send the second group out to do

10   their questionnaires while I bring in the other group.

11             Does everybody understand what we are

12   doing?  I don't want anybody to leave for lunch, it's

13   almost lunch time, we need to get everybody accounted for

14   and get questionnaires before you leave the courtroom.

15             Does anyone have any questions right

16   now?

17             The ones in the aisle go to the hallway,

18   you will receive your questionnaires.  If there's

19   something you don't understand don't fill it out, I will

20   explain it when you come back.

21             All right.  Again I want to thank

22   everyone for your patience, it has been a pretty trying

23   morning for everybody and I know everybody is ready to

24   go so I want to get started and get into why you are

25   here.

1          All of you have been told that you are

2    here as prospective jurors for a capital murder case, I

3    want to again introduce myself and the parties involved

4    in this case.

5          I am Gary Stephens, I am a Judge out of

6    the Dallas area as I sit, I live in Ellis County, I have

7    been assigned this case and will be picking the jury and

8    hearing the evidence and trying the case once the jury

9    is selected.

10          This case occurred or allegedly occurred

11    in Morris County in Cason.

12          The case was transferred from Morris

13    County to Titus County.

14          This District Attorney out of Morris

15    County will handle this case and that is Mr. Richard

16    Townsend.

17          Mr. Townsend, will you stand, please?

18          You may be seated.

19          I normally -- most of my work is in

20    Dallas and normally I introduce everybody, ask you if you

21    know them but I'm sure a lot of you know the lawyers so

22    I'm going to dispense with asking you if you know them.

23    There's a place in the questionnaire where you can tell

24    us whether or not you know the parties involved.

25          There is another District Attorney from

1    Cass County, Randy Lee that has been appointed to assist

2    Mr. Townsend.  He will be here from time to time also.

3           The Defense is represented by Mr. Bird

4    Old, III, he will be assisted by Mr. Lance Hinson, their

5    client is Mr. Billy Joe Wardlow.

6           Mr. Wardlow, would you stand?

7           Thank you, sir.  You may be seated.

8           Now as I told you this is a capital

9    murder case and what we are trying to do right now is

10   talk about some general principles of law that apply in

11   all cases then I will get more specifically into murder

12   and capital murder.

13          The first and most basic principle of

14   law is the presumption of innocence.  Simply because a

15   person may have been arrested for some offense is

16   certainly no evidence that the person is guilty.  The

17   fact that a person has been charged or indicted for a

18   crime is no evidence against the person charged.

19          The evidence in a trial must come from

20   the witness stand from witnesses who have been sworn to

21   tell the truth and have been examined and cross examined

22   by the lawyers.

23          You as a jury will decide the facts in

24   this case based upon the evidence you hear from the

25   witness stand.  You certainly should not base your

1    verdict on the fact that a person has been arrested or

2    is standing trial.

3             I know that all of you are here for jury

4    service and I'm sure all of you know this is a criminal

5    trial, you probably knew it before I started talking to

6    you this morning and I'm sure probably, if you did not

7    know who the Defendant was you probably talked to each

8    other and were wondering who the Defendant was and

9    wondering what he or she is charged with.

10            And, folks, that is perfectly normal.

11   We all do that.  But if there is anyone who is here and

12   wonders who the Defendant is here and what he did you may

13   very well have a preconceived idea and that's simply

14   because a person has been charged with a crime and you

15   are here as the juror that person must guilty.

16            And if you do have this mind-set or this

17   presumption then you certainly are not following the

18   basic principles of our law and that is the fact that

19   each of us are innocent until proven guilty.

20            The   terminology  "presumption   of

21   innocence" is something that lawyers involved in this

22   case take quite seriously.  It's the basic cornerstone

23   of our judicial system and if there's anyone in this

24   group that truly cannot presume a person to be not guilty

25   before a trial begins then you are just frankly not

1    qualified to sit on a jury.

2            Now, I have already talked to you about

3    your qualifications and exemptions and what we are

4    talking about now are not legal exemptions, exemptions

5    we went over earlier are the legal exemptions that you

6    may take in order to be on the jury, not only must you

7    be qualified as I have discussed, not only must you

8    either way, take or not take your exemption but you have

9    to be qualified and understand the law.  And if there's

10   anything in the law that you don't agree with and your

11   disagreement is such that you can't follow the law then

12   you are not qualified and that's what jury selection is

13   all about.

14            And, folks, there is absolutely nothing

15   wrong with any of you, if you can't follow some of the

16   law or don't believe in the law that applies in this type

17   of case, this is a free country, we have an absolute

18   right to agree or disagree with our laws.  We can

19   disagree with our law as much as we want but we still

20   have to be able to follow the law.

21            So, if some of you disagree with the law

22   but if you can set aside your disagreement and follow the

23   law you are qualified but if you have a disagreement with

24   some aspect of our law is so strong that you may not be

25   able to follow the law you may not be qualified and

that's why, the reasons the lawyers will have a chance to talk to you about the law involved so we can determine whether or not this is a case that you are qualified to sit on.

Now, in talking about presumption of innocence I want to go back like to the O.J. Simpson case; we have all had an opinion about O.J. is innocent or guilty, that opinion is based on what we have heard on the radio and TV and read in the newspaper. Even though we have read everything that may lead us to believe that he's guilty he is still entitled to the same presumption of innocence that anybody else is entitled to at any trial. And, you know, just because we have -- all have an opinion on O.J.'s case I don't know that any of us actually know what happened out there.

You know, we all -- we all think we have an opinion on O.J.'s case -- let me back up; we all do have an opinion and we all think that he did or didn't do it, whatever your mind-set is. But I don't think any of us actually could sit here and base a verdict in this case on what we have heard on the radio and television. We don't know whether it's the truth or not.

And we are going to do the same thing in this case that they are going to try to do in

California and that is to try to find 12 people, regardless of their ideas or opinions, who can give a fair trial to the person charged.

And I'm using the O.J. example just to let you know just because you may have heard something about a case doesn't disqualify you, just because you may know something about the parties involved you are not disqualified.

You only become disqualified if you have an opinion about the guilt or innocence of a person that is so strongly fixed in your mind that this opinion would influence your verdict.

So what I want are 12 of you that can keep an open mind and come into this case and tell me that you will base your verdict on the evidence and not on anything that you have heard about the people or the person charged or the people involved in this case, whether they be the lawyers, the Court, the Court Reporter, the witnesses, the victim or whomever. I want 12 fair people and I know we are going to be able to find it.

Now, the State has what we call the "burden of proof."

The State must prove all of the elements of the offense beyond a reasonable doubt. The defendant

1    has absolutely no burden of proof, he doesn't have to

2    testify, he doesn't have to present witnesses nor any

3    evidence of any nature.  He simply has to be here.

4                   The burden of proof will rest on the

5    State throughout this trial and will never shift to the

6    defendant.

7                   Now, if the defendant and his lawyers

8    want to sit in the courtroom and work crossword puzzles

9    during this trial, frankly I don't care.  Mr. Wardlow has

10   nothing to prove to you.  He doesn't have to participate

11   in this trial, his lawyers don't have to participate in

12   this trial but they have to be present.

13                  Now, your sitting out there probably

14   wondering, what do you mean they don't have to

15   participate?

16                  Well, I mean since they are the ones

17   that have been accused they don't have to do anything to

18   help the State, the State has the burden, the State

19   brought the charges, the State has to prove the charges.

20                  If the State proves all of the elements

21   of the offense then quite frankly it's going to be the

22   jury's job to find the defendant guilty but if the State

23   fails to prove all of the elements of the offense then

24   Mr. Wardlow will stand at the end of the trial as he does

25   today and that is not guilty.

1   So when I am saying they don't have to

2   participate I want you know that he certainly has the

3   right to do so but the law requires the State to prove

4   the charges and that's why I'm telling you that Mr.

5   Wardlow and his lawyers have absolutely nothing to prove

6   to you.  They are just required to be here.

7   Now, the indictment in this case will

8   be read to the jury once the jury is selected, once that

9   indictment is read the defendant will enter a plea of

10  "not guilty" and the trial will begin.

11  Let's back up for a moment and talk

12  about an indictment; I'm sure there's a lot of you out

13  there that have an idea that if a person has been

14  indicted then they must be guilty.

15  Have any of you served on a Grand Jury?

16  All right.   I see several hands of

17  people that have served on a Grand Jury so several of you

18  will know what I'm talking about.  But a Grand Jury is

19  not a jury that decides the guilt or innocence of a

20  person charged with a criminal offense.  A Grand Jury is

21  a body of people who are empaneled to take a look at

22  alleged cases and decide whether there is enough to have

23  a trial.

24  But I don't know how your Grand Jury

25  works in this county, most of my work is in Dallas and

1    in Dallas you may have a Grand Jury look at one case in

2    a month or they may look at 200 cases in a day.

3                The proceedings in a Grand Jury are

4    secret, meaning that the public has no access to the

5    Grand Jury and the lawyers don't even have access to what

6    goes on in a Grand Jury until someone who testified in

7    the Grand Jury testifies in trial.

8                You may have a police report read to the

9    Grand Jury and that is all.  That police report may be

10   based upon information gathered by various police agency

11   or it may be just based upon what somebody in the

12   neighborhood said.  We never know exactly what is said

13   or told to the Grand Jury during the investigation so it

14   certainly would be inappropriate for any of you selected

15   for this jury to assume that simply because a person has

16   been indicted that person is guilty.

17               The indictment in a criminal case is a

18   document that lets the State know they have to prove, it

19   lets the Defense know what they are charged with, if they

20   want to prepare a defense they can do it but the

21   indictment is no evidence.

22               If any of you have been involved in a

23   divorce or civil lawsuit you know that the proceeding was

24   started with a filing of a petition, a petition that

25   alleges why you should have a divorce of why you should

be awarded money or why you should be ordered to pay money in a civil lawsuit and all an indictment is, it's a pleading, it's a pleading in a criminal case, lets everybody know what the charges are and after it's read to the jury the jury should just basically forget it because it is not evidence.

