

CAUSE NO. 12,764

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | TITUS COUNTY, TEXAS |
| | § | |
| BILLY JOE WARDLOW | § | 76TH JUDICIAL DISTRICT |

STATEMENT OF FACTS

MOTION FOR DISCOVERY, PRODUCTION

AND INSPECTION OF EVIDENCE NO. 1

October 12, 1994

**VOLUME 8 of 43 volumes**

FILED IN
COURT OF CRIMINAL APPEALS

OCT 11 1995

Troy C. Bennett, Jr., Clerk

ORIGINAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

FILED IN
COURT OF CRIMINAL APPEALS

OCT 1 1 1995

Troy C. Bennett, Jr., Clerk

1

VOLUME 8

2

MOTION FOR DISCOVERY, PRODUCTION

3

AND INSPECTION OF EVIDENCE NO. 1

4

<u>OCTOBER 12, 1994</u>                    <u>PAGE/VOLUME</u>

5

APPEARANCES . . . . . . . . . . . . . . .        1/8

6

MORNING SESSION . . . . . . . . . . . . .        3/8

7

COURT ADJOURNED . . . . . . . . . . . . .       49/8

8

COURT REPORTER'S CERTIFICATE  . . . . . .       50/8

9

10

11

\* \* \* \* \*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

VOLUME 8

2

EXHIBIT INDEX

3

| EXHIBIT NO. | MKD. | IDENT. | OFFRD. | ADM/DEN |
|---|---|---|---|---|
| DEFENSE PRE-TRIAL 1<br>Letter dated 10/6/94<br>to Bird Old, III<br>from Richard Townsend | 32 | 32 | 32 | 32/ADM |

4

5

6

7

8

\* \* \* \* \*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CAUSE NO. 12,764

2    THE STATE OF TEXAS      §   IN THE DISTRICT COURT OF
                               §

3    VS.                     §   TITUS COUNTY, TEXAS
                               §

4    BILLY JOE WARDLOW       §   76TH JUDICIAL DISTRICT

5

6                      STATEMENT OF FACTS

7             MOTION FOR DISCOVERY, PRODUCTION

8            AND INSPECTION OF EVIDENCE NO. 1

9                  October 12, 1994

10                **VOLUME 8 of 43 volumes**

11

12          Before Honorable Gary R. Stephens

13             Judge by Judicial Assignment

14       (Venue changed from Morris County, Texas)

15

16                     APPEARANCES

17

18    ATTORNEYS FOR THE STATE OF TEXAS:

19                MR. RICHARD TOWNSEND
                  District Attorney

20                Morris County Texas
                  Morris County Courthouse

21                Daingerfield, Texas 75638

22                     and

23                MR. RANDY LEE
                  Assistant District Attorney

24                Cass County Texas
                  P.O. Box 940

25                Linden, Texas 75563

1    ATTORNEYS FOR THE DEFENDANT:

2            MR. BIRD OLD, III
             Old, Rolston & Old
3            P.O. Box 448
             Mt. Pleasant, Texas 75456-0448

4
                  and
5
             MR. LANCE HINSON
6            Law Offices of Danny Woodson
             P.O. Box 399
7            Mt. Pleasant, Texas 75456-0399

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          On the 12th day of October, 1994, the

2  above-entitled and numbered cause came on for hearing

3  before said Honorable Court, Judge Gary R. Stephens of

4  Midlothian, Texas, serving by judicial assignment in the

5  District Court of Titus County, Texas, on change of venue

6  from Morris County, Texas, and the following proceedings

7  were had:

8          THE COURT: Let's get on the

9  record.

10         In the case of "The State of Texas Vs.

11  Billy Joe Wardlow" let the record reflect that all of the

12  attorneys and the Defendant are present in the courtroom.

13         When we recessed yesterday Mr. Townsend,

14  I instructed you to comply with Motion for Discovery

15  either in writing or orally.

16         At this time what I would like to do is

17  to go down each numbered item requested by the Defense

18  and have you either state into the record that you have

19  complied with that request or that you haven't because

20  there is no evidence for you to comply with it by stating

21  the answer in the record at this time.

22         "Number 1" is the request for "All

23  confessions, admissions and statements, in writing,

24  signed by the Defendant."

25         Are there any such statements, Mr.

1    Townsend?

2              MR. TOWNSEND:  Those were hand

3    delivered this morning, they also have been previously

4    supplied on June 27th of 1994.

5              THE COURT:  Okay.  Now, Mr.

6    Old, I'm not going to address you during this session.

7    If Mr. Townsend makes a statement that you don't agree

8    with then I will expect you to speak up and say so for

9    the record but I'm not going to ask you each time if it

10   has been supplied, I will assume it has if you are

11   silent, otherwise I will expect to hear from you.

12             The  second  request  is  for  "All

13   confessions, admissions or oral statements."

14             MR.  TOWNSEND:   None,  your

15   Honor.

16             THE COURT:  "3", "All oral,

17   written and recorded statements of the Defendant, and

18   memoranda of said statements made to any investigating

19   officer"

20             MR. TOWNSEND:  Those have been

21   hand delivered, too.

22             THE  COURT:     "4",    "All

23   handwritten and typed notes made by all law enforcement

24   officers prior to, during and after the Defendant was

25   interrogated."

1          MR.  TOWNSEND:   None,  Your

2  Honor.

3          THE    COURT:    "5",   "All

4  handwritten and typed notes of the police officers who

5  investigated  and  participated  in  any  manner  in  this

6  case."

7          MR.  TOWNSEND:   Your  Honor,

8  those were presented June 27th.

9          THE COURT:  "6" is the request

10 for "The  names  of  all  suspects  who  were  interrogated

11 and/or arrested in conjunction with this offense."

12         MR. TOWNSEND: There are none,

13 Your Honor.

14         THE    COURT:    "7",   "Any

15 statements, whether written or oral, by the Defendant,

16 all   Co-Defendant(s)   and   Co-Conspirator(s),   either

17 indicted or unindicted, which the State of Texas intends

18 to introduce."

19         MR.  TOWNSEND:   There  are

20 letters  by  the  Defendant  and  those  have  been  hand

21 delivered  today  as  well  as  presented  earlier  to  the

22 Defendant.

23         THE COURT:  "8" requests --

24         MR. OLD:  Could we go back to

25 "Number 6?"

1      THE COURT:  Yes.  "Request 6"

2  is a request for the names of all suspects.

3      MR.   OLD:      "That   were

4  interrogated or arrested."

5      Tonya Fulfer certainly would be one of

6  those.

