IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BILLY JOE WARDLOW, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:04-CV-408 |
| | § | (Death Penalty Case) |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT DAVIS'S OPPOSITION TO PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION FOR STAY OF EXECUTION

Petitioner Billy Joe Wardlow previously and unsuccessfully challenged the constitutionality of his state court capital murder conviction and death sentence in both state and federal courts. Now, with less than three weeks remaining before his scheduled execution, Wardlow has filed a motion under Federal Rule of Civil Procedure 60(b)(6) seeking to reopen the Court's previous judgment because the Texas Court of Criminal Appeals (CCA) has since reconsidered its dismissal of Wardlow's initial state habeas application and denied it on the merits. ECF No. 49 (Rule 60(b) Mot.). Wardlow asserts that this denial-on-the-merits undermines this Court's previous determination that his claims were procedurally defaulted, and he should receive anew a merits

adjudication. He also asks this Court to stay his execution. ECF No. 50 (Mot. Stay Exec.).

But Wardlow's motion is in large part a second-or-successive petition, and this Court therefore lacks jurisdiction to consider it. Regardless, to the extent it is a proper Rule 60(b) motion, it is untimely and fails to demonstrate the extraordinary circumstances necessary for this Court to grant Rule 60(b) relief. Wardlow's claims have been thoroughly reviewed and rejected by trial and appellate courts, both state and federal. Finally, because he demonstrates no likelihood of success on the merits of his motion, this Court should deny his request to stay his execution.

## STATEMENT OF THE CASE

### I.    Facts of the Crime

The Fifth Circuit summarized the facts of Wardlow's capital murder as follows:

> Wardlow shot and killed Carl Cole while committing a robbery at Cole's home in the small east Texas town of Cason. When he was in jail awaiting trial, Wardlow wrote a confession to the sheriff investigating the murder. The State relied on that letter to prove the intent element required for a capital murder conviction. The letter stated that Wardlow went to Cole's house, intending to steal a truck. Once inside the house, Wardlow said that he pulled a gun on Cole. Wardlow added:
>
>> Being younger and stronger, I just pushed him off and shot him right between the eyes. Just because he pissed me off. He was shot like an executioner would

2

> have done it. He fell to the ground lifeless and didn't
> even wiggle a hair.
>
> Wardlow testified and confirmed he killed Cole but gave a different
> reason for doing so. He told the jury that he did not intend to kill
> Cole when he went to his house; instead, he and his girlfriend
> Tonya Fulfer only intended to rob Cole and steal his truck. When
> Wardlow brought out the gun and told Cole to go back inside the
> house, Cole lunged at Wardlow and grabbed his arm and the gun,
> attempting to push Wardlow away. Wardlow testified that Cole
> was stronger than he expected, so he was caught off balance and
> began falling backwards. Wardlow said he shot the gun without
> aiming, hoping it would get Cole off him. The bullet hit Cole right
> between the eyes.
>
> The state countered Wardlow's claim about his intent by noting
> inconsistencies in his story and testimony from a medical
> examiner inconsistent with the gunshot occurring during a
> struggle.

*Wardlow v. Davis*, 750 F. App'x 374, 375 (5th Cir. 2018) (unpublished).

## II.    Course of State and Federal Proceedings

Wardlow was convicted and sentenced to death in 1995 for the murder of eighty-two-year-old Carl Cole, in the course of committing a robbery. 2 Clerk's Record (CR) 147–55, 157–64, 165–68. Wardlow's conviction and sentence were affirmed on direct review to the CCA. *Wardlow v. State*, No. 72,102 (Tex. Crim. App. Apr. 2, 1997). That same year, at a hearing before the state trial court, Wardlow appeared in person and, through counsel, indicated that he did not desire to have counsel appointed for filing a state application for writ of habeas corpus and did not wish to pursue any further appeals. Resp't

App. 1, ECF No. 9-2. The trial court found that Wardlow was mentally competent, had voluntarily and intelligently waived his right to have counsel appointed, and waived his right to proceed pro se in open court. *Id*. The trial court signed the findings memorializing the hearing and forwarded them to the CCA. *Id*.

