IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **BILLY JOE WARDLOW,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| -v- | § | NO. 4:04-cv-00408-MAC |
| | § | |
| **LORIE DAVIS, Director, Texas** | § | CAPITAL CASE |
| **Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | <u>Execution Date of July 8, 2020</u> |
| | § | |
| Respondent. | § | |

---

**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO
MOTIONS FOR RELIEF FROM JUDGMENT
AND FOR STAY OF EXECUTION**

---

Petitioner Billy Joe Wardlow replies to Respondent's opposition to his Rule 60(b)(6) motion and motion for stay of execution as follows:

Respondent has thrown a lot of chaff into the air apparently hoping that the Court will lose the wheat with the chaff. The chaff can be readily separated from the wheat, however, because nothing Respondent argues can obscure the wheat upon which the Rule 60 motion rests.

The Rule 60(b)(6) motion rests on several kernels of wheat:

1. The Court ruled that the claims Mr. Wardlow raised in his federal petition which had been raised for the first time in his state habeas application were procedurally barred because of the CCA's waiver ruling.

2. That aspect of the Court's ruling meant as a matter of law, that the Court could not grant relief on the basis of any of these claims. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) ("adequate and independent state grounds doctrine ... applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement").

3. For this reason, the Court's review of the merits of the procedurally barred claims was skewed. The procedural bar ruling forced the Court to consider the merits of those claims with a mind-set to find no merit.

4. This mind-set was likely unconscious. The Court intended to conduct a fair, impartial review of the claims. The Court said as much when it announced that it was reviewing the claims in the interest of justice. But if, because of the procedural bar, the Court could not grant relief on any claim it found meritorious, its predilection had to be to find no merit. That is how anyone would be shaped by these circumstances.

5. This is why the Court should vacate the judgment and undertake a *de novo* review, free of any weight on the scale, especially the weight of its previous merits determinations. Of course this review must be undertaken as any review of claims denied on the merits by state courts – with the various presumptions in favor of the state courts' determinations of fact and law. But the federal habeas statute does not preclude federal courts from undertaking their own evidentiary hearings in order to test the reasonableness of state findings and conclusions. Starting over on a level playing field of merits review as regulated by the federal habeas statute is what Mr. Wardlow's claims deserve because of the CCA's order of April 29, 2020.

With this framework re-articulated, we will now turn to the chaff thrown into the air by

Respondent.

1. **Respondent argues the 60(b) motion is a successive habeas petition. It is not.**

The critical case here is *United States v. Vialva*, 904 F.3d 356 (5th Cir. 2018), because the case recognizes "that Rule 60(b) motions can legitimately ask a court to reevaluate already-decided claims – as long as the motion credibly alleges a non-merits defect in the prior habeas proceedings." *Id*. at 361. The key question is "whether [the movant] ha[s] actually alleged procedural defects cognizable under Rule 60 (b)." *Id*. The reason the Fifth Circuit decided that Vialva and his co-defendant Bernard had not alleged such procedural defects is instructive here.

The basis for Vialva's and Bernard's argument was that the federal judge, Walter Smith, had been the subject of an investigation into "unwanted advances toward a court employee." *Id*. at 358 n.1. The Fifth Circuit explained that this allegation raised no "inference of defects in the habeas proceedings at issue here." *Id*. at 361. There was "no evidence – beyond gross speculation – that Judge Smith was ... 'impaired' or 'unfit' to oversee their 2000 trial and subsequent habeas proceedings." *Id*. Thus, "Judge Smith's unrelated misconduct does not constitute a defect in the integrity of Bernard's and Vialva's habeas proceedings." *Id*.

By contrast, Mr. Wardlow has alleged that the procedural defect here – the procedural bar ruling that has now disappeared – *does* "raise an inference of defects in the habeas proceedings at issue here," *Vialva*, at 361, because that defect actually affected the way in which the Court evaluated the merits of his claims. If Mr. Wardlow's argument is right, that the procedural bar ruling impeded (at least unconsciously) the Court's effort to provide a full and fair review of the merits of his claims, then this procedural defect "can [serve as a basis to] reopen proceedings" and does permit the Court to "reevaluate already-decided claims." *Id*.

In short, *Vialva* compels the Court to find that Mr. Wardlow's 60(b) motion is a proper 60(b) motion, not a successive habeas petition masquerading as such a motion.

2. **Respondent argues that the 60(b) motion is untimely. It is not.**

Respondent argues that the 60(b) motion is untimely because Mr. Wardlow should have asked this Court to stay and abate his federal habeas proceeding in 2008 so he could return to state court after "the CCA issued its decision in *Ex parte Reynoso*, in which it noted that a state habeas applicant's waiver is not effective until after his deadline for filing an application has passed. 257 S.W.3d 715, 720 n.2 (Tex. Crim. App. 2008)." Respondent's Opposition, at 16. This argument has no merit, because *Reynoso* did not change the law about waivers in Texas. It simply recognized the legal reality that an applicant's waiver of habeas proceedings is not enforceable until the due date passes and applicant has filed no habeas application. *Reynoso* did not change that reality. It simply recognized that that is the nature of a waiver – it cannot be enforced until it is too late for the waverer to change his mind.