If the State stood up and read to you the indictment and sits down they wouldn't have presented anything for your consideration.

So I want to stress on each of you that just because a person has been indicted is absolutely no evidence that they are guilty.

I want 12 people who can think for themselves, I don't want 12 people on the jury that says, "Well, I have read in the newspaper that Mr. Wardlow is guilty so I think I will go along with the paper."

I don't want people on the jury that say, "Mr. Wardlow has been indicted so maybe that Grand Jury heard something I didn't hear so I think he must be guilty."'

I want people that have their own minds and independence and will look at the evidence and decide for themself the guilt or innocence of Mr. Wardlow and if you can tell me that you can do that I think you will be an excellent juror in this or any other case.

82

1          Now, I told you that the defendant does
2    not have to testify or participate but I want you to know
3    that he certainly has a right to participate in the
4    trial.   He can testify if he wishes to do so and he can
5    call witnesses to testify if he wishes to do so, that he
6    certainly always has a right to cross examine any
7    witnesses put on by the State.

8          If the defendant does choose to testify
9    then you are going to judge his testimony and credible
10   testimony the same as you will the testimony and
11   credibility of other witnesses that testified.   If Mr.
12   Wardlow chooses not to testify then you will then, you
13   are going to base your verdict on the other witnesses
14   that you heard from and you certainly cannot speculate
15   about why Mr. Wardlow didn't testify if he doesn't.

16         Speculation is not the basis of your
17   verdict, evidence, that's what you base your verdict on
18   so if a person testifies judges that testimony and that
19   credibility but if a person doesn't testify in his or her
20   trial then you don't have anything to judge or way
21   concerning that person's credibility and what you need
22   to do is to be able to just put it out of your mind and
23   weigh the facts that you have heard.

24         We certainly in this country don't want
25   people being convicted on speculation or guesswork so,

1   folks, you can't speculate.

2         If the defendant doesn't testify there

3   may be many reasons a person chooses not to testify.  You

4   may have a person that -- now, let me back up for a

5   moment, I am mentioning the attorneys and Mr. Wardlow

6   from time to time but when we are going through jury

7   selection we are not permitted to discuss the facts of

8   the case so when I am discussing various examples to try

9   to illustrate a point I don't want any of you to assume

10  that I'm using an example that will apply to this trial.

11  I'm talking about trials in general when I'm going over

12  principles of law.

13        Now, there may be many reasons a person

14  chooses not to testify.  A person may be borderline

15  retarded, maybe a person has a speech impediment, maybe

16  a person is just so shy if he or she testifies or gets

17  up to talk in front of a group of people they freeze up.

18  Maybe a person is just not as bright as some of the

19  lawyers that are going to be asking the questions.  You

20  may get somebody on the witness stand that is not as

21  educated as a lawyer and before the testimony is over the

22  lawyers may have that witness saying, "Black is white and

23  white is black."

24        Folks, there are hundreds of reasons why

25  a person may choose not to testify so that's why we are

1    not to speculate about a person's right not to testify,

2    if they do fail to testify, frankly, they have nothing

3    to prove then there's no reason to testify.

4             So I do want each of you to realize if

5    you are chosen you can't guess or speculate about

6    anything, you base your verdict on what you hear.

7             And I'm sure there are several of you

8    out there that are saying to yourself, "Judge, wait a

9    minute, if I'm charged with a crime and I'm not guilty

10   I am going to get up and tell the world I am not guilty."

11            Well, folks, if Mr. Wardlow is charged

12   with an offense and when that indictment is read to the

13   jury he's going to plead "not guilty" and he's telling

14   the world at that point that he's not guilty.

15            After that the State will put on all the

16   evidence that they have or want to put on and if Mr.

17   Wardlow wants to participate and put on evidence he can

18   but he doesn't have to.  No one has to incriminate

19   himself or give evidence against himself.

20            And for us to keep our system going the

21   way it is and have what I consider to be one of the best

22   legal systems in the world we are all going to have to

23   be able to go through some mental gymnastics and those

24   gymnastics include putting aside what we think we may

25   know about a case, putting aside guessing, basing our

1   decision on what we hear and what we understand, not what

2   we guess.

3           And there's nothing wrong if you can't

4   do it.  We have 200 people, we only need 12 of you but

5   we have 200 because there's going to be some of you out

6   there that just frankly can't sit on a case if a person

7   doesn't testify.  There's going to be some people out

8   there tell me they believe anyone indicted is probably

9   guilty.

10          I want honesty from you and I believe

11  you will be honest and we'll make this process as short

12  as we can but when we talk to you individually there may

13  be those that cannot follow the basic principles of law

14  that I have discussed.

15          Is there anybody that just doesn't

16  believe in our system?

17          In other words, is there anybody that

18  does not believe in the presumption of innocence or

19  somebody that doesn't believe that the State should be

20  the one that proves all the cases?

21          I see no hands so I take it that each

22  of you can follow the basic principles of law.

23          In Texas when the trial begins it

24  basically takes part in three phases, the first part of

25  the trial is the voir dire, the jury selection process,

1    that's what we are beginning now.

2              Once the jury is selected we start what

3    we call the "guilt or innocence phase of the trial", the

4    State will put on their evidence then they will rest, the

5    Defense, if they want to put on any evidence they put on

6    their evidence then they rest, both sides close, we

7    prepare what is called a "Court's Charge", the Charge

8    will contain all of the law that will apply when you are

9    reviewing the evidence.

10             The Charge will also list all of the

11   elements of the offense that must be proved before a

12   person can be found guilty.

13             After the Charge is read to the jury

14   each side will be permitted a certain length of time to

15   present their arguments or summation of the evidence then

16   the jury is retired to deliberate.

17             If you come back with a not guilty the

18   trial is over and we go home, if you come back with a

19   verdict of guilty then we enter into the punishment stage

20   of the trial.

21             And the punishment stage of the trial

22   sometimes -- well, in a punishment stage sometimes you

23   will hear evidence that maybe is not admissable in the

24   first part of the trial.

25             Now, the first part of the trial I guess

1    we could say is basically there to find out if something

2    happened and if so whether or not the defendant is

3    responsible.

4              If you find that the defendant is

5    responsible and is guilty then the second part of the

6    trial is to find out something about the person you have

7    convicted so that you can set the appropriate punishment.

8              So the first part of the trial after

9    jury selection, "Did he or did he not do it?"

10             Second part, "What kind of punishment

11   is appropriate?"

12             Now, what I've talked about so far

13   applies to all criminal cases including murder cases but

14   a capital murder case is a little bit different.  The

15   jury selection process takes longer in a capital case

16   because each side as I said earlier today has a right to

17   talk to the jurors individually about their ability to

18   follow the law.

19             Then once the jury is selected the first

20   part of the trial is the same as any other trial, the

21   State puts on their witnesses, the Defense puts on their

22   witnesses if they wish then you decide guilt or

23   innocence.

24             If you find a person guilty of capital

25   murder and the difference comes in the punishment stage

1    of a trial because in the punishment stage of a murder

2    trial there's only one or two punishments, it's either

3    life in the penitentiary or death by lethal injection.

4              But before I talk about what capital

5    murder is I want to go into a little bit of what murder

6    is.

7              We are going to hand out questionnaires,

8    in that questionnaire you are going to -- well, you are

9    going to have about 11 pages to fill out and on the first

10   page you are going to have a place that you can circle

11   how you feel about the death penalty and whether you

12   think it's appropriate or not.

13             The first question will ask whether you

14   believe the death penalty is appropriate in all murder

15   cases, if you do you circle Number 1, the next question,

16   Number 2, is a statement that you believe that the death

17   penalty is appropriate in some murder cases and you could

18   return a verdict which assessed the death penalty.  If

19   you -- if that's the way you feel then circle Number 2

20   and Number 3 says "I don't believe in the death penalty

21   but if the law provides for it I could assess it", that's

22   your feeling, that's three, right on down the line, you

23   have six different answers that will help these lawyers

24   kind of focus on whether they need to talk to you and

25   what they need to talk to you about.

But, you know, before you can fill out this questionnaire you need to know a little bit more about what murder is.

Murder is a homicide but not all homicides are murders so let's just classify a homicide as "unnatural death", homicide could result from a car accident or from a gunshot, we have justifiable homicide and we have non-justifiable homicide.

Our statute defines murder which is a homicide basically is the intentional taking of another person's life without legal justification or excuse.  If there's a legal justification or legal excuse then it would not be murder.

If I were to go outside say in a park somewhere and discharge a firearm, shoot it straight up in the air and the bullet came down and killed somebody that would be a homicide but it wouldn't necessarily be murder.  I may not have intended to kill, I may very well be charged with negligent homicide.

Maybe I am charged with some other offense but I'm not guilty of murder because I had no intention to kill at that point.  Remember, murder is the intentional taking of another's life without legal justification or excuse.

Maybe I was drunk when I fired the gun

1    up in the air and it's absolutely no excuse at all, that

2    may very well show a callous disregard for the rights of

3    other people but in this example it's not murder because

4    there was no intention to kill.

5          There's another classic example, you

6    might come home and find your spouse in bed with someone

7    else, you might become so enraged you take a gun and

8    shoot one or both of them.

9          You have committed a homicide, maybe

10   it's murder, maybe it's not murder, that's what the jury

11   is to decide.  If a person acted on sudden passion and

12   this passion basically overcame your reason you may very

13   well be guilty of manslaughter but not murder but if you

14   know what you are doing and you wanted to kill those

15   people and you are calm and cool about it that's murder,

16   that's why we have juries look at the facts, take the

17   facts of each case, look at the events and decide what

18   events, if any was committed.

19         Maybe you see someone molesting a child

20   and you try to stop that person without using a weapon

21   and that person starts to overpower you and you have to

22   use a weapon to defend yourself and the child being

23   abused.  That is not murder, that's self-defense and

24   defense of the third person.