7      If you define "suspect" as someone who

8  was never charged, by "arrested" she would not, she is

9  a "suspect."

10      THE COURT:     Tonya Fulfer,

11  Co-Defendant, right?

12      MR. TOWNSEND:  I took "Number

13  6" to be those people who may be interrogated but not

14  charged.   Certainly Tonya Fulfer was arrested to my

15  knowledge --

16      THE COURT:  Was there anybody

17  else interrogated and arrested other than Tonya and Billy

18  Joe?

19      MR.  TOWNSEND:    Not to my

20  knowledge, Your Honor.

21      THE COURT:  Mr. Old, does that

22  cover it for you or do you have anymore knowledge?

23      MR. OLD:  Yes, Your Honor.

24      THE COURT:  Let's see, now,

25  I have lost my place.  I think we were about to start on

1    "8."

2              "8" is a request for "All statements

3    made by any party or witness to this alleged offense, in

4    the possession of or within the knowledge of the District

5    Attorney  or  any  of  his  agents,  including  any  law

6    enforcement agency."

7              The request is for statements, either

8    written or oral which might be material for the innocence

9    of the Defendant or to punishment.

10              Mr. Townsend?

11              MR. TOWNSEND:  Those were --

12    any such statements were provided on June 27th.

13              THE COURT:  Okay.

14              MR. OLD:  Your Honor, as to

15    "8", he says, "Any such statement", I would like to know

16    which statement he purports to comply with.  "Number 8"

17    could become a matter of opinion of whether they do or

18    do not.

19              MR. TOWNSEND:  Let me read

20    "8."

21              THE COURT:  All right.

22              MR. TOWNSEND:  Your Honor, as

23    to any written statement as to "Number 8", as to any

24    written statements, those were provided, as to any oral

25    statement, I'm not sure exactly what that would --

1                     THE COURT: I read it to be

2   a request for any exculpatory evidence, the request is

3   for any evidence material to the innocence of the

4   Defendant or to punishment. I have to assume that the

5   "punishment" means evidence that would be favorable to

6   the Defense for punishment and evidence that is favorable

7   to the Defense Attorney for innocence which would be

8   exculpatory.

9                    MR. TOWNSEND: Any statements

10  we have were sent on June 27th, 1994, I didn't consider

11  any of these to be exculpatory.

12                 THE COURT: Mr. Old, do you

13  have any questions?

14                 MR. OLD: If his answer is

15  there are none as to oral and written of people

16  possessing that knowledge I mean I would have to be

17  satisfied with it. If there are people -- I would like

18  to know what persons he says has that particular

19  knowledge as to innocence or as to punishment evidence.

20                MR. TOWNSEND: I know of no

21  such written or oral statement.

22                 THE COURT: Mr. Townsend, if

23  you do become aware of any such statement be sure you

24  advise the Court and the Defense.

25                MR. TOWNSEND: Yes.

1                         THE COURT:  "9" is "A written

2 transcription of the testimony of all the witnesses who

3 appeared and testified before the Grand Jury."

4                         MR. TOWNSEND:   There was no

5 transcript taken, Your Honor.

6                         THE    COURT:    Was    there

7 testimony before the Grand Jury?

8                         MR.    TOWNSEND:    There    was

9 testimony before the Grand Jury.

10                         THE COURT:  But there was no

11 Court Reporter?

12                         MR. TOWNSEND:   There was no

13 Court Reporter, which is the way we standardly do it.

14                         THE COURT:  Then I assume the

15 answer to "9" is that it does not exist?

16                         MR.    TOWNSEND:    Yes,   Your

17 Honor.

18                         THE COURT:  "10" is a request

19 for "All objects and tangible property alleged by the

20 State to have been taken or used by the Defendant or any

21 Co-Conspirator during the course of the commission of the

22 offense."

23                         MR. TOWNSEND: Your Honor, the

24 only object or tangible property that I can think of in

25 that regard would be the pickup truck which we have got

1    pictures of.   That truck has been turned back into the

2    possession of the victim's family.

3                          THE COURT:   You are referring

4    to the truck that allegedly the Defendant was attempting

5    to steal or did steal?

6                          MR.   TOWNSEND:     Yes,   Your

7    Honor.  We have pictures of that, those photographs along

8    with any other photographs are either in my office or the

9    Sheriff's Department.   We can provide those for Bird to

10   view at his convenience.

11                         THE COURT:   All right.

12                         MR. TOWNSEND:   Also there is

13   a gun allegedly used by the Defendant, it as well is in

14   the possession of the Sheriff's Department and we can

15   make that available to Mr. Old.

16                         THE COURT:   Mr. Old, if you

17   wish  to  view  the  weapon  or  the  photographs  make

18   arrangement with Mr. Townsend.

19                    That covers "10" and "11."

20                         MR. OLD:  Your Honor, as to

21   "10", I may be overstepping what I'm asking, I am -- I

22   welcome criticism if I am out of order.

23                    They have not alleged the manner or

24   means of the robbery and based on your statement and your

25   questions to him it appears that the Statute cites it as

1    "tangible property."

2                    Is that tangible property that was the

3    subject of the robbery the pickup truck?

4                    MR.   TOWNSEND:     I   believe

5    that's what it says in it.

6                    MR. OLD:   No.   It does not

7    state in it, it alleges a robbery, it does not allege

8    what --

9                    MR. TOWNSEND:  I don't think

10   we are required to allege that in the indictment but

11   anyway, yes.

12                   MR.   OLD:     I   think   he's

13   required to allege the manner and means in which it was

14   committed but I mean, that's the subject of another

15   motion.

16                   THE COURT:   Yes.   I believe

17   that would be for another motion.

18                   But if I understand what Mr. Old is

19   getting to, Mr. Townsend, if you were required to plead

20   more specifically the robbery that you are alleging was

21   the robbery or attempted robbery of Mr. Cole and the

22   property taken or to be taken was only the pickup truck,

23   is that correct?

24                   MR. TOWNSEND: Well, you know,

25   I think the evidence will show the pickup truck and also

1    some money.

2                    THE   COURT:   But   no   other

3    tangible object other than the truck and money and

4    whatever might have been physically inside the truck?

5                    MR. TOWNSEND: That's the only

6    tangible property that was involved in -- during the

7    course of commission of the offense.

8                    Now, there is also pictures that have

9    been taken of tangible property that was found in the

10   possession of the Defendant and Co-Defendant, you know,

11   when they were at the motel room they were staying in.

12   Those were, however, you know, we have pictures of those.

13   They are available.

14                   However, I didn't consider them part of

15   "Number 10" because they are not really -- I didn't

16   consider those things to have been taken or used during

17   the course of the offense.  If there was items that were

18   with the parties when they were arrested.