Wardlow subsequently "entered into a legal representation agreement with attorney Mandy Welch . . . in which she agreed to notify the appropriate courts that [Wardlow] did, in fact, wish to pursue his post-conviction remedies." Pet'r's Ex. 4, ECF No. 1-5, at 2. The trial court then entered supplemental findings confirming Wardlow's wish to pursue habeas relief, and the CCA appointed Welch to represent Wardlow and ordered that his state habeas application be filed within 180 days. Resp't App. 2, ECF No. 9-2; Resp't App. 3, ECF No. 9-2.

Eighteen days before Wardlow's filing deadline, Wardlow wrote another letter to the CCA again expressing a desire "to waive and forego all further appeals." Pet'r Ex. 2, ECF No. 1-3. The CCA granted Wardlow's request to abandon further appeals, based on the trial court's prior hearing. *Id*. Despite this order, Welch filed a state habeas application in the trial court on the 180th day after her appointment. State Habeas Clerk's Record (SHCR) 1–67. At the same time, Welch also filed a statement from Wardlow, authorizing her to file

the application and asking the court to proceed with consideration of his application. *Id.* at 68–70.

The state trial court issued findings of fact and conclusions of law, recommending denial of habeas relief, which were forwarded to the CCA. Supp. SHCR 3–21. However, the CCA dismissed Wardlow's application, declining to review the merits of his claims based on its prior order granting Wardlow's request to abandon further appeals. *Ex parte Wardlow*, No. WR-58,548-01, 2004 WL 7330934 (Tex. Crim. App. 2004).

Wardlow then filed a petition for habeas relief in this Court. ECF No. 1. The Director filed an answer, ECF No. 9, and Wardlow sought an evidentiary hearing, which was denied. ECF Nos. 16, 18. Thereafter, the case went dormant until 2016, when the parties agreed that, because of changes to the law, supplemental briefing was necessary. ECF No. 22. Both parties then filed supplemental briefing, and this Court ultimately denied federal habeas relief, finding that the claims were procedurally defaulted and, alternatively, without merit. ECF Nos. 25, 32, 37. The Fifth Circuit then denied Wardlow's application for a certificate of appealability (COA), *Wardlow*, 750 F. App'x at 374, and the Supreme Court denied Wardlow's petition for writ of certiorari. *Wardlow v. Davis*, 140 S. Ct. 390 (Oct. 15, 2019).

### III.   Litigation Related to Wardlow's Present Execution

Eight days after the Supreme Court denied Wardlow's petition, Wardlow filed a subsequent state habeas application, raising two new claims for relief. Two days after that, the state trial court entered an order setting Wardlow's execution for April 29, 2020. Execution Order, *State v. Wardlow*, No. CR12764 (76th Dist. Ct., Titus County, Tex. Oct. 24, 2019). More than a month later, Wardlow filed in the CCA a suggestion that the Court, on its own motion, reconsider its dismissal of Wardlow's initial habeas application. Wardlow also filed a motion for an order allowing him to withdraw his previous waiver of state habeas proceedings.

On March 12, 2020, Wardlow filed a motion for a stay of his execution in the CCA, pending the disposition of the subsequent application and suggestion to reconsider. Soon thereafter, Wardlow filed a supplemental motion for stay of execution, citing primarily the then-recent COVID-19 pandemic. On April 3, 2020, the State moved to modify Wardlow's April 29 execution date, citing recent decisions by the CCA staying executions due to the pandemic. That same day, the state trial court granted the State's motion and reset Wardlow's execution date for July 8, 2020. Execution Order, *State v. Wardlow*, No. CR12764 (76th Dist. Ct., Titus County, Tex. Apr. 3, 2020).