*Reynoso* thus created no reason to return to state court. Mr. Wardlow had already asked the CCA to recognize the error of its waiver ruling in 2004 immediately after the ruling, when he filed an unopposed motion for reconsideration. *See* ROA at 117-18. That request was denied without any explanation. There was no reason in 2008 for Mr. Wardlow to think that the CCA would deal with a renewed request for reconsideration any differently. Instead, he litigated this issue in the federal courts by arguing throughout that the CCA ruling was not an adequate state ground on which the federal courts could hold that his state habeas claims were barred. He lost this argument at every turn, but he pursued it vigorously. This kind of diligent pursuit of clearly available remedies counts in the movant's favor in weighing all the equities associated with a Rule 60(b)(6) motion. *See Gonzales v. Crosby*. 545 U.S. 524, 537 (2005) (faulting movant there

for "abandon[ing] any attempt to seek review of the District Court's decision on [the procedural ground at issue]").[1]

Respondent also argues that Mr. Wardlow's 60(b) motion is untimely, because (a) he "waited over one month" after federal habeas proceedings had ended to file his December 2019 request for reconsideration of the procedural dismissal in the CCA, and (b) he "waited nearly two months after CCA reconsidered" to file the 60(b) motion. This argument borders on the absurd. No case has faulted a 60(b)(6) movant for not moving more expeditiously than Mr. Wardlow. The time that passed here is not at all like the longer periods of time reflected in the two case cited by respondent, *Tamayo* and *Osborne*. Given that Mr. Wardlow is facing execution, and that because of this, in the seven-week-period between the CCA's order of April 29, 2020 and June 18, 2020 when he filed the 60(b) motion, Mr. Wardlow filed a petition for writ of certiorari in the Supreme Court on June 10, 2020 from the part of the CCA's April 29 order dismissing his subsequent habeas application, and filed an extensive application for commutation of sentence and reprieve of execution on June 16, 2020, he filed his 60(b) motion timely.

3. **Respondent argues that the Rule 60(b) motion fails to establish "extraordinary circumstances." It does not.**

Respondent argues that "Wardlow's only attempt at establishing extraordinary

---

[1] That the CCA did on April 29, 2020, *grant* reconsideration and rule on the merits of claims it had previously dismissed came as a complete – but certainly welcomed – surprise to Mr. Wardlow. Mr. Wardlow's request to reconsider that he filed in the CCA in December 2019 was one last effort to try to convince a previously-unpersuadable court to recognize the error of its 2004 ruling. He did not expect that the CCA would do that in light of the history of its examination of this matter. Nothing had changed in Texas law. The only change was in the composition of the court. That arbitrary factor apparently made a difference. For one time, Mr. Wardlow got in the way of luck.

5

circumstances is his baseless insinuation that this Court's careful and considerate alternative merits denial was a sham." Respondent's Opposition, at 19. Respondent clearly does not understand the difference between the wheat and the chaff, *see* pp. 1-2, *supra*, in relation to her own arguments about the 60(b) motion. There is nothing baseless about the motion. Despite its intentions, this Court could not have given full and fair consideration to the merits of the claims because the procedural bar ruling kept it from being able to do that. To consider claims fully and fairly, the Court had to be able to approach the claims with the possibility of not only denying but also *granting* relief, a judgment which Mr. Wardlow was entitled to have the Court make solely on the basis of the merits of the claims within the framework of federal habeas. *The Court could not do that* because the procedural bar ruling "bar[red] habeas relief[.]" *Coleman v. Thompson*, 501 U.S. at 729-30. It is that simple, and that profound. The Court's merits ruling was not a "sham," and that is no at all what Mr. Wardlow argued. What he has argued is that a merits ruling reached in the shadow of a ruling that all the claims are procedurally barred *cannot* be the same as a merits ruling unencumbered by the procedural ruling.

For this reason, the fact that Mr. Wardlow "has been litigating his claims in federal court nearly two decades, and has gone through multiple cycles of review," Respondent's Opposition, at 21, means nothing, because in all of that review, the outcome of the Court's merits analysis was predetermined. Now that the barrier to a non-predetermined analysis has been removed, Mr. Wardlow is entitled to a *de novo* proceeding. This establishes the extraordinary circumstances necessary to vacate the Court 2017 judgment.

FOR THESE REASONS, as well as those set forth in the Rule 60(b)(6) motion, Mr. Wardlow respectfully moves for relief from the judgment entered herein on August 22, 2017, denying his Petition for Writ of Habeas Corpus.

Respectfully submitted,

*[signature: Richard Burr]*

RICHARD BURR
TBA No. 24001005
PO Box 525
Leggett, Texas 77350
(713) 628-3391
(713) 893-2500 fax
dick@burrandwelch.com

Counsel for Billy Joe Wardlow

**CERTIFICATE OF SERVICE**

I hereby certify that this reply was served on Respondent Davis through filing in the Court's ECF system, with service included upon Assistant Attorney General Gwendolyn Vindell, at her email address, *gwendolyn.vindell2@oag.texas.gov*, this 26th day of June, 2020.

*[signature: Richard Burr]*

Richard Burr