25         You would absolutely be guilty of no

offense, that would be a not guilty case based on those facts.

Murder is the intentional taking of another person's life without legal justification and excuse, "I want to kill and I do it", that's murder.

Now, I'm going into this because I'm going to have a lot of people fill out their questionnaire and sometimes if I don't get into what murder is and isn't I will have a lot of people tell me that they believe the death penalty is appropriate unless maybe a person is killed out of self defense and then maybe life in prison would be appropriate.

See, if you kill out of self defense there's no offense committed, if you kill by defending another person there is no offense committed so when you are filling out that questionnaire and the question asks you to explain your feelings on the death penalty and we ask what is your feeling on the death penalty I want you to keep in mind what murder is and isn't because if there's a legal justification or excuse there's no offense committed and there's no punishment for that offense.

Now, I haven't told you what capital murder is.  You know that murder is the intentional taking of a life without legal justification or excuse.

1          Before I get to capital murder I want

2     to also talk about the punishment range for murder; you

3     probably wonder why we are going to do that if this is

4     a capital murder case.

5          We are going to do it because a capital

6     murder case could very well result in a finding of

7     murder, not capital murder, I will explain how that could

8     happen in a few minutes; if a person is found guilty of

9     murder in this state then the punishment would be a

10    minimum of five years to a maximum of 99 years or life

11    in the Texas Department of Criminal Justice.   There can

12    also be a fine assessed.

13          Also in Texas if a person is eligible

14    for probation the jury could consider probation for

15    murder.

16          In this state if a sentence assessed is

17    10 years or less then the jury must also decide whether

18    or not that sentence will be probated or served in the

19    penitentiary.

20          If you set a sentence of more than 10

21    years, 11, 12 or up then probation is not an option so

22    you would never consider probation but if you are on a

23    jury and find a person guilty and determine that the

24    appropriate sentence would be 10, nine, eight, seven, six

25    or five years and you also have to decide whether or not

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

probation should be granted.

And I'm sure there are lots of you that are sitting out there saying, "Well, Judge, you are sitting here telling me that I'm here for a capital murder and now you are talking to me about murder for probation."

Folks, we have a wide range of punishment, in our law we have a wide range of punishment provided by law because we have a wide range of offenses and the way an offense occurs.

If a person is eligible for probation in this state that means they must not have ever committed a felony offense or be on probation. If a person is eligible for probation and you are a juror and you are called upon to assess the punishment it may very well be something that you have to look at.

If you as a jury decide that you want the person probated the Judge has no choice, the Judge will put the person on probation for whatever period of time the Judge decides is appropriate up to a maximum of 10 years.

Now, on probation a person has many obligations, in addition to obligations that we have as citizens the obligations and responsibilities of a person on probation are set by the Judge, the jury does not

1    determine what those conditions are, the court does.

2          The jury decides guilt or innocence and

3    decides either prison or probation but the Judge

4    determines the probation condition.

5          Conditions of probation could include

6    the fact this person has to work and support his or her

7    dependents, has to remain in a specified area such as

8    Titus County, if a person lives in another county then

9    we can restrict that person to living in that county.

10   We can include in the probation conditions random

11   urinalysis for drug use.  The Probation Department would

12   have a right to visit the probationer at his or her work

13   address and home address.

14         One thing I try to impress upon anyone

15   that I put on probation is that basically he have been

16   found guilty of a crime, they deserve a prison sentence

17   and instead of spending that time in prison they can stay

18   on the street as long as they do what they are ordered

19   by the Judge.

20         If a person violates his or her

21   probation then he or she can be arrested, brought back

22   to court and without a jury trial and a determination can

23   be made by the Court as to whether or not probation was

24   violated.  If so the Judge can revoke the probation.

25         You may be on probation for 10 years,

1    it may be the last day of your probation and you may go

2    in for urinalysis and they find out that you have been

3    using marijuana or cocaine, you can get your probation

4    revoked and it can be revoked for 10 years, you can be

5    on probation for 10 years, you mess up on the last day

6    of probation and you are gone for 10 years.

7                    Probation is not necessarily a cakewalk.

8    I know a lot of people get a bad taste in their mouth

9    when they think about probation but there's so many

10   different ways that offenses can be committed, there's

11   so many different ways and conditions and the jury has

12   discretion and that's why I want you to think about

13   probation because I want you when you come back and talk

14   to us individually you are going to be asked whether or

15   not you can keep an open mind to probation in a murder

16   case and you are going to be asked whether or not you can

17   keep an open mind to life in prison or the death penalty

18   and if you cut off either end of the spectrum in a

19   capital case then you are not qualified.

20                    If you can keep an open mind and tell

21   me and these lawyers that you haven't excluded the high

22   or low side and that you will base your verdict on the

23   evidence then we want you on the jury.

24                    Now, you heard me say earlier that in

25   order for a jury to convict someone of murder you must

1   be convinced that this person took the life of another

2   without legal justification or excuse but you did not

3   hear me talk about motive.  There's no requirement that

4   the State prove why the killing occurred.

5              And if you think about it actually it

6   doesn't matter why it occurred.  If I kill somebody and

7   I don't have a legal excuse then I'm guilty of murder.

8              Why you did it is immaterial to the

9   issue of guilt but the motivation may be important to you

10  when you set punishment so in the first part of the trial

11  the reason a person commits the offense is unimportant,

12  "Did he or did he not do it, yes, or no?"

13             But in the second part of the trial you

14  are going to look at the motivation, look at all the

15  circumstances surrounding the offense and you determine

16  the appropriate punishment.

17             The motivation could be greed, it could

18  be anger, the motivation may be fear, the motivation may

19  be mercy, it may be out of love, it may be out of pure

20  meanness.  There are many reasons a person may kill.

21             Now, the reason he does it if it's not

22  a legal reason like self defense, again is immaterial to

23  guilt but that's why we have a two stage trial when you

24  try to find out something about the person and why he did

25  something then you get a feel for that person and

1    determine whether or not this person is a continuing

2    danger to society or whether this was an isolated event.

3    If you think the person that committed

4    murder is really dangerous and did so out of meanness,

5    for instance, if you think he's going to commit murder

6    in the future you may want to put that person in prison

7    for life.

8    But if you see that person acted out of

9    something other than anger or meanness, maybe a person

10   acted out of mercy, maybe a person acted out of love,

11   whatever, if you do believe that this person acted with

12   the  motivation that would not apply to the rest of time

13   -- in other words, if it were a mercy type killing you

14   might think that a person would never ever be a threat

15   to society and that it was an isolated instance and that

16   maybe it's the kind of case you would want to probate.

17   You might look at a person and based on

18   his or her age think that, well, what they did certainly

19   was not right but I can't see this ever happening again

20   because of peculiar circumstances of the way this

21   happened and that might be a person that you would want

22   to put on probation.

23   Again, all I'm asking each of you to do

24   is to try to keep an open mind and if you can keep an

25   open mind I want you on the jury, okay, and if not we

1    will have to excuse you and put you on another one.

2                Now, if you could never truthfully

3    consider probation for anyone convicted of murder I want

4    to know about it and so do these lawyers.

5                And like I said earlier, we are not

6    going to take issue with that, you have an absolute right

7    to your feelings and no one is going to disagree with

8    you.  You are going to have or we are going to have a lot

9    of you out there that are going to tell me you can't give

10   probation and I'm going to have a lot of you tell me that

11   you can't give life and I can't stress it more than I

12   have.  Just be honest and tell us how you feel.

13               When I'm talking about considering

14   probation, that you have to sit here before a trial

15   starts and tell me, "Yes, Judge, I will give probation

16   if a person is found guilty of this offense", I'm not

17   saying that at all.  I'm saying I want you to be able to

18   keep your mind open and consider it if appropriate, give

19   it -- it's not -- don't "give it" but when I talk about

20   "considering" I mean more than just give it a fleeting

21   thought.

22               It's kind of like if you are going to

23   buy a new car, maybe you would like to have a Rolls

24   Royce, maybe you would consider buying it but if you

25   don't make enough money to buy it there's no way that you

can buy a Rolls Royce, you considered buying it, you realized you can't and move on and buy something else. That's not the type of "consideration" that I'm talking about in "giving consideration in a murder case."

I'm talking about you have to be able, actually able to have an open mind and not only consider probation but give it in the appropriate case.

And it may be one case out of a thousand and if your mind is close to ever giving probation, fine, but if your mind is open, that it's a possibility, let us know.

Okay. We talked about murder, what is capital murder?

Capital murder is murder plus.

I told you that murder is the intentional taking of another's life without legal justification or excuse.

Capital murder is a murder which occurs during the commission of another felony. If a person is burglarizing someone's home and during the burglary he kills somebody then he may be guilty of capital murder. If a person commits a murder during a robbery or during an arson then he's guilty or may be guilty of capital murder, if a person kills two or more people in a criminal episode or transaction that would be capital

murder, like the O.J. Simpson case, two people were killed, that in Texas would be capital murder.

I don't know about California law, I don't care about California law but the killing of people in one transaction would be a capital murder, killing of a policeman or fireman while on duty would be capital murder, if you hire someone to kill another person that is capital murder.

So capital murder is murder plus, it's basically a murder that occurs during the commission of another offense.

In this particular case the indictment alleges that "On or about June 14th, 1993 the Defendant did intentionally and knowingly cause the death of a person by the name of Carl Cole by intentionally shooting him in the head with a firearm."

The indictment further alleges that the offense occurred during the commission or attempted commission of robbery.

So what do we have in the indictment?

We have two allegations; we have an allegation that the Defendant killed somebody and we have an allegation that he killed somebody during a robbery.

In order for a person to be guilty of capital murder under these circumstances you as the jury

1    would have to find that the murder was done intentionally

2    and that it was done during the commission of a robbery.