19                   THE COURT:  Were these items

20   allegedly owned by Mr. Cole or by other parties?

21                   MR. TOWNSEND:  No.   They are

22   not alleged to have been owned by Mr. Cole.

23                   THE COURT: Mr. Old, does that

24   answer your question?

25                   MR. OLD:  I mean --

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

1      MR. TOWNSEND: Your Honor,

2   also there was some items found on the side of the road

3   Mr. Bird Old is aware of those, there were items found

4   such as a checkbook that belongs to the victim, just some

5   various items that came out of his pickup. We have

6   pictures of those, Mr. Old has access to those

7   photographs.

8      THE COURT: Make available to

9   Mr. Old the photographs of any property that was

10  recovered during this arrest or physical exhibition of

11  any property if you don't have photographs.

12      MR. TOWNSEND: That's no

13  problem.

14      THE COURT: "11" has been

15  covered, you say you have a weapon in possession that you

16  allege to have been used?

17      MR. TOWNSEND: Yes, Your

18  Honor.

19      THE COURT: "12" is a request

20  for "All articles of clothing, including shirts, pants,

21  undergarments and shoes allegedly belonging to the

22  Defendant and to the Decedent."

23      MR. TOWNSEND: There's a few

24  such items, Your Honor, and they are in possession of the

25  Morris County Sheriff's Department.

1          Mr.   Old   can   view   those   at   his

2     convenience.

3               THE COURT:   "13" is a request

4     for "All contraband, drugs, controlled substances and

5     paraphernalia which were seized as a result of the

6     investigation of this case."

7               MR. TOWNSEND:   There were no

8     contraband, drugs, there were no controlled substance and

9     when it says "paraphernalia" I assume it means "drug

10    paraphernalia."

11              THE COURT:   That's the way I

12    would interpret it.

13              MR. TOWNSEND:   There was no

14    drug paraphernalia.

15              THE COURT: That answers "13."

16              "14" is a request for "All documents,

17    papers, books, accounts, letters, objects and tangible

18    things which are the property of the Defendant and which

19    are in the possession of the prosecutor."

20              MR. TOWNSEND: All letters and

21    that sort of thing would have been hand -- hand delivered

22    today as well as on June 27th of '94.

23              As to tangible things such as clothes

24    that we have already covered those things, would be in

25    the custody of the Sheriff's Department.

1      THE COURT:  And you will make

2  it -- inspection available?

3      MR.  TOWNSEND:   They will be

4  able to view it.

5      THE COURT:  "15" is a request

6  for "Books, papers, letters and objects taken, tangible

7  things in possession of the prosecutor that came into

8  your possession as the result of the investigation and

9  are material to the Defendant's innocence."

10      I think that probably is covered by

11  "14", I mean you have already offered to show him

12  everything you have, whether it's exculpatory or not?

13      MR.  TOWNSEND:   Yes, Your

14  Honor.  That's true.  I know of none that would be

15  exculpatory but he's welcome to look at what we have got.

16      THE COURT:  "16" is a request

17  for "written waiver alleged by the State to have been

18  signed by the Defendant concerning the Defendant's right

19  to counsel prior to the making of any written and oral

20  statements by the Defendant."

21      Do you have anything?

22      MR. TOWNSEND:  None.

23      THE COURT:  "17" is a request

24  for written consent to search, did you have a written

25  consent?

1          MR.  TOWNSEND:    There  was  a

2     written consent to search that involved the Defendant's

3     automobile and his motel room that was sent on -- sent

4     on June 27th, 1994.

5          THE COURT:  "18" is a request

6     for "The search warrant and arrest warrant and affidavits

7     in support thereof."

8          Did you have a search and arrest warrant

9     and affidavit?

10         MR.  TOWNSEND:    Those  were

11    also, Your Honor, yes, and they were sent on June 27th,

12    1994.

13         MR. OLD:  Your Honor, in that

14    regard I have one which I presume or it appears the

15    arrest was made under -- in writing -- it appears, and

16    I'm not saying, it appears, I -- there may have been

17    other warrants and other affidavits to support warrants

18    other than the one you supplied.

19         MR.  TOWNSEND:    Is  what  you

20    have entitled an "Arrest Warrant" or "Search Warrant",

21    do you remember?

22         MR. OLD:  I can look.

23         THE COURT:  Mr. Townsend, at

24    the break why don't you get together with Mr. Old and

25    take a look at what he has as far as the search and

1  arrest  warrant,  if  you  have  any  additional  search

2  warrants  or  arrest  warrants  or  affidavits  provide  them

3  to Mr. Old.

4  MR. TOWNSEND:  Okay.

5  THE COURT:  "19" is a request

6  for "All  photographs,  drawings  and  charts  made  by  the

7  agent  of  the  District  Attorney's  Office  or  any  law

8  enforcement  agency,  which  were  made  with  reference  to

9  this case."

10  MR. TOWNSEND:  Any such items

11  are  either  in  my  possession  or  in  possession  of  the

12  Morris  County  Sheriff's  Department  and  can  be  viewed  at

13  Mr. Old's convenience.

14  MR.  OLD:   Are  there  such

15  items?

16  MR.  TOWNSEND:   There  is  a

17  drawing  of  the  victim's  home  area  that  was  not  --  it's

18  a  drawing  of  the  victim's  area,  that  is  the  Cason  area

19  that  has  not  been  completed  yet.  We  will  make  access  to

20  that once it is.

21  There  are  several  photographs  of  the

22  victim's  home,  photographs  of  the  location  where  the

23  victim's  checkbook  and  other  personal  items  belonging  to

24  the  victim  were  found,  several  photographs  of  that  type

25  nature  that  I  have  that  can  be  viewed  at  Mr.  Old's

1    convenience.

2                    MR. OLD:   As to the drawing

3    that you are speaking of that is incomplete, is that

4    something that is being professionally done?

5                    MR. TOWNSEND:   It's just a

6    matter of we have a scale map of the Cason area but it's

7    not very large and where we need to get it blown up and

8    you are free to come look at it as it is but once we get

9    to trial we'll have it in a larger size.

10                    THE COURT:  "19" and "20" and

11   "21" are -- excuse me, "20" and "21" are requests for

12   photographs of the Defendant, provide any photographs of

13   the Defendant you have in your possession, whether they

14   were taken in reference to this case or investigation of

15   this case or any prior picture if they were used for

16   identification purposes.

17                    MR.  TOWNSEND:   Okay.   On

18   "Number 20", "Photographs of the Decedent", we have a few

19   of those.