On April 29, 2020, the CCA issued an order disposing of all Wardlow's pending proceedings. *Ex parte Wardlow*, Nos. WR-58,548-01, WR-58,548-02, 2020 WL 2059742 (Tex. Crim. App. Apr. 29, 2020) (unpublished). First, it reconsidered its dismissal of Wardlow's initial state habeas application. *Id.* at *1. It then held that, after reviewing the claims presented therein and the record of the case, the claims should be denied. *Id.* Second, it dismissed Wardlow's subsequent habeas application as an abuse of the writ without reviewing the merits of the claims raised. *Id.* at *2. Third, it denied Wardlow's motion and supplemental motion for stay of execution. *Id.*

Nearly two months later, Wardlow filed the instant Rule 60(b) motion and accompanying stay of execution, arguing that the CCA's reconsideration and denial-on-the-merits of his initial habeas application warrants reopening this Court's judgment denying federal habeas relief. Rule 60(b) Mot. 1; Mot. Stay Exec. 2. This proceeding follows.

## ARGUMENT

## I. Wardlow's Rule 60(b) motion is actually, at least in part, an impermissible successive habeas petition.

Wardlow's Rule 60(b) motion is, in fact, an impermissible second-or-successive habeas petition. Construing Rule 60(b) in accordance with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the Supreme Court has explained that the rule cannot be used to circumvent the statute's

7

proscriptions against second-or-successive petitions. *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005). Because of the rule's "comparative leniency," however, petitioners often "file what are in fact second-or-successive habeas petitions under the guise of Rule 60(b) motions." *In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (per curiam). Given that tendency, a federal court must determine whether the motion either: "(1) presents a new habeas claim . . . or (2) 'attacks the federal court's previous resolution of a claim on the merits.'" *Id.* (citing *Gonzalez*, 545 U.S. at 530, 532); *see also Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) ("A Rule 60(b) motion should be denied if it challenges on the merits an earlier denial of habeas relief." (citing *Gonzalez*, 545 U.S. at 532)). If it does either, it must be treated as a second-or-successive petition. *In re Edwards*, 865 F.3d at 203.

The statute governing successive petitions, as well as the courts, make clear that a "claim" is an asserted basis for federal habeas relief from a state court's judgment of conviction. *See Crutsinger v. Davis*, 929 F.3d 259, 265 (5th Cir. 2019); 28 U.S.C. § 2244(b). A claim has been resolved on the merits when a federal court has determined that there are no "grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254(a) and (d)." *In re Edwards*, 865 F.3d at 204. This contrasts with an allegation "'that a previous ruling which *precluded* a merits determination was in error—for example, a denial for such

reasons as failure to exhaust, procedural default, or statute-of-limitations bar.'" *Id*. at 204 (quoting *Gonzalez*, 545 U.S. at 532 n.4) (emphasis added). That is, a district court only has jurisdiction to consider a Rule 60(b) motion when it "'. . . attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.'" *Crutsinger*, 929 F.3d at 265 (quoting *Gonzalez*, 545 U.S. at 532)).

Here, Wardlow argues that he has filed a proper Rule 60(b) motion because he is challenging this Court's procedural determination that his claims—under the CCA's initial order of dismissal—were procedurally barred. Rule 60(b) Mot. 5–10. Wardlow asserts that the CCA's subsequent decision to reconsider its dismissal and deny the claims on the merits "'pulled the ground from under [this] court's earlier judgment[,]" *id*. at 2, and that this constitutes a defect in the integrity of the proceedings sufficient to vest this Court with jurisdiction over his motion.

But while it may be true that, had Wardlow confined his motion to the alleged defect, this Court would have jurisdiction to consider it, he did not do so. *See, e.g.*, *Crutsinger*, 929 F.3d at 265 ("[Crutsinger's motion] does not present a revisitation of the merits of the [ineffectiveness assistance of counsel] claim. It is confined to the federal district court's denial of funding in the first federal habeas proceeding."); *Gonzalez*, 545 U.S. at 534 ("The motion here . . .

confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding."). Indeed, fifteen pages of his twenty-six-page motion, i.e., well over half, is nothing more than a recitation of the merits of his previously-barred claims and his disagreement with this Court's resolution of them as an alternative matter. *See* Rule 60(b) Mot. 11–26. His only argument for extraordinary circumstances is a cynical assertion that this Court's alternative merits analysis was essentially fraudulent, preordained as it was by the Court's then-proper imposition of a procedural bar. *See id.* at 11 (arguing that "there is reason to doubt 'the quality, extensiveness or fairness' of the Court's consideration of the merits of the claims presented by Mr. Wardlow"). And even his argument that this Court erroneously denied him an evidentiary hearing is a merits-based attack. *See United States v. Vialva*, 904 F.3d 356, 362 (5th Cir. 2018) (holding that an allegation that the district judge improperly denied requests for an evidentiary hearing was "clearly [a] merits-based attack[]").