3    You might very well find out that a person committed a

4    murder but maybe it was not in a robbery -- and I'm not

5    talking about this case again, folks, I read you the

6    indictment and that's as close as I'm going to get to the

7    facts of this case.

8            Frankly, I don't know much more about

9    the case than I just told you.  I am sure some of you out

10   there have heard or read more about it than I know so

11   again we are getting away from specific instances

12   involving this case.

13           So if a person is involved or charged

14   with a capital murder during a robbery the State must

15   prove the intentional taking of a life and they must

16   prove that it was done during that robbery.

17           If the State doesn't prove that it

18   occurred during a robbery, you may believe that a murder

19   occurred but it wouldn't be capital murder without that

20   robbery element so then what would you do?

21           You would find the person guilty of

22   murder then you would have to set that punishment between

23   five or 99 years or life in the penitentiary or you may

24   find that murder did not occur but a robbery occurred

25   then you would find the person guilty of robbery and set

the appropriate punishment.

To be capital murder both had to occur, the murder during the commission or attempted commission of another offense.

Now, if a person is found guilty of capital murder then in the punishment stage of the trial the jury will answer certain questions, you don't go back there and just say, "Well, we think it's life or we think it's death", you answer some questions and based upon the answers to those questions the end result will either be a life sentence or a death sentence.

Once you find a person guilty of capital murder in essence the law says that the appropriate sentence is life.

Conviction of capital murder will automatically get a life sentence for the defendant period.

But our law also says that if the State believes that death is appropriate then they may ask the jury for death and they do this by asking the jury to answer certain questions.

Since the law presumes that life is the appropriate sentence upon conviction of capital murder and the State has the burden of proving the appropriate answer to questions that will be submitted to you as a

jury.

I can't tell you exactly what the questions are because it's going to depend on the facts of this case.   There will either be two or three questions, one question will ask about the future dangerousness of the defendant, it will ask whether or not you believe that the defendant will be a danger in the future.   If you believe based on the evidence that he will then you will answer that question, "Yes."

The second question, it may or may not be presented to you, depending on the facts, inquires as to the defendant's involvement in this particular offense, did he do the actual killing, if he didn't did he intend that a death occur?

You answer that question.   If you answer the first question "Yes" that he's going to be a danger in the future and you answer the question "Yes" that he either did the killing or intended that death occur you have got a death penalty, two "Yeses" equate to "death."

But there's a third question and that is a question we kind of give to jurors as an out, you are going to be under oath to render your verdict based on the law and the evidence and the evidence and the law and they tell you that, yes, this person is going to be a danger in the future and, yes, this person intended to

kill but there may be something in your heart that tells

you that death is not appropriate for this person because

of some mitigating circumstances.

Now, "mitigating" is not an excuse,

mitigation is something that may lessen the

blameworthiness or lessen the -- not "lessen the guilt"

but lessen the -- well, blameworthiness of the person,

the culpability of the person.

If you believe that a person is a danger

and they intended to kill but you don't believe that

death is appropriate you have got a problem as a juror

because if you answer those two questions appropriate,

you know, death occurs, that's what the third question

is for, the third question is asking you basically, okay,

folks, you have decided that death is appropriate based

on the answer to the questions, do you believe based on

all of the facts of the case including all of the

mitigating circumstances that the defendant should be

spared?

So it's an out. If you say "Yes it

should be" then it's life, if you say "No" then the two

questions that you have previously answered will dictate

that there is a death sentence.

Now, also another thing in a capital

murder case, a lot of people have told me in capital

1    murder cases if a person is guilty of capital murder they

2    are always going to be a danger in the future.

3                    And there's nothing wrong with you

4    believing that but I think you can see if that's your

5    attitude there's absolutely no reason for that first

6    question, the first question, is he going to be a danger

7    in the future, the first question asks the State to prove

8    it beyond a reasonable doubt so if there's any of you out

9    there that say in every case where I found a person

10   guilty of murder I'm going to find that person is going

11   to be a danger then again, folks, you probably are not

12   qualified because you are required as jurors to sit back

13   and reexamine the evidence when you assess punishment.

14                   Now, the punishment for a person guilty

15   of capital murder you know is going to be automatically

16   life, the State has to prove to you the other elements

17   before it ends up in a death sentence, so you stand back,

18   you reexamine, you look at the evidence and you look at

19   those questions.  You don't say automatically, you don't

20   say, "Yes" because that's what you wanted, you don't

21   decide that you want death and answer the questions

22   appropriately, you answer the questions based on the

23   evidence and let the laws dictate what the end results

24   are.

25                   Okay.  I know it's been a long morning,

1    I'm pretty well finished.

2            One other thing I do want to go into;

3    if you have an opinion about this case, as I said earlier

4    you have to set this opinion aside.  If you have any bias

5    or prejudice concerning this case or the law in general

6    you have to set it aside.  If you can't we don't want

7    you, if you can we want everyone.

8            I want you to fill out those

9    questionnaires, I want you to turn them back in.

10           Once they are filled out and turned in

11   you are free to go, we will bring you back individually

12   and once we get 12 jurors and an alternate we are going

13   to quit bringing you in.

14           So the ones in the first row and on back

15   are the ones we are going to be talking to and the ones

16   out in the hallway or second group we may or may not get

17   to them.

18           We will not start the individual

19   questioning until next Tuesday.

20           We will make copies of the

21   questionnaires this afternoon, the lawyers can look at

22   them over the weekend and we will give you calls starting

23   Monday morning and probably six or five of you will be

24   here Tuesday then we will start bringing in six to 10

25   Wednesday and Thursday.

1           We will be working on jury selection

2    Monday, after next week Monday through Thursday bringing

3    in six to 10 a day until we get our jury.  We will bring

4    in three in the morning, three in the afternoon.

5           If you are the first person we bring in

6    the morning you will be the first we talk to and you will

7    be out of here as quick as we can get you out and as I

8    said we may talk to you five minutes or we may talk a

9    couple of hours and so we bring you in we appreciate you

10   taking time with us but the next time we see you we will

11   tell you whether you are or not on the jury.  If you

12   don't hear from us there may be something -- if you don't

13   hear there may be something on the questionnaire that may

14   influence you and we are not going to call, we are not

15   going to notify each one of you if you are excused.  You

16   can call the District Clerk.  We are just going to notify

17   you if you are going to be here and we want to talk to

18   you but quite frankly a lot of you we won't talk to you

19   and that's why we have those questionnaires.  I know a

20   lot  of  you  are  not  going  to  like  filling  out  that

21   questionnaire, I don't blame you, I wouldn't want to fill

22   it out.  If you want to be mad at somebody be mad at me,

23   the law says those questions are admissable in this type

24   of case.  If you don't like the questionnaire I can't do

25   anything about changing it, tell your Legislature, tell

1    them you don't like it, tell them to change the law and

2    I will be behind you a hundred percent.  But until that

3    time you have to fill them out and turn back the original

4    which will be kept by the Court, the lawyers will have

5    a copy and once they use them they will turn it back in

6    so that your address and phone number will not be made

7    available, so that's the questionnaire, but they will be

8    -- I will have a copy or the original and the lawyers

9    will have a copy.

10                   Is there anybody that has a question?

11                   Yes, sir.

12                   THE POTENTIAL JUROR:    I'm

13   supposed to go out of town in a few days, am I supposed

14   to just wait?

15                   THE COURT:   No.   There's a

16   place in the questionnaire, if you tell us you want to

17   be out of town we'll work around your schedule.  If we

18   call you and want you here on Wednesday and you say you

19   are supposed to be some place Wednesday we will schedule

20   you for Thursday, we are going to work with you as much

21   as we can but when we start calling individuals please

22   work your schedules out the best that you can.

23                   THE POTENTIAL JUROR:   So we

24   fill out the questionnaire that you are going to give us

25   as we leave?

1      THE COURT:  Yes, sir.

2      THE POTENTIAL JUROR:  This

3  afternoon?

4      THE COURT:  Yes, sir.

5      THE POTENTIAL JUROR:  Get it

6  from one of the deputies then we go back to our office?

7      THE COURT:  Yes.

8      THE POTENTIAL JUROR:  Then you

9  call us Monday?

10      THE COURT:  We'll start

11  Monday, it may be four weeks before you hear from us.

12      We'll just start calling people down the

13  line and bring you in as soon as we get to you.

14      Anyone else?

15      Okay.  Mr. Townsend, do you have any

16  comments or anything that you wish for me to point out

17  to the jurors that I haven't?

18      MR. TOWNSEND:  Nothing.

19      THE COURT:  Mr. Old, do you

20  have anything?

21      MR. OLD:  Nothing at this

22  time.

23      THE COURT:  Then I will excuse

24  all of you to the hallway and we will bring in our next

25  group.

1                    Thank you for your patience.

2

3                         (Recess.)

4

5                    (Second group seated.)

6

7                         THE    COURT:     All   right.
8    Everybody will take your seats again, like I told the
9    other group, I want to thank you for your patience.   It
10   may be a long afternoon for all of us.

11                   Now, all of you know that you are down
12   here as a juror or prospective juror in a capital murder
13   case.

14                   Our laws provide in a capital murder
15   case that the lawyers have the right to question you
16   individually and the law also provides certain other
17   procedures and that's why we are doing it this way so I
18   apologize for the inconvenience.  And if you want to be
19   mad at somebody I think you can be mad at me, since I
20   don't live here I can talk openly.

21                   I will introduce the parties involved,
22   I am Gary Stephens, I am a Visiting Judge, I live in
23   Ellis County and most of my work is in Dallas, I have
24   been assigned to this case to come down here and select
25   a jury and hear the evidence and to try the case.

1          Now, in order to do that, of course, we

2     need 12 of you citizens as our juror.

3          The case is not out of Titus County, it,

4     the alleged offense occurred in Morris County in the town

5     of Cason.

6          Excuse me just a minute.

7          I had a little housekeeping matter there

8     we had to attend to.

9          As I said, the case allegedly occurred

10    in Morris County in the town of Cason.