20                    Mr.  Old  can  view  those  at  his

21   convenience.

22                    "21", "Photographs of the Defendant",

23   same way, we have a few photographs and can be viewed.

24                    THE COURT:  From what you are

25   telling me you have -- you will let Mr. Old look at --

1          MR. TOWNSEND:  No problem.

2          THE COURT:  "22" is a request

3    for fingerprints, palm prints, footprints and reports

4    with respect to the prints alleged by the State to have

5    been made by the Defendant or Co-Defendant.

6          MR. TOWNSEND:  There are no

7    prints of that nature, Your Honor.

8          MR. OLD:  Your Honor, as to

9    that may I inquire that you are telling me the officer

10   that investigated this did not attempt to lift any prints

11   from the scene?

12         MR. TOWNSEND:  I believe the

13   officers may have made some attempt of that nature but

14   any attempt they made and any prints that were found

15   would be reflected in the officer's report which you have

16   copies of but --

17         MR. OLD:  You are saying

18   there's none to your knowledge?

19         MR. TOWNSEND:  None.  No

20   makeable fingerprints, palm prints and when you -- I

21   don't believe footprints, either but I'm not certain

22   about that either but I don't believe there are any

23   footprints but anyway they are all contained in the

24   officer's report which you have, whatever you have on

25   that and I'm certain there are no fingerprints or palm

1   prints.

2                    MR. OLD:  Your Honor, I could

3   have missed or forgotten it, I don't find any of that in

4   the records that I have and what I want on that in

5   response to that is either "None exist" or be pointed out

6   where they are because I have not discovered any --

7                    MR. TOWNSEND:    If you are

8   asking --

9                    MR.  OLD:       --  in  the

10  information that you supplied me.

11                   THE  COURT:    I  believe  he

12  already said that none exist.

13                   MR. OLD:  Well, he indicated

14  that then hedged and said "If there are any they are in

15  the reports that you -- "

16                   THE COURT:   I think what he

17  was saying, and correct me if I am wrong --

18                   MR. TOWNSEND: I'm saying none

19  exist to my knowledge but if I have overlooked something

20  it would certainly be contained in the officer's report.

21                   THE COURT:   You told me no

22  prints exist, I thought you were talking about any

23  attempt to remove prints would be reflected.

24                   MR. TOWNSEND:   I think there

25  were Upshur County officers who came out and assisted and

1    I don't know that they necessarily, you know, looked over

2    wide areas around that house for prints but they did do

3    some -- did make some attempt at looking for certain

4    items and I'm not aware of exactly what they looked for

5    but I know there were no fingerprints of Billy Wardlow

6    or fingerprints of the other Co-Defendant that were

7    located.

8                    I can get, I am sure I could get a

9    report from those folks in Upshur County but I think this

10   report is basically going to be, you know, no evidence.

11                   MR. OLD:   I don't think you

12   have provided that report.

13                   MR. TOWNSEND:   I don't think

14   I have that report.

15                   MR. OLD:   I mean, I have read

16   a lot of officer's reports and I'm not going to sit here

17   and say what I read.

18                   MR. TOWNSEND: I think you are

19   probably right.   I don't think I have any such report.

20                   MR. OLD: Were they scientific

21   investigators that came to the scene?

22                   MR. TOWNSEND:    I believe

23   that's right.

24                   MR. OLD:   They have a team?

25                   MR. TOWNSEND:   They kind of

1    have a team in Upshur County who works that sort of

2    thing, that was who was over there.   There was two or

3    three guys and I don't remember their names.

4                        THE   COURT:     "23"   is   the

5    request for reports of scientific tests and experiments.

6                        So, Mr. Townsend, check with whoever

7    made what attempt, whoever that team was that went in to

8    try to lift prints and make reports, find out who they

9    were and let us know whether anything was recovered, any

10   reports were made and if so, of course copies of the

11   reports.

12                       MR.   TOWNSEND:     Okay,   Your

13   Honor.   I can check on that this afternoon if we get

14   through earlier.

15                       THE   COURT:     At this point

16   based on what you have said you have no fingerprint, palm

17   print or footprint evidence that you intend to use and

18   if I hear such evidence I will exclude it since you have

19   told me it doesn't exist.

20                       MR. TOWNSEND:     I don't have

21   any, Your Honor.

22                       THE COURT: Let's go to "24".

23   Again, it's a request for "Reports of scientific tests,

24   experiments and comparisons, including but not limited

25   to reports pertaining to weapons, bullets, shots,

1     waddings, cartridge cases."

2                 Have you -- do you have in your

3     possession any scientific tests?

4                 MR. TOWNSEND: We have

5     scientific testing regarding the weapon that was alleged

6     to have been used and the bullet recovered from the

7     victim's -- from the victim's body that -- the test

8     results of that test and the reports have been provided

9     to Mr. Old on June 27th of '94.

10                 The autopsy report which I'm not sure

11     that is covered.

12                 THE COURT: That's the next

13     request.

14                 MR. TOWNSEND: Anyway, the

15     autopsy report has also been provided Mr. Old on June

16     27th.

17                 There is a handwriting expert who has

18     examined some handwriting, both the handwriting samples

19     from the Defendant and handwritten letters allegedly

20     written by the Defendant and there is one report from

21     that handwriting expert that has been provided to Mr. Old

22     today.

23                 I believe it was also provided earlier

24     but it's provided today.

25                 There is another, further handwriting

1   test from the same handwriting expert where he has tested

2   some letters that we have received.

3                   After he completed the first test we did

4   not have the report from that test yet.

5                   I expect to receive that report within

6   the next few days and will certainly provide it at that

7   time.

8                   THE COURT:   That gets us to

9   "26."

10                  "25", you covered the autopsy report.

11                  "26" is a request for "Medical reports

12  which show or tend to show the physical condition of the

13  Decedent."

14                  MR. TOWNSEND:  We have no such

15  report.

16                  THE COURT:  "27" is a request

17  for the blood type of the Decedent.

18                  MR. TOWNSEND:  We do not have

19  that knowledge but that's in the autopsy and I think it

20  probably --

21                  THE COURT:   It should be.

22                  So you don't have any independent?

23                  MR. TOWNSEND:  We don't have

24  any independent knowledge.

25                  THE COURT:  "28" is a request

1    for medical and psychiatric reports submitted by any

2    doctor at the request of the State in conjunction with

3    the examination of the Defendant, the Decedent and all

4    State's witnesses.

5              That's a little broad but it has been

6    granted so --

7              MR. TOWNSEND:   None of it

8    exists, Your Honor, except the autopsy.