However Wardlow frames it, his express purpose is to reopen his proceeding so that he can relitigate his denied-on-the-merits claims. And his citation to *Vialva* hurts, rather than helps, him. *See* Rule 60(b) Mot. 5. Indeed, *Vialva* correctly notes that "Rule 60(b) motions can legitimately ask a court to reevaluate already-decided claims—as long as the motion credibly alleges a

10

non-merits-based defect in the prior habeas proceedings." 904 F.3d at 361. But *Vialva* also instructs that "the question before us is not whether Rule 60(b) motions can reopen proceedings—they certainly can—but whether [petitioners] have actually alleged procedural defects cognizable under Rule 60(b)." *Id*. Like the petitioners in *Vialva*, "[a]lthough [Wardlow] purport[s] to attack the integrity of [his] prior habeas proceedings, [Wardow]'s invocation of defective procedure rests substantially on a merits-based challenge." *Id*. Wardlow simply seeks "to transform his previously unsuccessful merits-based claims into a claim of procedural defect." *Id*. at 362. But that is the quintessential habeas claim. *See id*. at 360 ("[C]ourts have repeatedly rejected attempts to portray *substantive* claims as asserting *procedural* defects.").

It is clear Wardlow believes that simply because this Court's prior procedural determination has been superseded by the CCA's later act of grace in reconsidering its dismissal, he is free to attack this Court's resolution of his claims on the merits. But while the CCA's reconsideration may serve as a conduit for correcting this Court's prior non-merits-based adjudication, it does not allow a petitioner to escape AEDPA's bar on successive petitions. *See, e.g.*, *In re Paredes*, 587 F. App'x 805, 812–14, 822–23 (5th Cir. 2014) (unpublished) (concluding that petitioner's complaint regarding federal habeas counsel's conflict of interest did not render his Rule 60(b) motion successive, but his

effort to litigate claims for relief in his motion *did*). The remedy for a procedural determination that *precluded* a merits review is a merits review. *Cf. Gonzalez*, 545 U.S. at 532 n.4 ("[A movant] is not [making a habeas claim] when he merely asserts that a previous ruling which precluded a merits determination was in error[.]"). Wardlow has already received that. All he is left with then, and indeed all he relies on, is an attack on that review. But that is precisely what *Gonzalez* forbids. *Gonzalez*, 545 U.S. at 531–32; *see also In re Edwards*, 865 F.3d at 204–05.

Recognizing the hurdle this Court's alternative merits analysis presents, Wardlow attempts to circumvent even *the fact* of a merits adjudication by arguing that, once this Court found his claims to be procedurally barred, it lacked jurisdiction to review the merits in the alternative. Rule 60(b) Mot. 6–8 (citing *Ruiz v. Quarterman*, 504 F.3d 523, 527 (5th Cir. 2007)). He presumably does so in order to establish that this Court's procedural determination did as a matter of law, if not as a matter of fact, *preclude* merits review. But *Ruiz* does not hold that district courts are jurisdictionally prohibited from addressing the merits of a claim in the alternative, and nevertheless, it is distinguishable. The district court's denial of Ruiz's claim was expressly not on the merits; "[t]hat is, the district court did not rule that there were no grounds entitling Ruiz to habeas corpus relief . . . but rather denied relief based on

procedural default and failure to exhaust, two rulings *specifically identified by the Court* as rulings *precluding* a merits determination." *Ruiz*, 504 F.3d at 526 (emphasis added). To be sure, this fact meant that "no federal court ha[d] considered the merits of [Ruiz's] constitutional claims." *Id*. at 524. Thus, there was no prior merits resolution for Ruiz to attack in his Rule 60(b) motion, and his motion was therefore not second or successive. *Id*.