11         The Morris County District Attorney will

12    be representing the State and that's Mr. Richard

13    Townsend.

14         Mr. Townsend.

15         He will be assisted by Mr. Randy Lee who

16    I understand has recently been elected the District

17    Attorney in Cass County and is now an Assistant District

18    Attorney.  I have appointed him to assist Mr. Townsend

19    in this case.

20         The Defendant is represented, we have

21    two Defense Attorneys, we have Mr. Bird Old, III and Mr.

22    Lance Hinson.

23         The Defendant is seated between them,

24    his name is "Billy Joe Wardlow."

25         You may be seated, sir.

Now, I am introducing everybody because each of you have a right to know who the Defendant is and who the parties are.

As you already noticed in the questionnaire there's a place for you to tell us if you know any of the people involved in this case. Knowing the people involved, whether it be the District Attorney, the Defense Attorney, the Defendant or the alleged victim does not disqualify you.

If your knowledge of those people will be such that it influences your decision you may be disqualified but knowledge in and of itself does not disqualify you, that's why each side will talk to you individually to find out the extent of your knowledge, if any, and to find out your views and opinions on our law.

Now, what I want to do today is go over some of the general principles of law that will apply in all trials. I want to talk to you about murder and capital murder, they are issues, frankly, that you need to be thinking about and when the lawyers bring you back and talk to you individually you are going to be asked a lot of questions and what I'm doing today is just kind of giving you an overview of what is about to come so you can be prepared when that questioning begins.

1        The first and most basic principle of

2   law is the presumption of innocence.

3        Simply because a person may have been

4   arrested for a crime is simply no evidence that the

5   person is guilty, the fact that a person is about to

6   stand trial is not evidence.  You as a jury will decide

7   the evidence based on what you hear from the witnesses

8   that testify and you certainly do not decide the facts

9   based upon speculation or based upon what you read in the

10  newspaper or heard from your friends or family.

11       I know that a lot of you have probably

12  heard or read about this case and that's fine.  But if

13  you have heard or read about this case and what you have

14  heard or read has formed an opinion in your mind then you

15  may not be qualified and that's why we want to talk to

16  you individually to find out what, if any opinion that

17  you have already reached in this case because, you know,

18  all of us are entitled to have a jury of our peers that

19  can follow the law and will be able to indulge in this

20  presumption of innocence.

21       And the presumption of innocence, folks,

22  to me and the lawyers is a lot more than just words.  The

23  presumption of innocence is the basic cornerstone of the

24  legal system, it's a very important foundation, we have

25  an excellent country but I tell you there are not many

1    places in the world that have the freedoms that we have

2    and part of those freedoms are based on laws and you are

3    the people that are going to enforce those laws and those

4    rights and freedoms.    And you do it by serving your

5    country as a juror and I appreciate all of your service.

6    But I also want you to know there is absolutely nothing

7    wrong with you if you can't follow some of these

8    principles of law.

9            Just like we have a great country based

10   on these laws part of what is great is that we have a

11   right to disagree with the laws so when I talk about the

12   laws I want you to start thinking about them and if you

13   can agree with them and go along with them, fine, and if

14   you can't that's also fine.

15           All we want from you is honesty, we want

16   you to tell us how you think, what you think and what you

17   feel.    Don't worry about what we think about, your

18   thoughts and your opinions are your opinions and that's

19   what counts, not ours.

20           Whether we agree or disagree with you

21   is unimportant, we just need to know something about you

22   and we want you to be honest with us without worrying

23   about what we think of your opinions.

24           Now that this is behind us I want you

25   to also know that not only is the Defendant presumed to

1  be not guilty, the State of Texas has what we call the

2  "burden of proof", the State is the one that must prove

3  all of the elements of the charge against the Defendant.

4         The State is the one that brings the

5  charges, the State is the one that has to prove the

6  charges that they have brought against a person in this

7  or in any other case.  The defendant has absolutely no

8  burden of proof.

9         By that I mean he does not have to

10  testify, he does not have to present witnesses, he only

11  has to be here.

12         If Mr. Old or Mr. Hinson and Mr. Wardlow

13  want to work a crossword puzzle during this trial I don't

14  care as long as they don't disrupt the courtroom because

15  they don't have anything to prove to you.  The State

16  brought the charges, they have to prove the charges, Mr.

17  Wardlow doesn't have to disprove anything that is said.

18         He can certainly testify if he wants to,

19  if he wants and present evidence but he has no obligation

20  to do that.  That falls right back on that presumption

21  of innocence and falls right back to that burden of

22  proof.

23         Mr. Wardlow is presumed to be not

24  guilty.  The State wants you to find otherwise, they have

25  got to prove it to you and the Defense doesn't have to

1   help the State prove a thing so he doesn't have to take

2   the stand.

3           Now, when the trial itself begins the

4   indictment against the defendant will be read to you.

5   When an indictment is read to you the defendant will

6   plead not guilty and that means everything is in dispute.

7           After the plea of not guilty is entered

8   the State will put on all the evidence they have and have

9   you make that determination as to whether the person did

10  or did not do what they are charged with and the State

11  will rest.

12          If the Defense wishes to put on any

13  evidence then they will put on their evidence but, as I

14  said, they have no obligation to do so.

15          After both sides have presented

16  everything to you they believe should be presented then

17  the case is over as far as the testimony.

18          We will read the Charge to you, that is

19  a legal document that will contain all of the law that

20  you follow and sets forth all of the elements that the

21  State must prove.

22          After this Charge is read to you both

23  sides will be given a chance to present argument or

24  summation of the evidence then you are retired to

25  deliberate.

If you come back with a verdict of not guilty the trial is over and we go home, if you come back with a verdict of guilty then we go into the next part of the trial which is the punishment part and often there is evidence admissable in the punishment stage of a trial that may not be admissable in the guilt or innocence, the first part of the trial.

Our trial is broken down into two parts in Texas basically, it's because in the first part of the trial we don't really care about who the defendant is or anything about his history or past, we want to know what happened and if something did happen we want to know who was responsible and that's what the first part of the trial is for, "Did something happen, if so did this person do it?"

Then in the second part of the trial, the punishment part, if you found the person guilty that's where you find out something about the person you have convicted so that you can determine what the appropriate punishment will be for that a person.

So we have a two stage process or actually I guess you could say three stages, the first stage is picking the jury, the next stage is "What happened, if anything, and is the person responsible?"

The last stage, "If he's responsible

1    what should we do about him?"

2              Now, you have heard me talk about the

3    fact that the Defndnat doesn't have to participate and

4    you have heard me mention that the defendant has been

5    indicted and is going to plead not guilty.

6              I'm sure some of you out there are

7    thinking to yourself, "Well, Judge, you are not telling

8    me to presume Mr. Wardlow to be innocent, you are sitting

9    there telling me that the State has to prove these

10   charges but then you go ahead and tell me he has been

11   indicted and you tell me that he may not even testify."

12             And there's a lot of you out there that

13   are going to be thinking to yourself, if a person is

14   indicted, by gosh he must be guilty.

15             A lot of you must be sitting out there

16   thinking, "Judge, wait a minute.  If he doesn't testify

17   that probably means he's trying to hide something and if

18   I'm not guilty of an offense I'm certainly going to get

19   on that witness stand and tell the world I'm not guilty."

20             Folks, maybe you would and maybe you

21   wouldn't.

22             Let's talk about an indictment.  What

23   is an indictment?

24             It is nothing more than what we call a

25   "charging instrument", it's a piece of paper that starts

a criminal process, if any.

If you have ever been involved in a divorce or civil lawsuit you know that the proceeding was started by the filing of a petition, if it's a divorce you or your spouse filed a petition stating the marriage should be terminated, if it's a civil lawsuit you filed a petition alleging why you should be paid money or someone filed a petition against you alleging why you should not pay them money.  But whatever is in those petitions is not evidence, it's just what you say happened, it's what you say should happen but it is not evidence.  It's just a pleading that starts a civil case and that's what the indictment is, it's a pleading, it tells the State what they must prove, it tells the Defndnat what he's charged with.

If the State knows what a person is charged with then the State will try to prove those charges and the defendant, if he wants to present any evidence will know what he's accused with or -- excuse me -- what he's accused of doing when he accused of doing it so he can present his evidence if he wishes to do so.

But the indictment itself is no evidence.

Is there anyone in this room that has been on a Grand Jury?

1          All right.  We have got one person --

2     a couple of people -- three.  We had several in the other

3     group.

4          Well, the people that have been on the

5     Grand Jury will know a little bit more about this process

6     than the rest of you but the Grand Jury proceedings are

7     different from your normal jury trial.  A Grand Jury does

8     not determine guilt and innocence of the person charged.

9     A Grand Jury hears evidence, maybe they don't even hear

10    evidence from the person that is involved, the evidence

11    they hear may result from just the reading of a letter

12    from a police agency, maybe a Grand Jury will take three

13    weeks and hear from hundreds of witnesses, maybe a Grand

14    Jury will take five minutes and read a police report.

15         The proceedings in a Grand Jury are

16    secret, meaning the public has no access.  If a person

17    does go to trial as the result of Grand Jury indictment

18    that person certainly has the right to review any

19    testimony before the Grand Jury if that testimony is used

20    in trial but he doesn't have a right to know everything

21    that happened in there.

22         Now, if the defendant doesn't have a

23    right to know what happened in there the normal average

24    citizen certainly has no idea what happened in there so

25    we don't consider the indictment as any evidence.

1          But again, it's nothing more than a

2     statement from the Grand Jury saying, "Look, Judge, you

3     know, we think there is a little smoke here, why don't

4     you get 12 people together and find out whether or not

5     there was a fire?"

6          And that's what the 12 people are here

7     for that very thing, maybe something happened, your job

8     is to decide if it did and if it did who did it.