9              THE COURT:   So you have not

10   had Mr. Wardlow examined?

11             MR. TOWNSEND:   No.   We have

12   not, Your Honor.

13             MR. OLD:   So as to Tonya

14   Fulfer, do you have any psychiatric or mental reports of

15   any kind on her?

16             MR. TOWNSEND: We have not had

17   her tested, Your Honor.

18             I think maybe her attorney may have had

19   her tested but we have not and I have not had access to

20   any findings he may have.

21             THE COURT:   "29" is a request

22   for "All evidence as to the incompetency of the Defendant

23   to stand trial which is in the State's possession."

24             Do you have any such knowledge or

25   evidence?

1          MR. TOWNSEND:  We have none,

2     Your Honor.

3          THE COURT:  "30."  "30" is a

4     request for evidence as to insanity of the Defendant at

5     the time of the alleged offense.

6               Do you have any such?

7          MR. TOWNSEND:  We have none,

8     Your Honor.

9          THE COURT:  "31" is a request

10    for photographs made of all line-ups conducted in this

11    case.

12              Did you have a line-up?

13         MR. TOWNSEND:  There was not

14    a line-up.

15         THE COURT:  So you have no

16    line-up photos?

17         MR. TOWNSEND:  No.

18         THE COURT:  "32" is a request

19    for a police form used by law enforcement to identify

20    participants in the line-up.

21              There was no line-up so "32" and "33"

22    do not apply.

23              "34" is a request for prior criminal

24    records of the Defendant, Co-Defendant, Decedent, each

25    informant and State's witnesses requesting juvenile,

1   adult felony and misdemeanor.

2          Do you have any such evidence?

3                  MR. TOWNSEND: "Prior criminal

4   record of the following persons?"

5          Okay.   The Defendant, that has been

6   provided to Mr. Old and as to the Co-Defendant there is

7   only one Co-Defendant that we know of, no prior criminal

8   record on her.

9                  Co-Conspirator, that would be the same

10  response.

11                 The Decedent had no prior criminal

12  record that we are aware of.

13                 There was no informant so there's

14  nothing there.

15                 As to all the State's witnesses, on June

16  27th Mr. Old was provided with criminal records of any

17  of the State's witnesses that we were aware of other than

18  Jimmy Stewart and Joe McKinney and that has been hand

19  delivered to him this morning.

20                 And I want to correct one thing, I don't

21  remember if this was said on the record yet or off the

22  record, I think I said it yesterday that I thought Joe

23  McKinney was in TDC, in fact he has just recently been

24  paroled and that's reflected in the letter I gave to Mr.

25  Old.   He has been paroled and we have an address on him.

1  THE COURT: Is he in this

2  area?

3  MR. TOWNSEND: Yes. He's in

4  Morris County I believe but anyway it's reflected in the

5  letter.

6  Jimmy Stewart who I did not think was

7  in TDC but I did not know where he was, I found out he

8  was in TDC.

9  MR. OLD: Where in TDC?

10  MR. TOWNSEND: That I don't

11  know because I just found out yesterday afternoon he's

12  in TDC.

13  THE COURT: I think that's

14  information that the Defense can get as easily as the

15  State. If you can't I will order the State to get that

16  information for you, Mr. Old.

17  Okay. That gets us down to "35", a

18  written specification of all prior misconduct and

19  evidence of extraneous offense(s) which the State intends

20  to use against the Defendant.

21  MR. TOWNSEND: That was a more

22  detailed list than what I gave him yesterday that I had

23  had written out, I hand delivered to him this morning.

24  In fact those offenses with the exception of one were

25  offenses that he has had the reports on since June 27th.

1          THE COURT:   But you now have

2     specified in writing all of the misconduct and extraneous

3     offenses that you intend to use during this trial?

4          MR.   TOWNSEND:     Yes,  Your

5     Honor.

6          THE COURT:   "36" is a request

7     that the prosecutor identify the location of recovery of

8     all items provided to the Defendant.

9          MR.   TOWNSEND:    I   had   a

10    question on that, I wasn't -- I wasn't sure exactly what

11    that meant.

12         Does that require -- to identify the

13    location, that is just --

14         THE COURT:   It's misworded.

15         MR.   TOWNSEND:    I   have   a

16    question about that.  I think we have -- I think all of

17    our officer reports and so on would certainly indicate

18    that location of any item that was recovered such as

19    bullet or gun or clothing, you know, whatever those items

20    might be.   I think that the Offense Report would

21    certainly reflect that.

22         If there's any item that Mr. Old or Mr.

23    Hinson is aware of from the report that it is not clear

24    where those items were recovered I will try to look into

25    that.

1          THE COURT:  After reading this
2    I think it has become clearer to me.  I didn't understand
3    it when I first read it but whenever Mr. Old is looking
4    at whatever item you are going to produce if there's any
5    question as to where they are recovered then I assume
6    that the District Attorney's Office will provide any
7    information Mr. Old needs.
8          So Mr. Old, if you do not have the
9    information as to the recovery of the item you are going
10   to view or have viewed request that information from Mr.
11   Townsend if it's not clear from the object or the report
12   you have in your possession.
13          "37" is a request that the State make
14   inquiry to disclose all of the following, "all records
15   and information showing a prior criminal record in state
16   or federal courts of all state's witnesses."
17          MR. TOWNSEND:  I think that's
18   covered under -- before, Your Honor.
19          THE COURT:  We have covered
20   it.
21          "b"  requests  "All  records  and
22   information revealing prior misconduct of all State's
23   witnesses."
24          MR.  TOWNSEND:   That's  not
25   specifically under "Number 34" but we do know of no such

1    misconduct or bad acts unless they are covered in

2    convictions.

3                    THE COURT:   If you discover

4    any prior misconduct or bad acts that are not covered by

5    conviction inform Mr. Old.

6                    MR. TOWNSEND:   Okay.

7                    THE COURT:   "6" -- I don't

8    know where I come up, try "c."

9                    "c", "All 'consideration' or promises

10   of 'consideration' given to or on behalf of the State's

11   witnesses."

12                   MR.   TOWNSEND:        That

13   information was, the only consideration or promises of

14   consideration involved are contained in the letter that

15   Mr. Old   received on the 6th of October of '94 in

16   relation --

17                   THE COURT:   That was the

18   discussion I assume we had yesterday concerning the fact

19   that she's going to plead guilty to the lesser offense

20   of murder, have the jury assess punishment.

21                   MR. OLD:   For purposes of the

22   record I stated yesterday that I thought I received that

23   letter on Thursday afternoon, I was incorrect in that I

24   would like to mark a copy of the letter and offer it as

25   evidence for purposes of this hearing.