In any case, Wardlow misinterprets the effect of a procedural determination—indeed, the federal courts, especially in capital cases, routinely address the alternative merits of a procedurally defaulted claim. This is because a procedural bar is an equitable, not a jurisdictional, bar. *Cf. Granberry v. Greer*, 481 U.S. 129, 131 (1987) ("We have already decided that the failure to exhaust state remedies does not deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application."). To be sure, AEDPA expressly allows a federal district court to deny a habeas petition on the merits, notwithstanding a failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). And while it is true that an independent and adequate state bar deprives the Supreme Court of jurisdiction to review a claim on direct review, *see* Rule 60(b) Mot. 6 (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)), that is due to the unique jurisdictional statute of the Supreme Court. *See* 28 U.S.C. § 1257 (vesting the Supreme Court with jurisdiction to directly

review state court judgments where a federal constitutional question is involved). *Coleman* recognized, however, that "[i]n the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism," not jurisdiction. *See* 501 U.S. 731. That is, it is not a question of *can* a federal district court address the merits but whether it *should*. Thus, Wardlow's attempts to retroactively deprive this Court of jurisdiction, and thus to deprive it of the alternative merits review it so carefully conducted, fail.

Though Wardlow presents, in part, a true Rule 60(b) motion in challenging this Court's procedural determination, that is not the end of the inquiry. Because Wardlow received alternative merits adjudication of his claims and because his current motion expressly seeks to relitigate the denial on the merits of those claims, his purported Rule 60(b) motion must be dismissed as second or successive.

## II.   Wardlow Is Not Entitled to Relief Under Rule 60(b)(6). [1]

Rule 60(b)(6) "is a catchall provision that allows a court to grant relief 'from a final judgment, order, or proceeding' for 'any other reason that justifies relief.'" *In re Edwards*, 865 F.3d at 203. To succeed on such a motion, the

---

[1]     All arguments in this section assume—but the Director does not concede—that Wardlow's post-judgment motion is a true Rule 60(b) motion.

movant must demonstrate: "(1) that the motion be made within a reasonable time; and (2) extraordinary circumstances exist that justify the reopening of a final judgment." *Id*. (citing *Gonzalez*, 545 U.S. at 530, 535). The Supreme Court has explained that such extraordinary circumstances "'will rarely occur in the habeas context.'" *Buck v. Davis*, 137 S. Ct. 759, 772 (2017) (quoting *Gonzalez*, 545 U.S. at 535). Here, Wardlow demonstrates neither that this motion was timely nor that it presents extraordinary circumstances.

### A.   Wardlow's Rule 60(b) motion is untimely.

Even if Wardlow has properly presented a Rule 60(b) motion to this Court, it is untimely. A Rule 60(b) motion must be filed within a reasonable time "unless good cause can be shown for the delay." *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017). "Reasonableness turns on the 'particular facts and circumstances of the case.'" *Id*. The timeliness inquiry is typically "measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion." *Id*.

Wardlow points to the CCA's April 29, 2020 decision reconsidering his initial state habeas application and denying it on the merits as the point in time at which he had grounds to make a Rule 60(b) motion. *See* Rule 60(b) Mot. 10. But the issue was truly ripe long before that, in a posture that would have in fact undermined any necessity to reopen a final judgment at all. Indeed, in

2008, four years after the CCA dismissed Wardlow's application based on his waiver, the CCA issued its decision in *Ex parte Reynoso*, in which it noted that a state habeas applicant's waiver is not effective until after his deadline for filing an application has passed. 257 S.W.3d 715, 720 n.2 (Tex. Crim. App. 2008). Wardlow was well aware of this case, as he began making extensive argument about it in his supplemental briefing before this Court in 2016. *See* Pet'r's Supp. Br. 4–5, ECF No. 25. And he continued to argue that the CCA's bar was inadequate based on that case in subsequent federal proceedings. *See, e.g.*, Pet.–Appellant App. for COA 15–16, *Wardlow*, 750 F. App'x at 375.