9          So each of you need to be able to assure

10    me and the lawyers that the mere fact that a person has

11    been indicted is not going to be prejudicial.  In other

12    words, you are not going to hold it against him and you

13    are not going to use it to determine their guilt.

14          You know, you may get down and hear all

15    the evidence in a case, you may be back in the jury room

16    and you are thinking to yourself or you are talking among

17    yourself, you know, I'm just not sure, I kind of think

18    that he's guilty but I'm not sure but, you know, the

19    Grand Jury indicted him so he must be guilty.

20          We don't want that, we don't want that,

21    we want you 12 to make up your own minds and we don't

22    want you to assume that somebody else knows more about

23    the case than you do because when you go to trial you

24    will hear everything that the law allows you to hear and

25    if you don't hear it in the courtroom you are not allowed

1    to consider it.

2              I told you the defendant does not have

3    to testify but he certainly has a right to do so.  The

4    defendant can subpoena witnesses just like the State, the

5    Defense can present witnesses just as the State, the

6    Defense can cross examine witnesses, the Defense also has

7    a right for the defendant himself to testify if he wishes

8    to do so but as I said earlier he doesn't have to.

9              Now, this gets into that area where I

10   said a lot of you are going to say if you are not guilty

11   you are going to stand up and shout it to the world.

12             We have lawyers, lawyers advise us when

13   we are in the middle of a trial as to what we should or

14   shouldn't do.  You may have a trial where the lawyer

15   thinks the State hasn't proved anything so he may not

16   want to put his client on the stand, no reason for his

17   client to take the stand or he might be shy, the Defense

18   -- excuse me, decides he won't put him on, maybe the

19   person charged is borderline retarded, he knows right

20   from wrong, he's legally responsible if he did something

21   but maybe he will get his words so mixed up he can't

22   relate what happened to the jury so maybe in that

23   instance it's better for a person not to testify.  Maybe

24   a person stutters, maybe he or she freezes up when he or

25   she talks to a group of people.

1          You may have people that are just not

2     sharp enough to fence with a well educated lawyer.

3          There are many reasons that persons may

4     not testify.

5          The bottom line is you as a juror will

6     base your verdict on what you hear, not what you don't

7     hear.  You don't know what the Grand Jury heard so you

8     are not going to base your verdict on that.

9          The defendant, you are not going to know

10    what the defendant would say if he doesn't testify so you

11    don't speculate about it, you discharge that and put it

12    out of your mind and base your verdict on what you heard.

13         It certainly is inappropriate for any

14    of you to be back in a jury room and say, "Well, you

15    know, I'm just not sure.  He may have done it and he

16    didn't testify so I guess he did."

17         That's speculation, folks, and that's

18    wrong.

19         If you are on trial you want the same

20    thing that Mr. Wardlow wants and that's fair-minded

21    people who will keep their minds open and base their

22    verdict on the evidence that they hear.

23         If you can do it I want you and if you

24    can't I'm not going to take an exception to it, just tell

25    me you can't do it and tell me why you can't and that's

fine.

        I want to remind all of you you are under oath and you are were under oath when you filled out that questionnaire and when you answered these questions you were under oath.

        Frankly I don't think that you would lie to get out of your jury service, if you were going to do that you probably wouldn't have appeared in the first place.

        I do want to impress that it's very serious, this is the most serious undertaking that Mr. Wardlow will ever be involved in and he wants you to be fair with him and that's what all of us want from you.

        Let me check on my notes here, I got a little bit off track.

        Is there anybody out there that can't follow the basic principle of law that I have discussed so far, the fact that a person is entitled to be presumed not guilty, the fact that the State must prove the charges?

        Is there anybody that can't follow that basic principle?

        I take it that each of you can.

        Now, what I have been talking to you about right now happens in all criminal trials, I have

1   just been talking in general, how a criminal trial

2   progresses, how we select a jury and what happens once

3   the jury is selected.  The trials are all basically the

4   same except for a capital murder case.

5           I told you that in a normal trial if a

6   person is found guilty then the punishment part of the

7   trial, you determine the appropriate punishment.  That

8   punishment depending on the offense could range from a

9   few days in jail to life in prison, depending on what the

10  offense is that the person is charged with.

11          The main difference between a capital

12  murder case and another type of criminal case is that in

13  a capital murder case there's only one or two

14  punishments, that's either life imprisonment or death by

15  lethal injection.

16          So in all cases other than capital cases

17  the jury determines the punishment by setting the number

18  of years that the person should serve in the penitentiary

19  and then deciding whether or not probation is

20  appropriate.

21          But in a capital murder case you don't

22  really give us a number of years, you don't even come

23  back and say "life" or "death", you answer a couple of

24  questions then based on the answers to those questions

25  the result is either life or death.

1    Before we talk about capital murder,

2    though, I want to talk to you about what murder is and

3    isn't.

4    The other group is filling out their

5    questionnaires.  Now, normally I don't want people to

6    fill out the questionnaire until they have heard my

7    comments, unfortunately because of our space and the

8    number of people we had we couldn't get everybody in here

9    at  once  so  you  have  already  filled  out  your

10   questionnaires.

11   Do  all  of  you  still  have  your

12   questionnaires?

13   Based on what I say some of you may have

14   some different answers so if you feel like you need to

15   go back and change any answer feel free to do so before

16   you turn them in but what I want to do right now before

17   I get into capital murder is tell you what murder is and

18   isn't  because,  you  know,  based  on  reading  this

19   questionnaire we want to know something about you and

20   about your feelings on the law and what your feelings are

21   on capital murder and what your feelings are on the death

22   penalty.

23   I will have a lot of people fill out

24   that questionnaire before I talk to them about murder and

25   they say, "Well, I could give life in prison if it was

self defense or if it was an accidental killing I could see life in prison but if anybody killed anybody it has to always be death."

I want to explain to you what murder is because if a person acts out of self defense or if it's an accident he hasn't committed an offense, there's no murder, there is no punishment, there is absolutely nothing.

So when I'm talking to you and when the lawyers are talking to you about murder they are talking about the intentional taking of a life of another human being without legal justification or excuse, "I want to kill and I do it."

If I kill because I am defending another person I am not guilty of murder, if I kill because I am defending myself I am not guilty of murder.

I might walk out in my backyard, maybe I shoot a pistol up in the air, the bullet comes down and kills somebody.  I am certainly responsible for that death but I had no intention to kill so I may not be guilty of murder.  I am guilty of something but I'm not guilty of murder because in order to be guilty of murder I had to have intended that death occur.

You may certainly be guilty of negligent homicide but not murder.

1            So when we are talking to you about

2   murder and are you able to consider probation for murder

3   and are you able to consider the full range of punishment

4   in capital murder which include life or death you need

5   to know what murder is or isn't and that's why we are

6   talking about it.

7            In our state a person who is accused of

8   murder is looking at a punishment range to a minimum of

9   five years to a maximum of 99 years or life.

10           I want to talk to you about murder and

11  murder punishment because in a capital murder case there

12  is always a possibility that the jury instead of finding

13  that a person is guilty of capital murder they may find

14  that a person is only guilty of murder and if so you are

15  going to be called upon to assess punishment so we know

16  you need to know what the punishment is and we need to

17  know whether you can follow the law and follow the

18  punishment range and the punishment range for murder

19  includes probation in this state if you as a jury set

20  punishment at 10 years or less then you have to decide

21  whether that sentence will be served in prison or on

22  probation.

23           If you set punishment over 10 years

24  probation is not an option so if you have a 15 year or

25  20 or 30 year sentence you don't ever get to the issue

of probation.  You only get to probation if you go back and decide 10 years or less is appropriate.

So if you have decided that five, six, seven, eight, nine or 10 is appropriate then you decide whether this is to be served in prison or served on probation.

A lot of people think probation is just a slap on the wrist and I guess maybe some people have a right to look at it that way.

Also I want you to make sure that you understand the distinction between "probation" and "parole."

"Probation" is what happens before you go to prison, "parole" is what happens after you get out of prison.

So if you serve a prison sentence, not completely served, they let you out on parole.

If you have been found guilty of a crime and the jury or Judge decide that you should have a probated sentence instead of going to prison you don't go to prison, you serve probation first.

So we are talking about probation. Probation conditions are determined by the court or Judge, you the jury will decide whether the person is guilty, whether he should go to prison or be probated but

1       the Judge sets the probation conditions.

2                   They include the fact that the defendant

3       has to report to the Probation Department, it can be

4       weekly or monthly, he has to remain in a specified county

5       where he lives, he has to support his dependents, undergo

6       random urinalysis, he's entitled to have somebody check

7       on him at his home, at his office and if he violates any

8       of his conditions that probation can be revoked.

9                   If it's revoked it's done in a hearing

10      without a jury, it's just between the Judge and the

11      defendant and his lawyer and the State's lawyer.

12                  You as the jury put the person on

13      probation, the Judge sets the term.

14                  And the way I kind of explain to people

15      is if I give you probation you don't have the same rights

16      that other people have.  You only have the rights that

17      I give and if you do something that I tell you not to you

18      go to prison.  It's very possible for a person to be on

19      probation 10 full years, the last day of that probation,

20      maybe that person tests positive for cocaine use, I can

21      revoke his probation and send him to prison for 10 years

22      so he spends 10 years on probation and he screws up on

23      the last day and he's gone.  So it's not always a

24      cakewalk.

25                  Sometimes it is quite appropriate, on

1    many occasions, and sometimes, frankly, it is not.  So

2    that's why we have a jury to make that determination.

3                I'm sure you are saying to yourself,

4    "Wait a minute, Judge, you are saying that murder is the

5    intentional taking of a life without legal justification

6    and now you are telling me somebody can be probated."

7                Yes.  That's what I'm telling every one

8    of you.