1                     And in fact that letter left Mr.

2 Townsend's office on October the 6th.

3                     Let me get it marked.

4

5                     (Defendant's Pre-Trial Exhibit Number

6 1 was marked for identification.)

7

8                     MR. TOWNSEND:  No objection,

9 Your Honor.

10                     MR. OLD: Your Honor, we would

11 offer "DPTX1."

12                     THE COURT:  Defendant's Pre-

13 Trial Exhibit 1 is admitted.

14

15                     (Defendant's Pre-Trial Exhibit Number

16 1 was received in evidence.)

17

18                     MR. OLD:   Will the Court

19 take judicial notice that October 6th was last Thursday,

20 in addition to that take judicial notice of the fact that

21 -- that is the date that we began voir dire in this case?

22                     THE COURT:   I will take

23 judicial notice.  So far as voir dire is concerned, that

24 was the day we did our general voir dire, there was no

25 specific voir dire.

1        Yes.  I will take notice as requested.

2                MR. OLD:  In addition to that

3    on the record I would like to correct my statement, it

4    was after lunch on Friday that I received this, received

5    this in place of "Thursday" but based on what the date

6    the letter was mailed that would have to be correct.

7                MR. TOWNSEND:  Your Honor, may

8    I also point out for the record that the individual jury

9    selection where either Mr. Old or Mr. Hinson or myself

10   and Mr. Lee would have been talking to the jury panel did

11   not -- would not have began until four days later?

12               THE  COURT:    I believe the

13   record will reflect that no one had addressed this jury

14   concerning this case or prospective jurors concerning

15   this case except the Court through today which is October

16   12th.

17               All right.  The next is --

18               MR. OLD:  Can we go back just

19   a minute?

20               My inquiry as to "consideration", what

21   is the consideration to Tonya Fulfer for her plea?

22               MR.    TOWNSEND:        "The

23   consideration?"

24               MR. OLD:  Yes.  The promise,

25   her promise quid pro quo?

1                MR. TOWNSEND:   The promise

2    is that I have agreed to allow her to plead guilty and

3    go -- to murder and go to the jury and allow the jury to

4    assess the punishment if she testifies if -- or if she

5    agrees to testify in this case.

6                MR. OLD:   For her agreement

7    to testify in this case to?

8                MR. TOWNSEND:  As to what she

9    truthfully knows about this case.

10               MR. OLD:  Her agreement is to

11   testify and cooperate?

12               MR. TOWNSEND:   And tell the

13   truth as to what she knows about this case, assuming she

14   is called as a witness.

15               THE COURT:   So what you are

16   telling me, Mr. Townsend, is it correct, is a reduction

17   of the charge from "Capital Murder" to "Murder" in

18   exchange for her cooperation?

19               MR. TOWNSEND:  Yes.

20               THE COURT:    I think that

21   covers it.

22           Anything else on that issue, Mr. Old?

23               MR. OLD:   Not at this time,

24   Your Honor.

25               MR. HINSON: Your Honor, could

1    I ask one question?

2                    THE COURT:  Yes.

3                    MR. HINSON:  Have there been

4    any considerations to jail inmates that have given

5    statements in this case?

6                    Have any of these inmates plead to any

7    charge since the time they made any statement?

8                    MR. TOWNSEND:  If you look

9    through the written statements I don't think there's any

10   written statements from the jail inmates.

11                   MR. HINSON:  Well, there is

12   a statement from police officers that recollect what

13   prisoners told them.

14                   MR. TOWNSEND:  What prisoners

15   told them, yes, but there certainly were no agreements

16   made with those jail inmates before they talked to

17   officers.  They had not been any agreement made with

18   those jail inmates and since they talked to officers, as

19   of this date there's no agreement with any jail inmate

20   on anything involving this trial or anything else and I

21   don't anticipate any agreement but if there is any

22   agreement made with anyone I will certainly let the Court

23   -- make the Court and Mr. Old and Mr. Hinson aware of

24   that.

25                   THE COURT:  Do you think that

1   covers it?

2                   MR. OLD:  I would like to make

3   one more inquiry as to Stewart and the man paroled from

4   the penitentiary was "Stewart?"

5                   MR. TOWNSEND:   I'm sorry, I

6   was talking to Randy.

7                   MR. OLD:   The witness you

8   mentioned yesterday -- McKinney who has now been paroled?

9                   MR. TOWNSEND:  Yes.

10                  MR.    OLD:       It    is    my

11  understanding that you received notice that they are

12  coming up for parole and you have the opportunity to

13  express your opinion about their parole.

14                  MR. TOWNSEND:   Generally --

15  if I received notice on Joe McKinney I don't recall

16  receiving it -- because, like I said, I -- until I got

17  back to the office yesterday I was of the opinion that

18  he was in TDC.

19                  MR. OLD:  I'm not criticizing

20  you for not wanting to rely on your recollection in such

21  a matter, I would say that in the event that you did not

22  act or acted in his favor that would be evidence of a

23  favor.

24                  MR. TOWNSEND:  Your Honor, I

25  did not do -- I have not talked to Joe McKinney, I have

1   not talked to anyone representing Joe McKinney or make

2   any agreement with him.  I have not even discussed his

3   testimony with Joe McKinney.

4                    THE COURT:   Mr. Townsend, I

5   think what Mr. Old is getting at, I assume in this county

6   that the District Attorney receives a letter stating that

7   an inmate is about to be paroled, gives you an

8   opportunity to object if you wish or to give any good

9   statement if you wish.

10                    MR. LEE:   Most of those

11  statements are made at the time of the plea bargain on

12  the forms that go into the penitentiary.  They have

13  changed the system now, we do not have a recommendation.

14  When they come up for parole they give us notice of

15  parole but we get no input.

16                    MR. TOWNSEND:   That's the way

17  we do it, too.

18                    THE COURT:   You have not done

19  anything to help or hurt Mr. McKinney?  You have not made

20  any effort to cooperate or not cooperate with McKinney

21  in the case, no more so than any other inmate sent to

22  TDC?

23                    MR. TOWNSEND:   None whatever.

24                    MR. OLD:   But you did make a

25  recommendation when the packet went into the system?

1          MR. TOWNSEND:  When the packet

2     goes into the system there is also a slot that says "I

3     recommend parole" or "I do not recommend parole."

4          I can tell you for certain without

5     specifically recalling it, I can tell you for certain my

6     answer to that was "I do not recommend parole."

7          Because that is always my answer.

8          MR. OLD:  Can we have that

9     document, Your Honor?