At no point in the fifteen years that his case was pending in federal court, however, did Wardlow ever attempt to stay his federal proceedings to return to state court and ask the CCA to reconsider its dismissal. While Wardlow may argue, as he notes in his motion, *see* Rule 60(b) Mot. 2, that the CCA's two-forum rule would have prohibited his filing a suggestion that the court reconsider its decision *while* federal habeas proceedings were pending, there is nothing to indicate that he was prohibited from requesting that those proceedings be stayed. Indeed, the CCA modified its abstention doctrine in 2004—four years before *Reynoso* was decided—to allow consideration of claims in a subsequent application that were also presented in parallel federal proceedings when the federal court stayed those proceedings. *Ex parte Soffar*,

16

143 S.W.2d 804, 804 (Tex. Crim. App. 2004). And the CCA has in fact granted requests like Wardlow's, i.e., suggestions to reconsider previously dismissed cases on its own initiative, in prior cases. *See, e.g.*, *Ex parte Cathey*, No. WR-55,161-02, 2018 WL 5817199, at *1 (Tex. Crim. App. Nov. 7, 2018) (reconsidering its dismissal of a subsequent application raising a claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), after the Supreme Court issued a new opinion on the issue and the federal district court stayed its proceedings to give "'Texas courts an opportunity to decide whether *Moore* requires reconsideration of [Applicant's] *Akins* claim'").

While the Director certainly would have opposed an attempt to stay these proceedings on this basis, and while the Court may have denied a stay, that does not excuse Wardlow from failing to diligently pursue his claim since 2008. *Cf. Engle v. Isaac*, 456 U.S. 107, 130 (1982) (noting that the futility of presenting an objection at trial does not constitute cause for failing to object). Indeed, any argument based on futility is rendered moot by the fact that the CCA *did* in fact reconsider its dismissal based on Wardlow's pleadings "and the evolution of [Texas Code of Criminal Procedure] Article 11.071 caselaw[.]" *Ex parte Wardlow*, 2020 WL 2059742, at *1. Wardlow's present attempt to reopen these proceedings on a basis that could have been raised, and resolved, long ago is therefore untimely.

17

But in any case, Wardlow's motion is untimely for other reasons. Indeed, even assuming that the denial of certiorari is his initial federal habeas proceedings marked the beginning of the time which he could seek to ask the CCA to reconsider its dismissal, he still waited over one month—all while under the threat of execution—before filing his suggestion in the CCA. *See* Statement of the Case III, *supra.* Importantly, Wardlow waited nearly two months after the CCA reconsidered and denied his initial application—and with less than three weeks left before his modified execution date—before seeking to reopen proceedings in this Court. His motion is untimely. *Cf. Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (finding untimely motion brought eight months after relevant court opinion issued, with only two days before a pending execution); *see also In re Osborne*, 379 F.3d 277, 284 (5th Cri. 2004) ("It would normally be within the court's clear discretion to find a three-month delay unreasonable.").

## B. Wardlow fails to demonstrate extraordinary circumstances.

Even if Wardlow's motion is not untimely, he wholly fails to allege, much less establish, extraordinary circumstances. The Supreme Court has held that, "[i]n determining whether extraordinary circumstances are present, a court may consider a wide range of factors[,]" including "'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial

18

process.'" *Buck*, 137 S. Ct. at 778 (quoting *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847 (1988)). Here, Wardlow's only attempt at establishing extraordinary circumstances is his baseless insinuation that this Court's careful and considerate alternative merits denial was a sham. *See* Rule 60(b) Mot. 11. But a petitioner impugning the integrity of a court simply because he disagrees with the court's assessment of his claims is, while regrettable, not extraordinary.