9                You notice when I talk to you about

10   murder is -- I didn't talk about motivation, the State

11   does not have to prove why a murder occurred and,

12   frankly, it doesn't matter, if a murder occurred, it

13   occurred.  It either happened or it didn't happen.  Why

14   it happened is immaterial to the issue of whether it did

15   or didn't happen but motivation very well being something

16   a jury looks to when they set punishment, that motivation

17   could be out of love, hate, it could be a mercy killing,

18   it could be a stalking, you could have one of the meanest

19   people that you ever met commit the murder, it could be

20   somebody that committed the murder because of some very

21   unusual circumstances.

22               I have heard many murder cases in the

23   last 10 years and I have heard many reasons that murders

24   occur.  I have heard murder cases where I think life in

25   prison is not enough and I have heard cases, murder cases

1    where I think probation is appropriate.

2            There is going to be some of you out

3    there telling me that you could never give probation in

4    a murder case and there's going to be some of you telling

5    me that you could never give life in a murder case.  If

6    that's the way you truly feel we are not going to take

7    exception with you but to be on any jury involving a

8    murder case where probation is an issue you are going to

9    have to be able to tell us that you can think of a case

10   where you think probation is appropriate, you can

11   consider it and give it.

12           You also have to be able to tell us if

13   you see a case where you think life is appropriate you

14   can consider it and give it.

15           "Considering it" means more than just

16   "Okay.  I have considered probation now let's get down

17   to putting this guy away."

18           When I say, "Consider probation" I mean

19   actually consider giving it in a given case.

20           Something like, and I have heard it in

21   another case, a person is going to buy a new car, the

22   person makes $30,000 a year, he wants a $300,000 Rolls

23   Royce, he can certainly consider buying it but he doesn't

24   have the ability to buy it, he can't buy it.

25           And when I talk about your ability to

1    consider probation I'm not talking about your ability to

2    consider that Rolls Royce then go buy something else, I'm

3    talking about in order to be qualified you have to not

4    only consider it but giving it in an appropriate case and

5    if you can't just tell us.

6              Now, what is murder, what is capital

7    murder?

8              I have told you what murder is.

9              Capital murder is murder plus.

10             A capital murder occurs if the murder

11   occurs during the commission of another offense, if a

12   person is burglarizing a home and commits a murder it's

13   capital murder.

14             If a person is robbing another person

15   and kills it's capital murder, if a person kills a

16   fireman or policeman while on duty when that fireman or

17   policeman is on duty it's capital murder.  If a person

18   hires another person to commit a murder that's capital

19   murder, if a person kills two or more people in a

20   criminal episode or transaction that's capital murder.

21             So capital murder is a murder, an

22   intentional killing that occurs during the commission of

23   another offense.

24             Now, I told you earlier that you might

25   find a person guilty of murder but not capital murder and

1   that could very well happen where you find the person may

2   have committed a murder but maybe not the other offense,

3   maybe he didn't do or try to do a robbery or burglary or

4   an arson, you might find the person didn't commit the

5   murder but he committed arson for robbery so you have

6   kind of two charges in a capital murder.  You have the

7   underlying charge, the robbery, burglary or whatever and

8   then the death.  So if you find as to capital murder you

9   have to find the murder during the other offense and if

10   you find just one or the other occurred it's not capital

11   murder and you go back and determine the appropriate

12   punishment.

13           That's why I talked to you about taking

14   into consideration the full range of punishment.

15           If you did so find a person guilty of

16   capital murder, you find that murder occurred during the

17   commission of another offense then you don't set

18   punishment by determining the number of years, you will

19   answer some questions, there will either be two or three

20   questions submitted to the jury.

21           Now, for purposes of these questions we

22   are assuming that you found a person guilty of capital

23   murder.  The first question will ask you whether or not

24   you believe that the defendant will be a danger in the

25   future.

1      If you believe the defendant will be a
2  continuing danger to society in the future you answer
3  "Yes."
4      If you don't think he will be a
5  continuing danger in the future you answer "No."
6      If you answer "No" you don't go any
7  further, if you answer "Yes" go to the next question, the
8  second question may or may not be in the trial because
9  I don't have enough of the facts to know whether or not
10 it will be in the trial but the second question inquires
11 as to whether or not the defendant did the killing or if
12 he didn't whether he anticipated or intended that
13 somebody be killed.
14      And if you determine "Yes" then you go
15 to the third question and the third question is -- let
16 me back up and explain a little bit by the way I look at
17 our law; if a person is convicted of capital murder our
18 law basically says that the appropriate punishment at
19 that point is life because there can only be one of two
20 punishments, life or death, so conviction of capital
21 murder means life in prison period.
22      If the State wants to go further they
23 have a right to seek the death penalty so once you have
24 found a person guilty of capital murder we know the best
25 that's going to happen to them is life.  If the State

1    wants death then they have to convince you beyond a

2    reasonable doubt that the appropriate punishment is death

3    and they do that by submitting those questions and trying

4    to prove that answer should be "Yes."

5              The law provides that the answer of "No"

6    and the State has the burden like in the first part of

7    the trial, the State has the burden of proving beyond a

8    reasonable doubt all of the elements of the offense, they

9    have to prove beyond a reasonable doubt that the person

10   is guilty and in the punishment part of a capital murder

11   trial they have to prove that the answers to those first

12   two questions "Yes" and if they prove beyond a reasonable

13   doubt to you and you answer "Yes" then the result is

14   death.

15              That sometimes put a jury in a dilemma.

16   You take an oath as a juror to return your verdict based

17   on the law and the evidence, you found a person guilty

18   of capital murder, you believe that the evidence proves

19   that the person will be a danger to society so you have

20   to answer "Yes", you believe that person intended to kill

21   or caused the death, you answer that "Yes."

22              Now, you know that those two "Yes

23   answers" equate to death but there is something down

24   inside you, there is something about that defendant,

25   there is something you have heard during the trial that

just makes you not really convinced that death is appropriate so you have got a dilemma. You have taken an oath to base your verdict on the law and evidence so to give life you have got to change one of those answers to "No."

You are violating your oath, that is wrong so we are going to give a third question, it's kind of an escape valve, the third question is based on all the evidence, based on the blameworthiness of the defendant, based on mitigating circumstances do you think that he should or shouldn't die and if you answer we don't think there's enough evidence to justify sparing his life he's executed, if you say "Yes" that's based on certain facts and you don't have to tell us what the facts are but if you say, you know, I think there's some mitigating circumstance and you answer that question "Yes" then it's going to be a life sentence.

A lot of people have told me -- I have done 16 of these -- a lot of people have told me that if they find a person guilty of capital murder they think that the appropriate sentence is always going to be death.

That's what we call somebody, that's what we say, "They are death prone" and if you are death prone and you believe anybody guilty of capital murder

1   should always be given the death penalty you are not

2   going to be qualified for this jury.

3           The law requires that at the end of the

4   capital murder the guilt or innocence stage that you

5   reexamine all of the evidence before you answer those

6   questions, they are not automatic.

7           If the fact that a person is guilty of

8   capital murder is always going to cause you, regardless

9   of the facts, to answer those questions to result in

10  death then there would be no need for those questions,

11  there would be absolutely no need for witnesses, just

12  execute everybody guilty of capital murder.  And that's

13  not the way we do, you have to be able to reexamine the

14  evidence because the State has the burden, like I said,

15  it's presumed that it's life but the State wants death

16  so they have to prove to you that death is appropriate.

17  And if you think it's appropriate in every case they

18  don't have much to prove to you, do they?

19           So that's why we are going to talk to

20  you and that's why we want you to open up and share your

21  opinions with us and frankly I don't care what your

22  opinions are and I don't mean to be rude by that but I

23  very much care that you tell us what those opinions are.

24  I don't want anything out of you that you wouldn't want

25  out of a jury if you were on trial.  I just want you to

1    be fair with us, if you can do it, welcome aboard, and

2    if you can't we'll see you down the line in another

3    trial.

4              Okay.  Let's talk about opinions for a

5    moment, let's talk about O.J. Simpson, we all heard his

6    case, haven't we, we have read, we have heard about it.

7              Do you have your mind made up whether

8    he's guilty or not?

9              If you do you couldn't be on that jury

10   but, you know, I don't think any of us really know for

11   sure.  I think we all have a good idea of what happened

12   but I don't know that we know what happened out there.

13             We'll hear one news report one day, the

14   next day we hear a news report saying that the other news

15   report was false and then we'll hear the Judge say all

16   of the reports are false.

17             The only people that are going to know

18   what happened are the jury and until the trial is over

19   then I guess we'll all know but during that trial that

20   jury is going to hear the evidence and that's what they

21   are going to base their verdict on.  They are going to

22   have to put out of their mind what they have heard or

23   read and what their friends have told them and that's

24   what you are going to have to do in this case or any

25   other case.

1              If you have read something about Mr.

2    Wardlow you have got to disregard it, if you have heard

3    something from your family or friends disregard it, if

4    you can't disregard it then you are biased and if you are

5    biased you don't belong on this jury.  We have got to

6    leave our biases and prejudices out in the hallway when

7    we come into this jury room and sometimes we can't do it

8    and if you can't tell me and if you can, great.  But you

9    base your verdict on the evidence and not your opinions,

10    not your gut feeling, base it on the evidence.

11              All right.  We are going to bring you

12    back individually for the questioning.  When you leave

13    here today we will contact you by telephone and tell you

14    when to be back.  Our first session will be on Tuesday

15    and even though you are the second group you still may

16    be in the first section because we are going to put all

17    these questionnaires together and let the lawyers look

18    at them then start calling and they won't necessarily be

19    in numerical order, they may or may not be.

20              None of you are going to be scheduled

21    today, you will be called Monday.  If you get a call on

22    Monday and we ask you to be here Tuesday and you can't

23    we will work with you and continue working with you and

24    when we bring you back for individual discussion we will

25    work and schedule with you.  I don't mean that you can

1    tell me "Well, look, I don't have anytime between now and

2    December", you are going to have to find some time for

3    us but we will work with you and when you come back we'll

4    bring three in the morning and three in the afternoon.