10          THE COURT:  Do you have a copy

11     of the document?

12          MR.  TOWNSEND:    The  Texas

13     Department of Corrections would have a copy of it.

14          THE COURT:  Then you will need

15     to subpoena those documents, Mr. Old.

16          Would those, this recommendation be made

17     before or after Mr. Wardlow was arrested?

18          MR. TOWNSEND:  That I'm not

19     sure about not.  It would have been made -- it clearly

20     would have been made before I contemplated using Mr.

21     McKinney as a witness because I only began contemplating

22     him as a witness a few days ago.

23          MR. OLD:  The incident that

24     he supposedly has knowledge of, was his plea before or

25     after that time?

1          MR.   TOWNSEND:      I   can't

2    honestly tell you for certain.   I believe -- this is

3    based on memory and this might be incorrect, I believe

4    he was in jail at that time on a felony revocation of

5    probation.   I believe that's right.

6          And I believe that probably subsequent

7    to it, could have been, you know, either subsequent to

8    that time he plead true and took his 10 years or five

9    years or whatever it was that he was on probation and

10   revoked for that number of years.

11         Now, it's probable that he had already

12   been revoked and was just in Morris County Jail awaiting

13   a trip to TDC when this happened but I don't know.   I

14   couldn't honestly tell you for certain.

15         THE COURT:   Check the dates

16   of Mr. McKinney's plea.

17         Apparently he went to TDC on a probation

18   revocation, is that correct?

19         MR.   TOWNSEND:      I   believe

20   that's correct.

21         THE   COURT:      Check   your

22   records.

23         MR. TOWNSEND:  I can check and

24   find out.   I believe that's correct.

25         THE COURT:  Find out what got

1    him in TDC, what -- when the deal, if any, was made, what

2    he got when he was sentenced and if you have a note of

3    your recommendation, otherwise I'm not going to request

4    you to get it from TDC.  I think that's something that

5    can be obtained by subpoena if relevant.

6                         MR.   TOWNSEND:     Yes,   Your

7    Honor.  I will check on it.

8                         THE COURT:  Let's see, we are

9    down to "d", a request for "documents, records, memoranda

10   and notes reflecting the 'consideration'."

11                         I  think  we  have  pretty  well  covered

12   that.

13                         "e"  is  the  request  for  "any  and  all

14   threats, express or implied, direct or indirect, or other

15   coercion  made  or  directed  against  the  witness  or

16   potential -- "

17                         I  am  not  sure  I  understand  what  he's

18   asking for, let me read this silently.

19                         Mr.  Townsend,  have  you  threatened  any

20   potential witness to gain their cooperation?

21                         By "threaten", I mean indicate that if

22   they don't cooperate with you that they would receive a

23   heavier sentence in some other offense or that you would

24   turn them in for tax fraud or any other such coercion?

25                         MR. TOWNSEND:  There have been

1    no threats implied, Your Honor, direct or indirect.

2                    THE COURT:  So when you are

3    stating "he" or the "State's agent", I didn't include

4    that, but any State's agent under authority, control or

5    to your knowledge?

6                    MR. TOWNSEND: No threats from

7    anyone that I'm aware of, Your Honor.

8                    THE COURT: "f" is the request

9    for "the existence and identification of each occasion

10   on which each witness who was or is an informer,

11   accomplice or co-conspirator or expert has testified

12   before any Court, Grand Jury or other tribunal or body."

13                   MR.  TOWNSEND:  First off,

14   there's no "informer."

15                       "Accomplice", I don't believe the

16   accomplice has ever testified anywhere that I'm aware of,

17   "co-conspirator", same as "accomplice", "expert", there

18   would be a firearm expert, there will be a handwriting

19   expert, I am sure they have testified in court in other

20   places but I'm not aware of where or when and I believe

21   the Defense can get that information from those folks as

22   easily as I could.

23                   THE COURT:  Provided if you

24   haven't done so, let Mr. Old know who your expert

25   witnesses are and then if you have a resume on your

1  experts provide a copy of that resume.

2        Other than that I don't -- I'm not going

3  to order the State to have a discussion to get all their

4  history on testifying.  If you know it you can provide

5  it to Mr. Old, otherwise if you give Mr. Old the name and

6  addresses of the expert he may talk to them himself and

7  find out what their experience is.

8        MR. TOWNSEND:  I believe the

9  record reflects their names and addresses, phone numbers,

10  that sort of thing.

11        THE COURT:  Okay.  "g" is a

12  request for "existence and identification of each

13  occasion on which each witness who was or is an informer,

14  accomplice, co-conspirator or expert has testified before

15  any Court or Grand Jury."

16        That's the same thing.

17        MR. TOWNSEND:  Looks the same

18  to me.

19        THE COURT:  Same to me.  We

20  have covered that.

21        "h" requests for "personnel files of the

22  witness, the existence and identity of all federal, state

23  and local government files of the witness and the

24  existence and identity of all official internal affairs,

25  internal    investigation    or    public    integrity

1    investigations."

2             I'll tell you, I know that Judge Thorpe

3    has already granted this order but if you have any

4    information I'm ordering that it be given to the Court

5    in camera if it has not already been given to the

6    Defense.

7             MR. TOWNSEND: Your Honor, I'm

8    not aware of any public integrity investigations of any

9    of the officers.  Certainly they have personnel files but

10   I don't know of anything in those personnel files that

11   wouldn't be routine.

12             THE COURT:  This is a request

13   for  personnel  files  only  as  it  relates  to  an

14   investigation of public integrity, the way I read it.

15   So if you don't have any such information then --

16             MR. TOWNSEND:  I know of no

17   such information.

18             THE COURT:  If you become

19   aware of it let me know and give me the information in

20   camera.

21             Mr.  Old,  do  you  have  any  further

22   requests?

23             MR. OLD: In that regard, Your

24   Honor,  some of the officers that have been listed as

25   witnesses in this case are out of state officers from

1   different states, I have no knowledge of them.

2   What I think it contemplates is Mr.

3   Townsend inquiring as to those things and supplying them

4   if they exist.  And I'm not saying he has not done it,

5   I'm saying he might without investigation be able to

6   answer as to local officers but I have no knowledge of

7   those people and no way to investigate them so far as

8   being out of state.

9   THE COURT:  If you have out

10   of state witnesses inquire as to whether or not they have

11   ever had an internal affairs investigation concerning

12   public integrity and criminal investigation.

13   I'm not asking you to get those files,

14   I'm just asking you to inquire as to whether or not any

15   of your witnesses have an internal affairs investigation

16   pending or previously had one that has been closed.