Nor does the mere fact that the CCA has changed its mind on its procedural dismissal constitute an extraordinary circumstance. Indeed, this is analogous to the change in decisional law discussed in *Gonzalez*, where a district court did not reach the merits of an inmate's claims because, under then-existing law, the habeas petition was untimely. 545 U.S. at 527. Months later, the Supreme Court issued an opinion that arguably rendered the time-bar ruling incorrect. *Id.* at 537. Assuming incorrectness, the Supreme Court found that Rule 60(b)(6) relief was unwarranted because "[i]t is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation." *Id.* If a change in law that *entirely* precluded merits review is not sufficient to warrant Rule 60(b)(6) relief, then a change on a lesser matter—where a full merits analysis was conducted in the alternative—necessarily cannot warrant Rule 60(b)(6) relief.

And "whether 'there is merit in [Wardlow's] claim' only becomes a relevant factor in the Rule 60(b) analysis if 'there was no consideration of the merits' below." *Haynes v. Davis*, 733 F. App'x 766, 769 (5th Cir. 2018) (unpublished) (citing *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (1981)). This Court has already reviewed and denied Wardlow's claims, as Wardlow makes clear, given that the overwhelming majority of his argument seeks to disparage it. Further, given that this Court and the Fifth Circuit have found the claims meritless, no claim is "particularly compelling." *See Haynes*, 733 F. App'x at 769. Beyond that, this Court is "precluded from conducting a comprehensive merits review" of his claims at this stage, *see id*. at 769 n.1, because, as argued above, a Rule 60(b) motion may not be used to attack the substance of this Court's prior merits resolution or to circumvent the requirements of AEDPA. *See* Argument I, *supra*. Moreover, because he has received a merits adjudication in this Court, Wardlow has already received the relief he seeks, further illustrating why his Rule 60(b) motion should be denied. Indeed, Wardlow's claims have now been thoroughly reviewed and rejected by trial and appellate courts, state and federal.

Finally, while the Fifth Circuit has "never explicitly held that the '*Seven Elves* factors bear on the extraordinary circumstances analysis under Rule 60(b)(6)," the Circuit has nevertheless "used them as a guide in evaluating the

strength of a motion brought pursuant to Rule 60(b)(6)." *Haynes*, 733 F. App'x at 769. No other equitable factors weigh in Wardlow's favor. Indeed, as the Fifth Circuit has observed, "[I]n the context of habeas law, comity and federalism elevate the concerns of finality, rendering the [Rule] 60(b)(6) bar even more daunting." *Id.* (citing *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013)). And, in *Haynes*, the Court emphasized that "finality is a particularly strong consideration" given the habeas context of Haynes' case:

> Haynes was convicted by a jury in state court nearly twenty years ago. He has been litigating his claims in federal court for over a decade, and this case has gone through multiple cycles of review.

*Id.* Here, Wardlow was convicted over twenty-five years ago, has been litigating his claims in federal court nearly two decades, and has gone through multiple cycles of review. *See* Statement of the Case, *supra*.

In short, Wardlow has not demonstrated extraordinary circumstances warranting relief from judgment, and this Court should deny his Motion.

## III.   Wardlow is Not Entitled to a Stay of Execution.

A stay of execution is an equitable remedy and "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006). A "party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In utilizing that discretion, a court must consider:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. at 434 (citations omitted) (internal quotation marks omitted). "The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be better than negligible." *Id*. If the "applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id*. at 435. "These factors merge when the [State] is the opposing party" and "courts must be mindful that the [State's] role as the respondent in every . . . proceeding does not make the public interest in each individual one negligible." *Id*.

"Both the State and the victims of crimes have an important interest in the timely enforcement of a sentence" and courts "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584. Thus, "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Id*. (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). Indeed, "[t]he federal

22

courts can and should protect States from dilatory or speculative suits." *Id*. at 585.

Wardlow utterly fails to prove likely success on the merits. While he claims otherwise, his briefing on the point is conclusory, Mot. Stay Exec. 2, and he is wrong. If Wardlow succeeded at reopening his case for the limited purpose of unbarring his previously defaulted claims, it would be a hollow victory. After setting aside the default, any attack on the Court's merits resolution of his claims constitutes a second or successive petition that this Court lacks jurisdiction to consider. *See* Argument I, *supra*. If the Court cannot reach Wardlow's claims, there can be no likely success on their merits.