5    If you are in the afternoon I hope we get to you, it may

6    take five minutes for a juror, it may take two or three

7    hours per juror when we start talking to you individually

8    when you start opening up and we get a feel for you

9    sometimes we can realize that you shouldn't be on this

10   case and excuse you and sometimes we may talk to you for

11   two or three hours before a decision can be made.

12            So if we bring in two or three people

13   in the morning and talk to each of those people for two

14   hours you afternoon people may get bumped and have to

15   come back, we will work for that not to happen, I will

16   do everything I can  to work with you but I do have some

17   -- some time constraints and I hope that each of you will

18   be as patient in the upcoming weeks as you have been

19   today.

20            There's a place in the questionnaire

21   where you were asked if you plan to be out of Titus

22   County.  If so I'm sure you have already filled it out,

23   if you have some kind of a trip we are not going to make

24   you miss your trip to come talk to us, we are going to

25   let you take that trip, we are not unreasonable.

1           This trial will probably last two weeks,

2     we have tentatively set it for November the 14th as a

3     date, I seriously doubt if it will go, it will probably

4     be the end of November, maybe even December.

5           So when you talk to us individually if

6     you have some vacation plans let us know when they are

7     going to be and we'll work around the vacation plans, we

8     are going to try to find 12 people that will all be

9     together for two weeks without having to worry about

10    outside influences or plans.

11          All right.  I believe I have pretty well

12    covered everything.

13          Mr. Old, do you have anything you wish

14    for me to cover with the jury that I haven't covered?

15                MR. OLD:    Nothing at this

16    time, Your Honor.

17                THE COURT:  Mr. Townsend?

18                MR. TOWNSEND:  Nothing, Your

19    Honor.

20                THE COURT:  Thank you again

21    for your patience.  You will be hearing from us.  If you

22    don't hear from us don't worry about it and in looking

23    at the questionnaire some of you, frankly we may

24    eliminate by looking at the questionnaires.    If you

25    don't hear from us and you want to call the District

Clerk's Office -- I know they don't like what I'm telling you -- but you have a right to call them and ask them where you stand.

Bobby, who do you want them to call at the District Clerk's Office?

THE DISTRICT CLERK:  They can call anybody in there.

THE COURT:    You can call anybody in the District Clerk's Office and tell them that you are a prospective juror on Wardlow case and you want to know if the jury has been selected.

I'm not going to call you and tell you that you have been dismissed but if you haven't heard from us within a few weeks and you get curious pick up the phone and call or come down.

If there's no questions I'm going to excuse you all.

You may turn in your questionnaires, if you need to redo the questionnaires after we talked please do so, otherwise turn them in and I will see you in one of those individual sessions.

Have a good afternoon.


(Recess.)

1          (The following occurred after the panel

2    of potential jurors was dismissed:)

3

4                    THE COURT:  Let's get on the

5    record.

6                    Officer, let me see this questionnaire.

7                    Have you had any problem filling this

8    out?

9                    THE POTENTIAL JUROR:    Yes,

10   sir.

11                   THE COURT:    What is the

12   problem filling it out, just not understanding some of

13   the questions?

14                   THE POTENTIAL JUROR:  Yes.

15                   THE COURT:    Do you have

16   problems reading some of these?

17                   THE POTENTIAL JUROR:  Yes.

18                   THE COURT:  Can you read this

19   sentence right here, see, that's Number 1, can you read

20   what that says?  (Indicating)

21                   The Court believes based upon what the

22   juror has told me and my observation that he's impaired

23   in his ability to read.

24                   Mr. Old, Mr. Townsend, do you have any

25   objection to excusing the juror?

1          MR. TOWNSEND:   None, Your

2    Honor.

3          THE COURT:  Mr. Old?

4          MR. OLD:  None.

5          THE COURT:  Sir, we are going

6    to excuse you and you don't have to fill that out.

7          Thank you very much.

8          Now, I do need your -- do you have your

9    juror card with you?

10          THE POTENTIAL JUROR:  Yes.

11          THE COURT:  Let me take that

12    and we will turn it in so that we will know that you were

13    here.

14

15          (Handed to the Court.)

16

17          THE COURT:  Thank you.  You

18    have a good day.

19          For the record, the juror number is 188,

20    "W.L. Police."

21

22          (Recess.)

23

24          THE COURT:  Let the record

25    reflect that there's no prospective jurors in the

1    courtroom, that the State and Defense is present and

2    Defendant is ready.

3                    Mr. Old?

4                    MR. OLD:   Mr. Wardlow has

5    authorized me on his behalf to enter into an agreement

6    with the State subject to the approval and acceptance of

7    the Court, that as to juror questionnaires and as to

8    answers on the first page which I will quote which refers

9    to the death -- "With reference to the death penalty,

10   which of the following statements would best represent

11   your feelings."

12                    And it's instructed that they circle

13   that which does.

14                    He has authorized me on his behalf to

15   agree to question only people who answer "2" or "3."

16                    Now, I inquire of the Court if we

17   exhaust the twos and threes without getting a jury would

18   it be the Court's instruction to go to 1, 4, 5 and 6 or

19   to bring in more jurors?

20                    THE COURT:   Depends on the

21   agreement between the State and Defense.  If the State

22   and Defendant want to only talk to twos and threes then

23   we will eliminate every one off this panel except twos

24   and threes and when those people are gone we will get a

25   new group.  If there's an agreement to talk to only the

1    twos and threes at this time we will put the rest at the

2    end of the line and make a decision at that time.

3                    Mr. Townsend?

4                    MR.   TOWNSEND:     Let's  just

5    leave it with twos and threes.

6                    THE   COURT:    And  agree  to

7    eliminate the ones, fours, fives and sixes?

8                    MR. OLD:   Judge, my choice

9    would be not to eliminate them at this time, by the time

10   we exhaust the twos and threes we will be in a better

11   position to know whether we want to or not.  I think some

12   of them will be eliminated anyway merely by their answers

13   and I would like to question some jurors before I make

14   those agreements.

15                   MR. TOWNSEND:  Let me back up,

16   your agreement was going to be just the twos?

17                   THE COURT:  Let's go off the

18   record.

19

20                   (Off the record discussion.)

21

22                   MR. OLD:   Our offer is to

23   question twos and threes as they appear on the shuffled

24   list in the order they are in so far as we can for the

25   convenience of the parties.

1          THE COURT:  What you want to

2    do then is, Mr. Old, is to shuffle our list, after the

3    shuffle is done we will only schedule the twos and

4    threes, we will not dismiss anyone from the other list,

5    we talk to twos and threes and then when the twos or

6    threes are exhausted if we don't have a jury there will

7    be a decision made as to whether to talk to the ones,

8    fours, fives and sixes or to get a new panel?

9          MR. OLD:   That is my offer.

10   Yes.

11         THE COURT:  Mr. Townsend, the

12   ball is in your court.

13         MR. TOWNSEND: I don't believe

14   I can go along with that.  I would go along with it if

15   you add the ones along with the twos and threes.  I would

16   agree with the whole deal as he stated if you added the

17   ones to the twos and threes.

18         THE COURT:   Let's let the

19   Defense and the Defendant have another conference and

20   then we'll get back on the record.

21              Off the record.

22

23              (Off the record discussion.)

24

25         MR. OLD:  Your Honor, so far

1    we are willing to go on the twos and threes with the

2    agreement that was defined on the record.

3                        THE COURT:  Unless there is

4    further agreement since the State is not willing to agree

5    I'm going to have Mr. Wardlow entirely shuffle the list,

6    I understood Mr. Townsend agrees to the Defendant

7    shuffling the questionnaires.

8                        I want the record to reflect that we

9    have approximately 147 questionnaires, they are in about

10   four different stacks, five stacks upside down on the

11   Defense Counsel table and at this time, Mr. Wardlow, if

12   you would like to just sort of realign them, you may do

13   so now if you wish but don't look at the names.

14                        Do we have them all now?

15                        THE BAILIFF:  I don't know if

16   they are all here or not.

17                        THE COURT:  Four more people?

18   Is that all of them?

19                        THE BAILIFF:  There's still

20   more.

21

22                        (Off the record discussion.)

23

24                        (Recess.)

25

1          THE COURT:   Okay.   Let's get

2    back on the record.

3               Let the record reflect that the shuffle

4    has been done, that the State's attorney, Defense

5    Attorney were present with the Court while we watched

6    the Defendant do his own shuffle.   The shuffle is

7    complete.

8               I want the District Clerk to provide

9    copies of the first 25 jurors to each side, we will go

10   in a numerical order on the new shuffle unless there's

11   an agreement reached otherwise.

12              So we are in recess until 10:30 Tuesday.

13

14              (Record closed for October 6th, 1994.)

15

16              (Whereupon Court was recessed until

17   10:00 a.m., October 11th, 1994.)

18

19

20                        *****

21

22

23

24

25

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

1    STATE OF TEXAS      §
                         §
2    COUNTY OF TITUS     §

3

4              I, Lloyd E. Billups, CSR #149 and

5    Official Court Reporter in and for the 76th Judicial

6    District, State of Texas, do hereby certify that the

7    above and foregoing contains a true and correct

8    transcription of the proceedings in the above-styled and

9    numbered cause, all of which occurred in open court or

10   in chambers on October 6, 1994 and were reported by me.

11             I further certify that this

12   transcription of the record of the proceedings truly and

13   correctly reflects the exhibits, if any, offered by the

14   respective parties.

15             WITNESS MY HAND this 31 ST day of

16   January, 1995.

17

18   _____
     LLOYD E. BILLUPS, CSR #149 & OFFICIAL COURT REPORTER
19   76TH JUDICIAL DISTRICT, STATE OF TEXAS

20

21

22

23

24

25

Certification Number of Reporter:   149

Expiration Date of Certification:   12/31/96

Business Address:   Drawer 1868
                    Mt. Pleasant, Texas 75456-1868

Telephone Number:   903/577-6735

Transcribed By:   Tandra K. Gibson