17   If you do then I will consider whether

18   or not those files need to be revealed to the Court, I

19   think it might be very difficult to obtain on an out of

20   state witness.

21   MR. TOWNSEND:  Your Honor, I

22   will make necessary phone calls to find out if there is

23   any such information available.

24   THE COURT:  The next is

25   basically a request for anything you have that will help

1    the Defense.

2              MR. TOWNSEND: I don't believe

3    I have got anything that will help them, Your Honor.

4              THE COURT:   And then "j" is

5    a request for all the same records and information with

6    each   non-witness   whose   statements   are   offered   in

7    evidence.

8              Do you have any non-witness that item

9    or -- I don't know how we would get them, do you have any

10   statement   from   a   non-witness   that   you   are   going   to

11   attempt to introduce?

12             MR. TOWNSEND: Your Honor, any

13   statements we have are contained in the police report and

14   they have anything that we have.

15             THE   COURT:     The   request,

16   though,   is   for   the   records   and   information   on   any   of

17   those non-witnesses.   If you have a non-witness whose

18   statement that you are going to use that you are not

19   going to physically use -- I don't know how you would get

20   it in but I'm sure whoever wrote that motion is just

21   trying to cover himself.

22             MR. TOWNSEND:     Sounds   like

23   hearsay to me.

24             THE COURT:   Does to me, too.

25             MR. OLD:   Perhaps a dying

1    declaration.

2                        THE COURT:   It could be a

3    dying declaration, that would probably be admissable.

4                        MR. TOWNSEND:   We don't have

5    a dying declaration.

6                        THE COURT:   You have no plan

7    to offer any statement that you want to introduce that

8    wouldn't be reported by a public witness on the stand?

9                        We are now to "38."

10                       MR. TOWNSEND: I believe "38a"

11   through whatever, all that has to do with an informer and

12   there is no informer.

13                       THE COURT:   That covers the

14   Motion for Discovery.

15                       Mr. Old, do you have any other request

16   for discovery that is not included in this written

17   motion?

18                       MR. OLD:  I believe there is

19   some other motions that you might characterize as

20   "motions for discovery", such as "Witness List" and

21   things.

22                       THE COURT: I believe you have

23   been provided that.

24                       MR. OLD:  As to that kind of

25   Motion for Discovery, no.

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

1          THE COURT:   If there's any

2    other motion that you need me to review and rule on I

3    will expect you to bring it to my attention since

4    apparently Judge Thorpe has already had a pre-trial

5    motion hearing so any motions that need to be ruled on

6    for the State or Defense need to be brought to my

7    attention by the State and Defense.

8          MR. OLD:   Pre-Trial motions

9    are of a discovery nature?

10         THE    COURT:       "Pre-Trial

11   motions" period.

12         MR. OLD:   We have --

13         THE COURT:   I'm not saying we

14   are going to do it at this time but I need to be made

15   aware of motions that need ruling on.

16         MR. OLD:   We have a Motion to

17   Quash the Indictment, a Motion to Suppress Evidence

18   Seized After an Illegal Arrest, I believe those are the

19   two live motions that we have and I anticipate after --

20   sometime today or tomorrow filing another motion which

21   would be as to matters that came up yesterday.

22         THE COURT:   All right.   So at

23   this point I have two pending motions filed by the

24   Defense that have not had rulings, that's a Motion to

25   Quash the Indictment and Motion to Suppress Evidence?

1          MR. OLD:  Yes, Your Honor.

2          THE COURT:  And then any other

3  motions you will make in writing and provide them to the

4  Court?

5          MR. OLD:  Yes.

6          THE COURT:  Mr. Townsend, do

7  you have any motions that are pending in this trial that

8  have not been ruled on?

9          MR. TOWNSEND:  I don't believe

10  so, Your Honor.

11          THE COURT:  That gets us back

12  to the Request for a Continuance made yesterday by the

13  Defense based on what I will say is "surprise" in the

14  amendment of the Witness List.

15          Mr. Old, are you in a position to tell

16  me today how much time, if any, you need to alter or

17  prepare your voir dire?

18          MR. OLD:  Your Honor, I think

19  -- and I have not -- it was handed to us, I don't know

20  when -- Lance got it, he handed it to me right after we

21  got underway.  I haven't really had an opportunity to

22  look over the information that was provided.

23          THE COURT:  Okay.

24          MR. OLD:  I think I'm talking

25  about a matter of 15 or 20 minutes to look it over.

1    THE COURT:  We have a juror

2    scheduled to arrive at 11:00 o'clock, it is five minutes

3    until 10:00, how about an hour and five minutes?

4    MR. OLD:  I can do it quicker

5    than that, Your Honor, I think and I will tell the Court

6    my position on this.

7    THE COURT:  "10:30?"

8    MR. OLD:    That's more than

9    -- I think more than enough time.  Could we --

10    THE COURT:  We will recess.

11    MR. OLD:  Nobody's leaving the

12    courthouse, I will tell the Court when I have completed.

13    THE COURT:    We will recess

14    until 10:30, if we get ready before that we will get

15    everybody rounded up and back in the courtroom.

16    MR. OLD:  Let's go in here.

17

18    (Record closed for October 12th, 1994.)

19

20    (Whereupon Court was recessed until

21    10:30 a.m., October 17th, 1994.)

22

23

24    *****

25

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS

1 STATE OF TEXAS §
         §
2 COUNTY OF TITUS §

3

4     I, Lloyd E. Billups, CSR #149 and

5 Official Court Reporter in and for the 76th Judicial

6 District, State of Texas, do hereby certify that the

7 above and foregoing contains a true and correct

8 transcription of the proceedings in the above-styled and

9 numbered cause, all of which occurred in open court or

10 in chambers on October 12, 1994 and were reported by me.

11     I further certify that this

12 transcription of the record of the proceedings truly and

13 correctly reflects the exhibits, if any, offered by the

14 respective parties.

15     WITNESS MY HAND this __31 ST__ day of

16 January, 1995.

17

18 LLOYD E. BILLUPS, CSR #149 & OFFICIAL COURT REPORTER

19 76TH JUDICIAL DISTRICT, STATE OF TEXAS

20

21

22

23

24

25

1    Certification Number of Reporter:   149

2    Expiration Date of Certification:   12/31/96

3    Business Address:   Drawer 1868
                         Mt. Pleasant, Texas 75456-1868

4
     Telephone Number:   903/577-6735

5
     Transcribed By:     Tandra K. Gibson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

LLOYD E. BILLUPS, CSR, #149
OFFICIAL COURT REPORTER
76TH JUDICIAL DISTRICT
MT. PLEASANT, TEXAS