Setting aside the jurisdictional impediment, Wardlow still falls short of showing likely success. If the procedural default were lifted, Wardlow's claims would be considered under the deferential standard of review imposed by 28 U.S.C. § 2254(d) because they have now been adjudicated on the merits in state court. *See, e.g., Harrington v. Richter*, 562 U.S. 86, 100 (2011). But the claims already failed under de novo review (with, of course, deference to state court factual findings), so they fail under § 2254(d)—the CCA cannot be unreasonable for denying claims that have no merit. All Wardlow would accomplish by unbarring his claims is adding an additional impediment to

garnering federal habeas relief. Making relief more *unlikely* is the opposite of what Wardlow must show to obtain a stay.

Ultimately, the Court has carefully considered Wardlow's claims and found them without merit. That prior determination "is, effectively, dispositive of the motion for stay." *Crutsinger v. Davis*, 930 F.3d 705, 707 (5th Cir. 2019). But it is also effectively determinative of whether the case should be reopened because there must be a "'a good claim or defense'" or "Rule 60(b)(6) relief would be inappropriate." *Buck*, 137 S. Ct. at 780 (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2857 (3d ed. 2012)). So, whether it is likely success on reopening the case or likely success on the merits of his claims, Wardlow fails to show what is necessary to stay his execution.

Wardlow effectively forfeits argument on the other stay factors by failing to brief them. He argues that irreparable injury to him and lack of injury to the State "generally weigh in favor of a stay if" likely success is found. Mot. Stay Exec. 2. Since he has failed in that endeavor as explained above, Wardlow's conditional argument falls. But it is wrong regardless. The harm here is not whether Wardlow will be executed, but whether he will be executed having not received merits review of his claims, which are no longer barred by

a state law procedural ground. But this Court provided him that review, as did the state court, so he has no harm to complain of, irreparable or otherwise.

And there is harm to the State and the public. As noted above, "[b]oth the State and the victims of crimes have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. Wardlow senselessly executed elderly Carl Cole to steal his truck, something that could have been taken without violence because the keys were in it. Since that murder, he has received more than two decades' worth of review and no constitutional infirmity has been demonstrated. A desire to re-adjudicate claims that have already been found wanting is hardly a reason to delay Wardlow's sentence further. *See Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.").

Finally, Wardlow has failed to exercise due diligence in pursuing this litigation. As also noted above, "[a] court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650). Wardlow did not pursue any remedies, like seeking a stay, when new state court caselaw suggested that the waiver imposed in his case was done erroneously. *Cf. Gonzalez*, 545 U.S. at 537 (holding that a "change in the

25

law . . . is all the less extraordinary . . . because of [a] lack of diligence in pursuing" the issue on appeal before the change). And when he succeeded in lifting that bar, he still delayed timely presentation of the issue. *See* Argument II.A, *supra*. Ultimately, Wardlow's complaints "could have been brought [long] ago" and "[t]here is no good reason for this abusive delay." *Gomez v. U.S. Dist. Court for N. Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam). A stay should be denied.

## CONCLUSION

For these reasons, the Director respectfully requests that this Court deny Wardlow's motion for Rule 60(b)(6) relief. Wardlow's motion fails to demonstrate that extraordinary circumstances exist that would justify Rule 60(b)(6) relief and instead mostly attempts to relitigate his denied-on-the-merits claims. Accordingly, this Court should either deny the motion, dismiss it as a disguised successive petition, or transfer it to the Fifth Circuit for authorization.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

MARK PENLEY
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL*
Assistant Attorney General
*Lead Counsel                    State Bar No. 24088591

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1600
(512) 320-8132 (Fax)
E-mail: gwendolyn.vindell2@oag.texas.gov

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I certify that, on June 25, 2020, a true and correct copy of the above pleading was electronically served to the following counsel for Wardlow by filing the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court:

Richard Burr
Burr & Welch, P.C.
PO Box 525
Leggett, TX 77350
713-628-3391
Email: dick.burrandwelch@gmail.com

/s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General

27